IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DePuy Mitek, Inc.<br>  a Massachusetts Corporation<br><br>             Plaintiff,<br><br>             v.<br><br>Arthrex, Inc.<br>  a Delaware Corporation<br><br>             Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 04-12457 PBS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXTEND TIME FOR FILING RESPONSE TO DEPUY MITEK, INC.'S MOTION TO PRECLUDE ARTHREX, INC AND PEARSALLS, LTD. FROM SUPPLEMENTING THEIR EXPERT REPORTS AND DEPOSITIONS**

On August 9, 2006, DePuy Mitek, Inc. ("DePuy Mitek") filed a motion seeking an Order precluding Arthrex, Inc. ("Arthrex") and Pearsalls, Ltd. ("Pearsalls") (together, "defendants") from supplementing Dr. Gitis's expert report and asking that Arthrex provide detailed technical information in order to substantiate that the data collected in Dr. Gitis's initial tests were corrupted by a virus. Specifically, DePuy Mitek is seeking information regarding the identity of the virus, proof of what machines were affected, how the virus affected the machines, how the virus affected the data, how the virus affected Dr. Gitis's analysis and report, proof of when the virus occurred and proof of when Dr. Gitis was aware of the virus.

The vast majority of the information necessary for defendants' response to DePuy Mitek's motion must come from Dr. Gitis and his organization. Dr. Gitis was called out of the country for an emergency on August 1, 2006 and is scheduled to return to his lab today. In

addition, defendants' lead counsel will be out of the country this Thursday through Sunday (August 24 through 28, 2006). Defendants' counsel will then need time to complete its investigation and to prepare the response to the motion.

## BACKGROUND

On March 24, 2006, defendants' served on DePuy Mitek an expert report prepared by Dr. Norman Gitis. In his report, Dr. Gitis included results of certain suture testing he conducted on Arthrex's FiberWire surgical suture. His tests only served to confirm what everyone in the suture industry, including DePuy Mitek and Ethicon, already knew; that coating significantly affects suture handleability characteristics.

Subsequent to serving Dr. Gitis's expert report, at the request of DePuy Mitek, defendants produced a disc containing the raw data collected by Dr. Gitis while he conducted his suture testing. The raw data was believed to support the results in Dr. Gitis's report. That disc was produced on May 2, 2006.

Dr. Gitis was deposed by counsel for DePuy Mitek on June 21, 2006. A large portion of Dr. Gitis's deposition was devoted to the subject matter of his expert report. During his deposition, there were many questions from counsel for DePuy Mitek regarding apparent inconsistencies between the results of the suture testing, as reflected in Dr. Gitis's report, and the raw data contained on the disc that was produced on May 2, 2006. Indeed, Dr. Gitis was not able to explain many of these inconsistencies at his deposition.

Understandably concerned about these inconsistencies that surfaced during his deposition, Dr. Gitis went back to his lab in California and initiated an investigation into the possible reasons for the inconsistencies. During his initial investigation, Dr. Gitis also reviewed his deposition transcript and the questions raised by counsel for DePuy Mitek regarding his test results and the raw data. Based on his initial investigation, Dr. Gitis believed that the raw data

contained on the disc was corrupted by a virus that had infiltrated his lab around the same time the suture testing was being conducted.

At the time he was conducting the suture testing, Dr. Gitis knew that a virus had infiltrated his computer system but, at that time, he had no reason to believe it had also infiltrated his computer systems to such an extent as to affect his testing equipment.  He also had no reason to believe that the tests he conducted on behalf of defendants were compromised in any way.

Upon arriving at his belief that a computer virus was the reason for the inconsistencies between the raw data and the test results in his report, Dr. Gitis immediately informed counsel for defendants.  Shortly thereafter, counsel for defendants reported Dr. Gitis's beliefs regarding the virus and its affect on the raw data to counsel for DePuy Mitek.

Immediately, thereafter, counsel for DePuy Mitek understandably insisted on a full explanation including details of the virus, the identity of the virus by name, the identity of the specific machines infected, an explanation of precisely what data are corrupted and how it affected Dr. Gitis's report.  DePuy Mitek also insisted that Dr. Gitis provide all information in his, and his testing lab's, possession regarding the virus, including any action taken to address the virus.

Dr. Gitis was conducting a more detailed investigation into the virus in order to provide DePuy Mitek with the information it was seeking when he was unexpectedly called out of the country on an emergency for approximately three weeks beginning on August 1, 2006.  That same day, counsel for defendants informed counsel for DePuy Mitek of Dr. Gitis's emergency and that he would be out of the country for approximately three weeks.

In order to respond to DePuy Mitek's motion, counsel for defendants must have access to Dr. Gitis and his information technology staff in order to conduct an intensive fact gathering investigation.  During the fact gathering investigation, interviews with testing and information

technology employees of Dr. Gitis's lab must be conducted. In short, the investigation could not take place until Dr. Gitis was back at his lab.

Defendants have been informed that Dr. Gitis is expected to be back at his lab today, August 21, 2006. Defendants will be contacting Dr. Gitis today to pick up the investigation where it was left off on July 31, 2006, when Dr. Gitis was called out of the country on an emergency. Understandably, having been out of the country for three weeks, Dr. Gitis may have some other business-related needs to tend to prior to addressing the issues related to the virus and his tests conducted in this case.

According to local rule 7.1(b)(2), a response to DePuy Mitek's motion is due on August 23, 2006. This would leave only one day to conduct the detailed technical investigation necessary to respond to DePuy Mitek's motion and for lead counsel to review the information and prepare a response. At the same time, counsel for defendants are also preparing responses to DePuy Mitek's summary judgment and claim construction briefs. Under the circumstances, defendants request that they be given until August 30, 2006 to respond to the motion.

In compliance with local rule 7.1(a)(2), counsel for defendants hereby certify that they have conferred with counsel for DePuy Mitek on August 18 and August 21, 2006, in an unsuccessful attempt to resolve the issues of this motion. During those discussions, counsel for DePuy Mitek consented to extend the response date until August 25, 2006, however, for the reasons mentioned above, defendants request an extension until August 30, 2006.

Dated: August 21, 2006

Respectfully submitted,

By: _____/s/Salvatore P. Tamburo_____
Charles W. Saber
Stephen A. Soffen
Salvatore P. Tamburo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C.  20006-5403
Telephone:  (202) 420-3116
Facsimile:  (202) 420-2201

Christopher Weld, Jr. (BBO # 522230)
Raymond P. Ausrotas (BBO # 640315)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
Telephone:  (617) 720-2626
Facsimile:  (617) 227-5777

Counsel for Defendants
Arthrex, Inc. and Pearsalls Ltd.