IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DePuy Mitek, Inc. <br> a Massachusetts Corporation <br><br> Plaintiff, <br><br> v. <br><br> Arthrex, Inc. <br> a Delaware Corporation, *et al.* <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 04-12457 PBS |

**DEFENDANTS' OPPOSITION TO DEPUY MITEK'S MOTION FOR LEAVE TO REPLY IN SUPPORT OF ITS MOTION TO STRIKE ARTHREX'S RELIANCE ON ITS OWN INTERROGATORY CONTENTIONS AND DR. MUKHERJEE'S TIGERWIRE OPINIONS IN OPPOSITION TO DEPUY MITEK'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND NO INEQUITABLE CONDUCT**

Dated: October 26, 2006

Charles W. Saber
Stephen A. Soffen
Salvatore P. Tamburo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C.  20006-5403
Telephone:  (202) 420-3116
Facsimile:  (202) 420-2201

Christopher Weld, Jr. (BBO # 522230)
Raymond P. Ausrotas (BBO # 640315)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
Telephone:  (617) 720-2626
Facsimile:  (617) 227-5777

Counsel for Defendants
Arthrex, Inc. and Pearsalls Ltd.

Defendants Arthrex, Inc. ("Arthrex") and Pearsalls, Ltd. ("Pearsalls") (together, "defendants") submit this Opposition to DePuy Mitek's Motion for Leave to Reply in Support of its Motion to Strike Arthrex's Reliance on its Own Interrogatory Contentions and Dr. Mukherjee's TigerWire Opinions in Opposition to DePuy Mitek's Motion for Summary Judgment of Infringement and No Inequitable Conduct ("Mitek Reply").

DePuy Mitek is at it again, believing that it has an automatic right to file a reply even though the rules of this Court do not provide for automatic reply. Its excuse for wanting to file a reply is based on DePuy Mitek's world in which it can raise new issues late in the game, and then when defendants attempt to rightfully respond to those new issues, it falsely claims that it is defendants who have done something wrong in an attempt to fabricate any excuse to file a reply where one is not warranted.

For example, DePuy Mitek never raised any arguments on summary judgment regarding two of defendants' defenses in this case -- reverse doctrine of equivalents and tipping -- until its reply. As if this isn't bad enough, when defendants attempt to substantively respond to those arguments in its Opposition to DePuy Mitek's motion to strike -- the only forum in which defendants can be heard -- DePuy Mitek (predictably) asserts that it can file a reply because defendants are doing something improper.

Similarly, DePuy Mitek tries to create the impression, both in its reply on summary judgment and in its motion to strike, that the only infringement defenses to TigerWire were based on Dr. Mukherjee's additional tests that related particularly to TigerWire. Surely, defendants have the right to respond to make sure that the Court knows that in addition to Dr. Mukherjee's additional tests, the same non-infringement defenses available to FiberWire are also available to TigerWire. Presenting these legitimate arguments in response to DePuy Mitek's motion to strike does not create any right of reply.

Moreover, the "reply" that DePuy Mitek wants to file totally misstates the record. For example, DePuy Mitek falsely claims that Dr. Burks testified that the difference between the coated and uncoated FiberWire suture was "subtle" for both the wet and dry tactile feel testing he performed. That is simply not true.

As Dr. Burks explained at his deposition, he conducted a tactile feel analysis on the coated/uncoated FiberWire while it was dry. Ex. 1 at 68:24-69:3. He simply felt the coated/uncoated suture in a dry environment without doing anything with the suture. Ex. 1 at 69:3-5. Dr. Burks then explained that he also felt the suture in the wet environment when he was performing the separate knot tie-down analysis. Dr. Burks explained that when you are tying knots, you feel the suture and you are sliding the knot on it. Ex. 1 at 69:5-19.

Dr. Burks recorded his tactile feel observations at paragraph 11 in his expert report as follows:

> 11. I conducted a tactile feel analysis of both suture samples ("suture A" and "suture B"). During the analysis, I noticed that the sample labeled "suture A" generally felt smoother than "suture B." *The difference between the two samples was even more pronounced when they were wet which is how I am most accustomed to using FiberWire*.

Ex. 2 at ¶ 11 (emphasis added).

The questioning to which DePuy Mitek refers (*see* Mitek Reply at 3, citing to Dr. Burks's deposition transcript at 87:14-88:3) *only* concerns the sentence "during the analysis, I noticed that the samples labeled 'suture A generally felt smoother than 'suture B.'" Ex. 1 at 87:7-88:3. The questioning *never* even asked about Dr. Burks' reported findings that the difference between coated and uncoated FiberWire "was even more pronounced when they were wet." Mitek Reply at 2-3. Moreover, DePuy Mitek cannot point to a single instance in which Dr. Burks testified that the difference between coated and uncoated FiberWire during a *wet* tactile feel test was

3

"subtle," or any other words to the effect. Dr. Burks' statement that there was a pronounced difference remains unrebutted.[1]

Similarly, with regard to Dr. Burks's knot tie-down analysis from his report, DePuy Mitek points to no testimony where Dr. Burks described the differences as subtle because it never happened. Moreover, DePuy Mitek ignores Dr. Burks' unrebutted testimony at his deposition that "the sum feeling on my part" was that there was less friction on all the coated samples compared to the uncoated samples. Ex. 1 at 85:18-24. And once again, DePuy Mitek never challenged Dr. Burks' findings from his report that "the difference between the two samples was most noticeable when they were wet, as I am accustomed to using FiberWire." Ex. 2 at ¶ 12.

For all the foregoing reasons, DePuy Mitek's motion should be denied.

Dated: October 26, 2006                                Respectfully submitted,

                                                       By:      /s/Charles W. Saber
                                                       Charles W. Saber
                                                       Stephen A. Soffen
                                                       Salvatore P. Tamburo
                                                       DICKSTEIN SHAPIRO LLP
                                                       1825 Eye Street, N.W.
                                                       Washington, D.C. 20006-5403
                                                       Telephone: (202) 420-3116
                                                       Facsimile: (202) 420-2201

                                                       Christopher Weld, Jr. (BBO # 522230)
                                                       Raymond P. Ausrotas (BBO # 640315)
                                                       TODD & WELD LLP
                                                       28 State Street, 31st Floor
                                                       Boston, MA 02109
                                                       Telephone: (617) 720-2626
                                                       Facsimile: (617) 227-5777
                                                       Counsel for Defendants
                                                       Arthrex, Inc. and Pearsalls Ltd.

---

[1] DePuy Mitek refers to these as "new assertions," however, there is nothing new about them. DePuy Mitek has known about Dr. Burks' opinions since March – *i.e.,* for more than 7 months.

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the foregoing Defendants' Opposition to DePuy Mitek's Motion for Leave to Reply in Support of its Motion to Strike Arthrex's Reliance on its Own Interrogatory Contentions and Dr. Mukherjee's TigerWire Opinions in Opposition to DePuy Mitek's Motion for Summary Judgment of Infringement and No Inequitable Conduct was served, via the Court's email notification system on the following counsel for Plaintiff on the 26th day of October 2006:

Lynn A. Malinoski
Woodcock Washburn, LLP
One Liberty Place, 46th Floor
Philadelphia, PA. 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

Daniel J. Gleason
Nutter McClennan & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604
Telephone: (617) 439-2000
Facsimile: (617) 310-9000

                                                      /s/Charles W. Saber

# EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

-o-

COPY

| | |
|---|---|
| DEPUY MITEK, INC., a Massachusetts Corporation, | : Civil Action No. |
| | : 04-12457 PBS |
| Plaintiff, | : |
| | : |
| -vs- | : |
| | : |
| ARTHREX, INC., a Delaware Corporation, and PEARSALLS LTD., a Private Limited Company of the United Kingdom, | : EXPERT DEPOSITION OF: |
| | : ROBERT T. BURKS, M.D. |
| | : |
| Defendants. | |

-o-

Location:    Mariott University Hotel

             Salt Lake City, Utah

Date:        June 7, 2006

             3:00 p.m.

Reporter:    Denise Kirk, CSR/RPR

-o-

68

```
              1  the suture?
              2      A.   I guess I assumed that a coating would
              3  make it smoother.
              4      Q.   Anything else?
   58:36      5      A.   No.
              6      Q.   In the tactile feel analysis, which you
              7  just described, it sounds like what you described was
              8  just in the dry environment, is that correct?
              9      A.   That part, yes.
   58:52     10      Q.   Did you perform the tactile feel analysis
             11  in a wet environment as well?
             12      A.   No, it was more knot-tying.
             13      Q.   So you did not test FiberWire in a wet
             14  environment in the tactile feel analysis in Exhibit
   59:06     15  Number 232?
             16      A.   No.
             17      Q.   But in paragraph 11 it says: "The
             18  difference between the two samples was even more
             19  pronounced when they were wet, which is how I'm
   59:17     20  accustomed to using FiberWire"?
             21      A.   Yes. That is, when you are tying knots and
             22  you are doing it in the wet environment, then you're
             23  feeling the sutures.
             24      Q.   Right, but if you look at paragraph 11 in
    5   ?1   25  Exhibit 232, paragraph 11 deals with the tactile feel
```

69

59:48

1  analysis, right?
2      A.     Correct, so what I'm saying on the tactile
3  feel analysis is I'm feeling it in a dry environment
4  where I'm not doing anything with the suture, just
5  feeling it in a dry environment.  Then I feel it in
6  the wet environment when I'm tying knots.
7      Q.     So in paragraph eleven when it says "was
8  more pronounced when they were wet which is how I'm
9  accustomed to using FiberWire" that's not true,

00:05

10  though, right? You didn't perform --
11      A.     I think the confusion is maybe how I
12  worded this. So when tying knots it's not -- I didn't
13  view it personally as being totally separate of
14  tactile over here and then a tactile over here.

00:27

15             When you are tying the knot, you feel the
16  suture and you are sliding the knot on it. That was
17  part of my assessment when I'm tying the knot. It
18  wasn't just laying it out and feeling it. It's a
19  combination.

00:39

20      Q.     How do you know that the samples being wet
21  was more pronounced in the tactile feel analysis if
22  you did not do the tactile feel analysis on a wet
23  suture?
24      MR. TAMBURO:  Objection; asked and

0  8

25  answered, mischaracterizes the testimony.

85

|       |    |    |                                                      |
|-------|----|----|------------------------------------------------------|
|       | 1  | A. | With tap water.                                      |
|       | 2  | Q. | Can you explain that?                                |
|       | 3  | A. | Sure, I just filled a glass with water and           |
|       | 4  |    | put the suture down in it and then tied the knots.   |
| 42:54 | 5  | Q. | Did you wet them one at a time?                      |
|       | 6  | A. | Yes.                                                 |
|       | 7  | Q. | How long did the suture stay submerged in            |
|       | 8  |    | water?                                               |
|       | 9  | A. | Briefly. Three or four seconds.                      |
| 43:05 | 10 | Q. | But the same amount of time in the water            |
|       | 11 |    | for each suture?                                     |
|       | 12 | A. | Yes.                                                 |
|       | 13 | Q. | Do you know if the sutures absorb water              |
|       | 14 |    | when they're wet?                                    |
| 43:22 | 15 | A. | No.                                                  |
|       | 16 | Q. | You don't know?                                      |
|       | 17 | A. | No.                                                  |
|       | 18 | Q. | Were each of the -- you come to the                  |
|       | 19 |    | conclusion in paragraph number 12 of Exhibit 232 that |
| 43:41 | 20 |    | when suture A -- there was less friction when sliding |
|       | 21 |    | the knot on the sample labeled suture A as compared  |
|       | 22 |    | with sample labeled B. Was that true for all five    |
|       | 23 |    | suture samples?                                      |
|       | 24 | A. | That was a sum feeling on my part. So it             |
| 4   4 | 25 |    | might not be fair to say it's true on every strand but |

```
                                                                    87
     1  I described them.
     2       Q.    Okay, so why did you use the particular
     3  knots, then, that you used in the knot tie-down
     4  analysis?
46:51  5       A.    I just tried to reproduce what I do in the
     6  operating room.
     7       Q.    In paragraph 11 in Exhibit 232 you state
     8  that suture A generally felt smoother than suture B.
     9  What do you mean by "generally"?
47:08 10       A.    The differences between the sutures were
    11  subtle. I mean, they were not sharp, distinct. So I'm
    12  meaning that in comparing them, my take was that it
    13  was generally smoother.
    14       Q.    Were there any of the sutures in the
47:45 15  tactile feel analysis where you couldn't tell the
    16  difference between suture A and suture B?
    17       A.    It was not my intent at the time in
    18  looking at the sutures to compare each strand side to
    19  side. My intent was to look at sort of spool A and
48:13 20  spool B. So it was to get a feel of, in general, how
    21  do they feel between the two.
    22            So I didn't take a strand and say is this
    23  one different? And is this one different? And go
    24  down through that five times, because I felt it was
 4  '8 25  all the same suture.
```

88

| | | |
|---|---|---|
| | 1 | Q.      But were there any where you couldn't tell |
| | 2 | a difference? I mean, it was pretty close? |
| | 3 | A.      Sure, it was pretty close. |
| | 4 | Q.      Let me rephrase. Were there any where you |
| 48:41 | 5 | couldn't tell the difference between suture A and |
| | 6 | suture B? |
| | 7 | MR. TAMBURO:  Objection, asked and |
| | 8 | answered. |
| | 9 | A.      I don't remember specifically having ones |
| 48:49 | 10 | that I would say I clearly feel a difference on this |
| | 11 | one and I clearly don't on the next one. It was a |
| | 12 | general feel of all of them. |
| | 13 | Q.      Dr. Burks, how would you describe your |
| | 14 | relationship with Ethicon? |
| 49:08 | 15 | A.      I guess none. |
| | 16 | Q.      None? So you would say that you have a |
| | 17 | closer relationship with Arthrex? |
| | 18 | A.      Yes. |
| | 19 | Q.      What about could you describe your |
| 49:24 | 20 | relationship with DePuy Mitek? |
| | 21 | A.      I have been a consultant with DePuy Mitek. |
| | 22 | Just this week I was helping on an educational course |
| | 23 | for DePuy Mitek reps. But I've had no product or |
| | 24 | anything like that with DePuy Mitek. |
| 4  6 | 25 | Q.      You mean development product work? |

93

```
        1       A.      That is 286.
        2       Q.      You cut a piece off of the suture in
        3  Exhibit 286?
        4       A.      Right.
04:28   5       Q.      And --
        6               MR. TAMBURO:  There's no Bates numbers on
        7  these?
        8               MR. FALKE:  There were no Bates numbers.
        9       Q.      Would you put that on the suture you cut
04:51  10  from Exhibit 286 and mark with a pen Exhibit 286.
       11  Now, can you explain what you are doing now, Dr.
       12  Burks? First, can you put the suture that you took out
       13  of 286 back in the bag?
       14       A.      (Witness complies.)
05:28  15       Q.      Thank you, and then proceed.  Can you
       16  explain for the record what you are doing now?
       17       A.      I'm opening 285.
       18       Q.      You are cutting suture sample from Exhibit
       19  285, right?
05:52  20       A.      Yes.
       21       Q.      Could you please mark with the tape
       22  Exhibit 285 that you've cut?  Proceed.  Can you state
       23  what for the record what you are doing now?
       24       A.      I'm opening number 284.
0 '4   25       Q.      And cutting a suture from Exhibit 284?
```

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DePuy Mitek, Inc.<br>    a Massachusetts Corporation<br><br>              Plaintiff,<br><br>       v.<br><br>Arthrex, Inc.<br>    a Delaware Corporation<br><br>              Defendant. | Civil Action No. 04-12457 PBS |

## EXPERT REPORT OF ROBERT T. BURKS, M.D.

1.    I am an orthopaedic surgeon with the University of Utah Orthopaedic Center. My office is at 590 Wakara Way, Salt Lake City, Utah 84108. I have been practicing for more than 23 years.

2.    I received my M.D. from St. Louis University in 1974. I completed a residency in Orthopaedics at the University of California at San Diego in 1983. I completed a knee and sports medicine fellowship at Kaiser Permanente Hospital in San Diego in 1983, and sabbatical at Steadman Hawkins in Vail, Colorado in 1995

3.    I am a Professor and Mary Scowcroft Peery Presidential Endowed Chair at the University of Utah Health Sciences Center. I am also the Director of Sports Medicine and Head Physician at the University of Utah. My curriculum vitae are attached as Exhibit 1.

4.  My specialties include arthroscopy of the shoulder, knee and ankle, and ligament reconstruction. My research interests include patella stability, cartilage defects, tendon healing to bone.

5.  I have reviewed Dr. Fenton's report and I understand he may provide testimony on certain subjects including human anatomy, surgical techniques and surgical devices. I may also provide testimony on these same subjects.

6.  I may describe the characteristics of a surgical suture that are generally important to an orthopaedic surgeon. I may also describe the specific features of FiberWire that I find beneficial in my practice.

7.  I have been using FiberWire suture in my surgical procedures since 2001. Most of my subjective use of FiberWire occurs during surgery and in the surgical environment, FiberWire is generally wet.

8.  Sometime in February 2006, I was contacted by attorneys for Arthrex, Inc. and asked to conduct a tactile feel analysis as well as a knot tie-down analysis of coated and uncoated FiberWire suture. I agreed to conduct the analysis.

9.  In March 2006, I received two samples of suture labeled "suture A" and "suture B." Each sample was on a spool and was approximately 3 meters in length. I was told by Arthrex's attorneys that one sample was coated US No. 2 FiberWire and that the other sample was uncoated US No. 2 FiberWire, however, I was not told which sample was coated and which was uncoated.

2

DSMDB.2060339.1

10. I took the sutures and cut them into some lengths that are appropriate for intraoperative tying and for intraoperative knot tying done arthroscopically. This allowed 5 strands from each spool.

11. I conducted a tactile feel analysis of both suture samples ("suture A" and "suture B"). During the analysis, I noticed that the sample labeled "suture A" generally felt smoother than "suture B." The difference between the two samples was even more pronounced when they were wet, which is how I am most accustomed to using FiberWire.

12. I also conducted a knot tie-down analysis on the two suture samples. I tied several surgeons knots and found that the knots slid easier on the sample labeled "suture A" as compared with the sample labeled "suture B." I felt less friction when sliding the knot on the sample labeled "suture A" as compared with the sample labeled "suture B." Here again, the difference between the two samples was most noticeable when they were wet, as I am accustomed to using FiberWire.

13. After conducting my analysis, I was informed that "suture A" was the coated FiberWire and "suture B" was the uncoated FiberWire.

14. If asked to testify at trial, I may use physical exhibits, as well as other demonstrative exhibits, which have not yet been developed.

3

15. Within the past four years, I have testified as an expert at deposition in connection with one other case: Philip D. Ceriani, M.D. v. Lonnie Paulos, M.D., and Simon Finger, M.D., et al, Case #: 030906702 (Civil 3rd District Court, Salt Lake City).

16. I am being compensated at a rate of $400 per hour.


Dated: March 24, 2006

*Robert T. Burks, M.D.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Expert Report of Robert T. Burks, M.D., was served, via Fedex (Saturday delivery to Ms. Malinoski and regular delivery to Mr. Gleason), along with a courtesy copy of the text of this report (without exhibits), via email, on the following counsel for Plaintiff on the 24th day of March 2006:

Lynn A. Malinoski
Woodcock Washburn, LLP
One Liberty Place, 46th Floor
Philadelphia, PA. 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

Daniel J. Gleason
Nutter McClennan & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604
Telephone: (617) 439-2000
Facsimile: (617) 310-9000

                                                                                                                        s/Salvatore P. Tamburo