## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DePuy Mitek, Inc. | ) | |
|   a Massachusetts Corporation | ) | |
| | ) | |
|         Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-12457 PBS |
| | ) | |
| Arthrex, Inc. | ) | |
|   a Delaware Corporation, *et al.* | ) | |
| | ) | |
|         Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE AS UNTIMELY DEPUY MITEK'S RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE'S ORDER GRANTING DEPUY MITEK, INC.'S MOTION TO PRECLUDE ARTHREX, INC. AND PEARSALLS, LTD. FROM SUPPLEMENTING THEIR EXPERT REPORTS AND DEPOSITIONS, OR IN THE ALTERNATIVE, MOTION TO REPLY THERETO**

Dated: December 4, 2006

Charles W. Saber
Stephen A. Soffen
Salvatore P. Tamburo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C. 20006-5403
Telephone: (202) 420-3116
Facsimile: (202) 420-2201

Christopher Weld, Jr. (BBO # 522230)
Raymond P. Ausrotas (BBO # 640315)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
Telephone: (617) 720-2626
Facsimile: (617) 227-5777

Counsel for Defendants
Arthrex, Inc. and Pearsalls Ltd.

DSMDB-2180147v01

## TABLE OF CONTENTS

**Page No.**

I.    **INTRODUCTION**................................................................................................... 1

II.   **DEPUY MITEK'S RESPONSE TO DEFENDANTS' OBJECTIONS TO THE MAGISTRATE'S ORDER SHOULD BE STRICKEN AS UNTIMELY** ...................... 1

III.  **SHOULD THE COURT NOT STRIKE AS UNTIMELY DEPUY MITEK'S RESPONSE TO DEFENDANTS' OBJECTIONS TO THE MAGISTRATE'S ORDER, DEFENDANTS SHOULD BE PERMITTED TO REPLY THERETO** ......... 2

IV.  **CONCLUSION** ................................................................................................... 4

DSMDB-2180147v01

## TABLE OF AUTHORITIES

### FEDERAL CASES

**Page No.(s)**

*Cook v. McLaughlin*, 917 F. Supp. 79 (D. Mass. Feb. 29, 1996) ........................................1

*Cronin v. Commonwealth of Massachusetts*, 2004 WL. 224565 (D. Mass. Feb. 5, 2004) ...........................................................................................................................1, 2

*Hutchins v. Cardiac Science, Inc.*, 2006 WL. 2942790 (D. Mass. Sept. 29, 2006)............1

*Ramsdell v. Bowles*, 64 F.3d 5 (1st Cir. 1995)....................................................................1

### FEDERAL RULE OF CIVIL PROCEDURE AND LOCAL RULE

Fed. R. Civ. P. 72(a) ......................................................................................................1, 2

Local Rule 7.1(b)(2)............................................................................................................2

DSMDB-2180147v01

I.        **INTRODUCTION**

Defendants Arthrex, Inc. ("Arthrex") and Pearsalls, Ltd. ("Pearsalls") (together, "defendants") submit this memorandum in support of their motion to strike as untimely DePuy Mitek, Inc.'s ("DePuy Mitek's") response to defendants' objections to Magistrate's Order granting DePuy Mitek's motion to preclude defendants from supplementing their expert reports and depositions ("Mitek Resp."), or in the alternative, to reply thereto.

II.       **DEPUY MITEK'S RESPONSE TO DEFENDANTS' OBJECTIONS TO THE MAGISTRATE'S ORDER SHOULD BE STRICKEN AS UNTIMELY**

Pursuant to Fed. R. Civ. P. 72(a), Arthrex filed its objections to the Magistrate's Order on November 2, 2006. According to Local Rule 7.1(b)(2), DePuy Mitek had fourteen (14) days -- *i.e.,* until November 16, 2006 -- within which to file a response to Arthrex's objections to the Magistrate's Order. DePuy Mitek failed to do so, waiting until 4 days later, and thus, its response should be stricken as untimely. *Hutchins v. Cardiac Science, Inc.,* 2006 WL 2942790 at *4 (D. Mass. Sept. 29, 2006) (Ex. 1); *Cook v. McLaughlin,* 917 F.Supp. 79, 81 (D. Mass. Feb. 29, 1996).

In *Cronin v. Commonwealth of Massachusetts*, 2004 WL 224565 at *1 (D. Mass. Feb. 5, 2004) (Ex. 2), this Court denied a motion for reconsideration for allowing a motion to dismiss where the plaintiff failed to timely file an opposition, in violation of Local Rule 7.1(b)(2). *Id.* The *Cronin* court stated that in deciding a motion to strike under Local Rule 7.1(b)(2), the court may "consider its institutional interest in preserving the integrity of its rules of procedure. Valid local rules are an important vehicle by which courts operate. Such rules carry the force of law . . . and they are binding upon the litigants and upon the court itself." *Id.* (citing *Air Line Pilots Association v. Precision Valley Aviation, Inc.,* 26 F.3d 220, 224 (1st Cir.1994)). The *Cronin* court also cited *Ramsdell v. Bowles,* 64 F.3d 5, 8 (1st Cir. 1995), which confirmed the propriety

1

DSMDB-2180147v01

of striking an opposition to a summary judgment motion filed *just one day late* in violation of the district court's local rule. *Cronin*, 2004 WL 224565 at *1.

In the December 1 discussion before the filing of this motion, DePuy Mitek expressed its belief that its response was timely because it thought that it had 3 days since defendants' objections were electronically served. That is wrong, as Local Rule 7.1(b)(2) could not be clearer. Specifically it sets 14 days for a response regardless of how service is made.[1] Moreover, to the extent DePuy Mitek blames its tardiness on its ignorance of the local rules of this Court, that is no excuse. As this Court explained in *Cronin*, such "inattention falls far short of any showing of an excusable failure." *Id.*

Further, DePuy Mitek asserted that Local Rule 7.1(b)(2) applies to responses to motions only and does not govern responses to objections filed pursuant to Fed. R. Civ. P. 72(a). DePuy Mitek is just wrong. The fact is that Local Rule 7.1(b)(2) is the *only* rule that could apply since Fed. R. Civ. P 72(a) is silent on the timeframe for filing a response when the Magistrate ruled on non-dispositive matters, such as here. For these reasons, Depuy Mitek's response to Arthrex's objections should be stricken.

## III.     SHOULD THE COURT NOT STRIKE AS UNTIMELY DEPUY MITEK'S RESPONSE TO DEFENDANTS' OBJECTIONS TO THE MAGISTRATE'S ORDER, DEFENDANTS SHOULD BE PERMITTED TO REPLY THERETO

In the event the Court denies defendants' motion to strike DePuy Mitek's response, defendants move, in the alternative, to reply thereto. DePuy Mitek's response includes factual inaccuracies designed to mislead the Court and also introduces several new issues not raised by defendants in their objections to the Magistrate's Order.

For example, DePuy Mitek ignores what the Magistrate actually said during the hearing -- which clearly establishes that the Magistrate granted DePuy Mitek's motion because

---

[1]     Further, D. Mass. ECF Administrative Procedure E(4) also makes clear that electronic service is to be treated the same as mail service under Local Rule 7.1(b)(2).

DSMDB-2180147v01

she believed that defendants did not definitively prove the existence of a virus. Instead, DePuy Mitek proffers several guesses as to why the Magistrate granted DePuy Mitek's motion. Mitek Resp. at 8-18. First, these guesses hazarded by DePuy Mitek were not included in defendants' objections to the Magistrate's Order, thus DePuy Mitek is not "responding" to anything to which defendants objected. Second, these guesses recklessly assert certain legal and factual inaccuracies to which defendants should be permitted to respond in the interest of fairness.

For example, in one of its guesses, DePuy Mitek incorrectly asserts that defendants failed to establish that Dr. Gitis' report contains a typographical error in reporting the suture diameter tested. Mitek Resp. at 10-13. That is just not true and all of the evidence in the case regarding suture diameter supports that there was a typographical error in Dr. Gitis' report. Defendants should be permitted to respond to this assertion.

In another example, DePuy Mitek asserts that defendants failed to show that Dr. Gitis' report contains an error in reporting the actual testing methodology used in conducting his pliability testing. Mitek Resp. at 13-16. Again, that is not true and defendants should also be permitted to respond this assertion. DePuy Mitek never disputes the methodology Dr. Gitis used to conduct his pliability test. Moreover, it was DePuy Mitek that pointed out the actual method to Dr. Gitis at his deposition.

In addition, DePuy Mitek wrongly asserts that defendants have waived the ability to correct a typographical error related to the knot slippage strength testing performed by Dr. Gitis. Mitek Resp. at 16. This is incorrect and defendants should be permitted to respond. Dr. Gitis is well within the legal timeframe for identifying errors in his report.

Finally, DePuy Mitek desperately pieces together a makeweight prejudice argument. But this is nothing more than empty unilateral threats of spending by DePuy Mitek. Perhaps most egregiously, DePuy Mitek shamelessly attempts to leave the impression that Dr. Gitis'

DSMDB-2180147v01

correcting his report would somehow impact the dispositive motions now pending before the Court. Here again, this is just not true. Neither DePuy Mitek nor defendants relied on Dr. Gitis' testing in support of any of their respective dispositive motions, or in defense of any such motions. Defendants should be permitted to clarify the record on these issues as well.

## IV.     CONCLUSION

For the foregoing reasons, DePuy Mitek's response to defendants' objections to the Magistrate's Order granting DePuy Mitek's motion to preclude defendants from supplementing their expert reports and depositions should be stricken as untimely, or in the alternative, defendants should be given an opportunity to reply thereto.

Dated: December 4, 2006

Respectfully submitted,

By: _____/s/Salvatore P. Tamburo_____
Charles W. Saber
Stephen A. Soffen
Salvatore P. Tamburo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C. 20006-5403
Telephone: (202) 420-3116
Facsimile: (202) 420-2201

Christopher Weld, Jr. (BBO # 522230)
Raymond P. Ausrotas (BBO # 640315)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
Telephone: (617) 720-2626
Facsimile: (617) 227-5777

Counsel for Defendants Arthrex, Inc. and
Pearsalls Ltd.

DSMDB-2180147v01

# EXHIBIT 1



--- F.Supp.2d ----                                                                                                              Page 1

--- F.Supp.2d ----, 2006 WL 2942790 (D.Mass.)
**(Cite as: --- F.Supp.2d ----)**

**H**
Briefs and Other Related Documents
Hutchins v. Cardiac Science,
Inc.D.Mass.,2006.Only the Westlaw citation is
currently available.
United States District Court,D. Massachusetts.
Donald C. HUTCHINS, Plaintiff
v.
CARDIAC SCIENCE, INC., et al., Defendants.
**C.A. No. 04-30126-MAP.**

Sept. 29, 2006.

**Background:** Patentee brought action against
former licensee of its intellectual property and
corporation that allegedly acquired that license in
asset purchase agreement, alleging copyright and
patent infringement, abuse of process, and tortious
interference with contract. After summary judgment
was granted in favor of acquiring corporation,
patentee moved for relief from judgment.

**Holdings:** The District Court, Michael A. Ponsor,
J., held that:

(1) one defendant's payment of indemnity to the
other was not admission as to the veracity of
patentee's claims, but

(2) alleged infringer's misrepresentation that it
possessed license rights to patentee's intellectual
property, when in fact it had transferred those rights
to a third party, entitled patentee to relief from
summary judgment.

Ordered accordingly.

**[1] Federal Civil Procedure 170A ☞2654**

170A Federal Civil Procedure
    170AXVII Judgment

170AXVII(G) Relief from Judgment
    170Ak2651 Grounds
        170Ak2654 k. Fraud; Perjury. Most
Cited Cases
To prevail on a motion for relief from judgment on
basis of misrepresentation of an adverse party, a
movant must establish, among other things, that an
alleged misrepresentation prevented him from fully
and fairly presenting his case. Fed.Rules
Civ.Proc.Rule 60(b)(3), 28 U.S.C.A.

**[2] Injunction 212 ☞138.18**

212 Injunction
    212IV Preliminary and Interlocutory Injunctions
        212IV(A) Grounds and Proceedings to
Procure
            212IV(A)2 Grounds and Objections
                212k138.18 k. Likelihood of Success
on Merits. Most Cited Cases
In order to allow a motion for preliminary
injunctive relief, a court must conclude that the
movant is likely to obtain ultimate judgment on the
merits.

**[3] Evidence 157 ☞222(2)**

157 Evidence
    157VII Admissions
        157VII(B) By Parties or Others Interested in
Event
            157k221 Parties of Record
                157k222 In General
                    157k222(2) k. Statements as to
Particular Facts in General. Most Cited Cases
Transferee corporation's demand for indemnity
from transferor corporation when patentee sued it
following transfer of patent license, and transferor
corporation's payment of indemnity to transferee
corporation, did not amount to admission by those
corporations as to the veracity of patentee's claims
for copyright and patent infringement, abuse of
process, and tortious interference with contract.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                    Page 2

--- F.Supp.2d ----, 2006 WL 2942790 (D.Mass.)
**(Cite as: --- F.Supp.2d ----)**

**[4] Federal Civil Procedure 170A ⬤⥤2558**

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)3 Proceedings
           170Ak2558 k. Judgment or Order.
Most Cited Cases
Interlocutory summary judgment order is subject to
the district court's discretionary power to alter it at
any time prior to the entry of the final decree.

**[5] Patents 291 ⬤⥤323.2(5)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k323 Final Judgment or Decree
           291k323.2 Summary Judgment
              291k323.2(5) k. Hearing and
Determination. Most Cited Cases
Alleged infringer's misrepresentation that it
possessed license rights to patentee's intellectual
property, when in fact it had transferred those rights
to a third party, entitled patentee to relief from
summary judgment granted in favor of alleged
infringer in action for patent and copyright
infringement. Fed.Rules Civ.Proc.Rule 60(b)(3), 28
U.S.C.A.

**Patents 291 ⬤⥤328(2)**

291 Patents
   291XIII Decisions on the Validity, Construction,
and Infringement of Particular Patents
      291k328 Patents Enumerated
         291k328(2) k. Original Utility. Most Cited
Cases

**Patents 291 ⬤⥤328(4)**

291 Patents
   291XIII Decisions on the Validity, Construction,
and Infringement of Particular Patents
      291k328 Patents Enumerated
         291k328(4) k. Reissue. Most Cited Cases
4,583,524, 5,913,685. Cited.

34,800. Cited.

Donald C. Hutchins, Longmeadow, MA, pro se.
Paul H. Rothschild, Bacon & Wilson, P.C.,
Springfield, MA, Randall T. Skaar, Scott G. Ulbrich
, Patterson, Thuente, Skaar & Christensen, P.A.,
Minneapolis, MN, Colleen Moran O'Neil, Jeffrey J.
Lauderdale, William E. Coughlin, Calfee, Halter &
Griswold LLP, Cleveland, OH, John J. Egan, Egan,
Flanagan & Cohen, PC, Springfield, MA, for
Defendants.

*MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTIONS FOR MISCELLANEOUS
RELIEF* (Dkt. Nos. 107, 108, and 191)
PONSOR, D.J.

*I. INTRODUCTION*

**\*1** This is a suit brought by *pro se* Plaintiff Donald
C. Hutchins against Cardiac Science, Inc. ("Cardiac
Science") and Complient Corporation ("Complient"
). Plaintiff alleges that Cardiac Science is liable for
copyright and patent infringement, abuse of process,
and tortious interference with contract.

Cardiac Science has denied Plaintiff's allegations
and asserted counterclaims against Plaintiff seeking
damages, certain declaratory judgments, and
injunctive relief.

Plaintiff has filed three motions presently before the
court. Two of these motions are fairly
straightforward. For the reasons set forth below, the
court will: (1) deny Plaintiff's Motion for Relief
from the Court's September 28, 2005 Order Denying
His Emergency Motion for a Temporary
Restraining Order (Dkt. No. 107); and (2) deny
Plaintiff's Motion for Sanctions Against Counsel for
Cardiac Science (Dkt. No. 191).

The third motion, Plaintiff's Motion for Relief from
the Court's June 23, 2005 Order Allowing Cardiac
Science's Motion for Summary Judgment (Dkt. No.
108), raises disturbing issues. Plaintiff contends,
and Cardiac Science now appears to concede, that
Cardiac Science made repeated misrepresentations
regarding its possession of certain license rights to
Plaintiff's intellectual property, when it knew that
these license rights, in fact, had been transferred to
a third party. Because these misrepresentations have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                    Page 3

--- F.Supp.2d ----, 2006 WL 2942790 (D.Mass.)
**(Cite as: --- F.Supp.2d ----)**

generated serious questions about Cardiac Science's entitlement to summary judgment on any of Plaintiff's claims, the court will, upon reconsideration, deny Cardiac Science's motion and set the case for a scheduling conference to determine future proceedings.

## II. *BACKGROUND* [FN1]

On June 1, 1994, Plaintiff and his closely-held company, CPR Prompt Corporation ("CPR Prompt"), entered into a license agreement (the "License Agreement") with County Line Limited Partnership ("County Line"). Under the terms of this agreement, Plaintiff and his company provided County Line with an exclusive license to various intellectual properties, including CPR Prompt®-a device designed to instruct individuals in the performance of cardiopulmonary resuscitation.[FN2] (*See* Dkt. No. 56, Ex. 1, License Agreement.)

Pursuant to § 3.10 of the License Agreement, County Line also agreed to assign its interest to an "Affiliate" that would
cause each partner of such Affiliate who purchases or otherwise acquires a partnership interest of such Affiliate directly from such Affiliate to agree to pay CPR-PROMPT seven and one-half percent (7.5%) of the net proceeds of any sale of any or all of such partnership interest to any person or entity which is not an Affiliate to such partner.

(License Agreement § 3.10.)

On September 19, 1994, County Line assigned all of its rights and obligations under the License Agreement to CPR Limited Partnership ("CPR L.P."), an Ohio entity that initially had two partners: Catalog Products, Inc., a 1% limited partner, and County Line itself, the 99% general partner.

**\*2** In December, 1997, County Line's corporate successor transferred its general partnership interest in CPR L.P. to CPR Prompt LLC, which subsequently converted to Complient, a Delaware corporation. Like the previous general partners, Complient retained a 99% partnership interest in CPR L.P. and performed various services related to

the License Agreement.

On October 21, 2003, unbeknownst to Plaintiff, Complient and CPR L.P. entered into an Asset Purchase Agreement ("APA") with Cardiac Science. Under the terms of the APA, Complient, as the general partner of CPR L.P., caused CPR L.P. to convey to Cardiac Science all of its "assets, properties, rights, and interests," including the License Agreement. (*See* Dkt. No. 56, Ex. 3, Asset Purchase Agreement § 1.1A.) Complient also transferred to Cardiac Science "substantially all of [its] assets, properties, rights and interests," but retained its general partnership interest in CPR L.P. (*Id.* at § 1.2(i).)

In return, Complient received $47 million in Cardiac Science common stock. (Dkt. No. 40, Ex. H, Wedbush Morgan Securities Report 4, Oct. 29, 2003.) According to Plaintiff, in November of 2003, Cardiac Science began to manufacture and sell products covered by Plaintiff's patents and bearing the CPR Prompt® trademark. (Dkt. No. 40, Ex. L., Hutchins Aff. ¶ 12, July 1, 2004.)

In the spring of 2004, Plaintiff noticed that he had not received any royalty payments or reports from Complient since the previous summer. (*Id.* at ¶ 8.) When Plaintiff called Complient's Cleveland headquarters he discovered that CPR L.P.'s general partner was no longer in business. (*Id.*)

Plaintiff subsequently contacted the law firm of Fish & Richardson and learned that Complient, for the first time since 1995, had recently failed to pay certain fees related to Plaintiff's patents. Under the circumstances, Plaintiff concluded that Complient had abandoned his intellectual properties, and he began discussing the possibility of licensing these properties to another entity. (*Id.* at ¶ 9.)

On April 29, 2004, Plaintiff received a phone call from Attorney Randall Skaar, a representative of Cardiac Science, who informed Plaintiff that Cardiac Science had acquired his intellectual properties. (*Id.* at ¶ 11.) After familiarizing himself with the terms of the APA, Plaintiff concluded that the 7.5% exit payment described in § 3.10 of the License Agreement had been triggered. On July 2,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 4

--- F.Supp.2d ----, 2006 WL 2942790 (D.Mass.)
**(Cite as: --- F.Supp.2d ----)**

2004, in response to Cardiac Science's refusal to recognize his right to an equity interest of $3,525,000, Plaintiff filed his original complaint against Cardiac Science, alleging: copyright infringement (Count I); patent infringement by means of sales (Count II); patent infringement by means of manufacture (Count III); negligence (Counts IV and V); and breach of contract (Count VI).[FN3]

It now appears undisputed that on August 11, 2004, Cardiac Science conveyed its interest in the License Agreement to Aristotle Corporation ("Aristotle"). ( *See* Dkt. No. 210, Skaar Decl. ¶ 2.) This marked the second time in less than ten months that Plaintiff's intellectual properties were transferred without Plaintiff's knowledge or consent.

**\*3** On August 18, 2004, Plaintiff filed an *ex parte* emergency motion for a temporary restraining order in an attempt to prevent Cardiac Science from disbursing stock to Complient pursuant to the APA. Two days later, on August 20, 2004, Cardiac Science filed its first brief in this action, opposing Plaintiff's emergency motion on the ground that Plaintiff had failed to show a substantial likelihood of success on the merits of his case. (*See* Dkt. No. 8). In this memorandum, Cardiac Science argued that it was "the exclusive licensee of the intellectual property at issue" and that therefore any claim for infringement was foreclosed, despite the fact that it had already conveyed these very licensing rights to Aristotle.

That same day, Cardiac Science filed a motion to dismiss based, in part, on the fact that "Cardiac Science is the exclusive licensee to the intellectual property allegedly infringed." (Dkt. No. 10, Cardiac Science's Mem. Supp. Mot. Dismiss 1.) On August 24, 2004, in response to Plaintiff's second motion for a temporary restraining order, Cardiac Science once again characterized itself as "the exclusive licensee of the intellectual property at issue" and therefore, it claimed, Cardiac Science "[could ]not be an infringer." (Dkt. No. 13, Cardiac Science's Mem. Opp'n Pl.'s Second Mot. TRO 2.)

The court heard argument on three motions on September 9, 2004, including Cardiac Science's motion to dismiss. During oral argument, Attorney Skaar stated that "Cardiac Science continues to pay [Plaintiff] royalties under the [License] [A]greement. So we think that we own that." (Hr'g Tr. 36:7-9, Sept. 9, 2004.)[FN4]

On September 22, 2004, Cardiac Science filed an answer denying Plaintiff's allegations and asserting counterclaims for: breach of contract (Count I); abuse of process (Count II); tortious interference with the APA (Count III); tortious interference with the License Agreement (Count IV); interference with prospective advantage (Count V); and attorney's fees under 35 U.S.C. § 285 (Count VI). In addition, Cardiac Science requested declaratory judgments establishing: its compliance with the terms of the APA (Count VII); its non-infringement of Plaintiff's intellectual property rights (Count VIII); and its rights as a licensee under the APA (Count IX). Cardiac Science also sought preliminary and permanent injunctive relief, enjoining Plaintiff from continuing to: (i) assert an ownership interest in certain intellectual property; (ii) allege infringement on the part of Cardiac, its customers, and/or prospective customers; and (iii) breach the License Agreement (Count X).

On December 22, 2004, pursuant to an order allowing Plaintiff's Rule 19 motion to join Complient, Plaintiff filed an eight-count amended complaint asserting claims of copyright infringement (Count I), patent infringement by means of sales (Count II), patent infringement by means of manufacture (Count III), abuse of process (Count VI), and tortious interference with contract (Count VII) against Cardiac Science, and claims of fraud (Count IV), fraudulent misappropriation and sale of patent (Count VI), and breach of contract (Count VIII) against Complient. Notably, while Plaintiff's original complaint contained a breach of contract claim against Cardiac Science, he chose not to pursue this cause of action in his amended complaint.

**\*4** Cardiac Science once again denied Plaintiff's allegations and asserted the same counterclaims that it had set forth in response to Plaintiff's original complaint.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                       Page 5

--- F.Supp.2d ----, 2006 WL 2942790 (D.Mass.)
**(Cite as: --- F.Supp.2d ----)**

On May 16, 2005, Cardiac Science moved for summary judgment on every claim brought against it by Plaintiff, as well as its declaratory judgment counterclaims. Cardiac Science then sent a letter to the court and Plaintiff dated June 13, 2005, in which it noted that the fourteen-day deadline for Plaintiff's opposition had passed, and Plaintiff had not yet offered a response. *See* Local Rule 7.1(b)(2) (requiring opposition to a motion within fourteen days after its service, "unless another period is fixed by rule or statute, or by order of the court").

On June 23, 2005, having heard nothing from Plaintiff in the face of counsel's letter, the court allowed Cardiac Science's motion for summary judgment based both on its merits and Plaintiff's failure to file a timely opposition. In response to this ruling, Plaintiff finally offered his opposition on June 27, 2005, sought relief from the court's ruling on June 29, 2005, and appealed the court's ruling on June 30, 2005.

The court denied Plaintiff's motion for relief on July 19, 2005. Plaintiff then filed another emergency motion for a temporary restraining order, which sought to compel Cardiac Science to: (1) pay Plaintiff all past due royalty payments; (2) reimburse Plaintiff for patent license fees; (3) meet all the ongoing requirements as the Licensee; and (4) transfer to Plaintiff the common stock shares and funds received by Cardiac Science as part of the June 28, 2004 demand for indemnity it served upon Complient. (*See* Dkt. No. 97 .)

After the court denied this motion for injunctive relief on September 28, 2005, Plaintiff filed a motion seeking relief from this ruling pursuant to Fed.R.Civ.P. 60(b)(3). On October 21, 2005, Plaintiff filed another Rule 60(b)(3) motion, which sought relief from the court's June 23, 2005 order allowing Cardiac Science's motion for summary judgment. Both Rule 60(b)(3) motions initially highlighted Cardiac Science's failure to comply with Local Rule 7.3.[FN5]

In opposing these motions, Cardiac Science cited the court's summary judgment determination that its "license rights to Plaintiff's asserted intellectual properties are in full force and effect." (Dkt. No.

113, Cardiac Science's Mem. Opp'n Pl.'s Mot. Relief from TRO Ruling 2; Dkt. No. 114, Cardiac Science's Mem. Opp'n Pl.'s Mot. Relief from Summ. J. 2.) Cardiac Science also claimed that Plaintiff had not shown misconduct, by clear and convincing evidence, that prevented the full and fair preparation or presentation of the case.

On June 20, 2006, the court noted that since obtaining summary judgment on Plaintiff's claims and its declaratory judgments, Cardiac Science had taken no action concerning its other counterclaims, which sought monetary damages or equitable relief. Accordingly, the court ordered Cardiac Science to file a status report informing the court whether it would continue to pursue such relief. In response, Cardiac Science filed a motion voluntarily to dismiss these counterclaims without prejudice, which the court allowed on July 17, 2006.

**\*5** On July 24, 2006, the First Circuit dismissed, without prejudice, Plaintiff's appeal of this court's June 23, 2005 order allowing Cardiac Science's motion for summary judgment. See *Hutchins v. Cardiac Science, Inc.,* No. 05-2182, slip op. (1st Cir. July 24, 2006) ("An order granting summary judgment on claims against one party is not appealable as a final judgment because it does not finally dispose of all rights of all parties." (citing 28 U.S.C. § 1291)).

Finally, on August 4, 2006, Plaintiff filed the pending motion for sanctions against counsel for Cardiac Science based on Attorney Skaar's conversations with counsel for Complient and his failure to disclose the sale of Plaintiff's intellectual property to Aristotle. In response, Cardiac Science claimed that Plaintiff's conspiracy allegation was baseless and that its representatives had not deceived the court. No satisfactory explanation was offered in these papers for Cardiac Science's repeated claims that it possessed license rights that it knew had been transferred to a third party.

### III. *DISCUSSION*

A. *Plaintiff's Motion for Relief from the Court's September 28, 2005 Order Denying Plaintiff's*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                          Page 6

--- F.Supp.2d ----, 2006 WL 2942790 (D.Mass.)
**(Cite as: --- F.Supp.2d ----)**

*Emergency Motion for a Temporary Restraining Order (Dkt. No. 107).*

As stated above, Plaintiff seeks relief from this court's previous refusal to order Cardiac Science to: (1) pay Plaintiff all past due royalty payments; (2) reimburse Plaintiff for patent license fees; (3) meet all the ongoing requirements as the Licensee; and (4) transfer to Plaintiff the common stock shares and funds received by Cardiac Science as part of the June 28, 2004 demand for indemnity it served upon Complient.

In support of his original Rule 60(b)(3) motion, Plaintiff stressed Cardiac Science's failure to inform Plaintiff or the court of its dissolution. While Cardiac Science has yet to make good on its stated intention to file an updated corporate disclosure statement reflecting its name change and merger with another entity (*see* Cardiac Science's Mem. Opp'n Pl.'s Mot. Relief from TRO Ruling 3-4), this failure to comply with Local Rule 7.3 plainly did not interfere with Plaintiff's application for preliminary injunctive relief.[FN6]

The closer question is whether Cardiac Science's misrepresentation regarding its status as the Licensee deprived Plaintiff of a fair hearing on his motion and entitles him to relief from the court's decision.

[1] To prevail on a Rule 60(b)(3) motion, a movant must establish, among other things, that an alleged misrepresentation prevented him from fully and fairly presenting his case. *See Roger Edwards, LLC v. Fiddes & Son Ltd.,* 427 F.3d 129, 135 (1st Cir.2005). Although it now appears clear Cardiac Science did misrepresent itself as the Licensee, this misrepresentation did not compromise the court's ruling denying Plaintiff's motion for a temporary restraining order.

[2] In order to allow a motion for preliminary relief, a court must conclude that the movant is likely to obtain ultimate judgment on the merits. *See Langlois v. Abington Hous. Auth.,* 207 F.3d 43, 54 (1st Cir.2000) ("[A] demonstrated likelihood of success on the merits is a *'sine qua non'* of

preliminary injunctive relief in this circuit." (citation omitted)). In this case, Plaintiff's first three requests for relief had no grounding in any underlying claim.

*6 As previously noted, Plaintiff's amended complaint asserts claims against Cardiac Science for copyright and patent infringement, abuse of process, and tortious interference with contract. Despite the fact that the amended complaint did not set forth a breach of contract claim against Cardiac Science, Plaintiff, in his motion for a temporary restraining order, asked for an order compelling Cardiac Science to fulfill its contractual obligations. Because Plaintiff was unlikely to succeed on a theory he had not set forth in his amended complaint, the court correctly denied Plaintiff's motion with respect to his first three requests for preliminary relief.

[3] As for the fourth request, because Plaintiff did not appear to be entitled to any of the proceeds Cardiac Science conveyed to Complient pursuant to the APA, he was not likely to be able to demonstrate at the ultimate trial that he was entitled to any stock or funds Complient conveyed to Cardiac Science pursuant to Cardiac Science's demand for indemnity. The fact that Cardiac Science responded to Plaintiff's suit by serving Complient with a demand for indemnity, which Complient paid, is not, as Plaintiff suggests, " tantamount to an admission by both Cardiac Science and Complient as to the veracity of [Plaintiff's] claims." (Pl.'s Mem. Supp. Emergency Mot. TRO 5.)

In short, the misrepresentations by Cardiac Science in no way affected the court's decision on Plaintiff's emergency motion for a temporary restraining order. Reconsideration of this ruling is therefore not called for.

*B. Plaintiff's Motion for Relief from the Court's June 23, 2005 Order Allowing Cardiac Science's Motion for Summary Judgment (Dkt. No. 108).*

As stated above, on June 23, 2005, the court allowed Cardiac Science's motion for summary

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 7

--- F.Supp.2d ----, 2006 WL 2942790 (D.Mass.)
**(Cite as: --- F.Supp.2d ----)**

judgment on every claim brought against it by Plaintiff and every declaratory judgment claim brought by Cardiac Science against Plaintiff. After the court denied Plaintiff's motion for relief from this ruling pursuant to Fed.R.Civ.P. 60(b)(1) and (2) , Plaintiff filed the pending motion, which seeks relief from the June 23, 2005 order under Fed.R.Civ.P. 60(b)(3).

Cardiac Science takes the position that Rule 60(b) relief is improper due to the fact that certain claims involving Plaintiff and Complient are still pending. " It is ... well settled that Rule 60 applies only to final judgments." *Farr Man & Co., Inc. v. M/V Rozita,* 903 F.2d 871, 874 (1st Cir.1990) (citations omitted). Because Complient's counterclaims against Plaintiff have yet to be resolved and the court's allowance of summary judgment on Cardiac Science's behalf was never certified as a final judgment, this ruling was interlocutory pursuant to Fed.R.Civ.P. 54.

[4] Of course, the fact that the June 23, 2005 order was interlocutory does not negate this court's authority to reconsider it. On the contrary, such an order is "subject to the district court's discretionary power to alter it at any time prior to the entry of the final decree." *Id.* at 875; *see also Jusino v. Zayas,* 875 F.2d 986, 990 n. 3 (1st Cir.1989) ("The inherent power of a court to correct, within a reasonable time, a manifest error in its own interlocutory order was not completely displaced by the adoption of the Civil Rules)." (citations omitted)).

*\*7* [5] Here, as noted, Cardiac Science's misrepresentation appears conceded. Its repeated and knowingly false assertion that it possessed the license rights at issue was at the core of its motion for summary judgment. Based on this, the court lacks confidence in its ruling on the motion for summary judgment and, upon reconsideration, will deny it. For all the court can discern at this point, Cardiac Science "has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly ... unfairly hampering the presentation of [Plaintiff's] claim or defense." *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir.1989); *see also Pearson v. First NH Mortgage*

*Corp.,* 200 F.3d 30, 37 (1st Cir.1999) (indicating that intentionally preventing the court "from knowing all the facts necessary to make an appropriate judicial decision on the matter before it" may be grounds for Rule 60(b)(3) relief (citations omitted)).

Cardiac Science now contends that it "never misrepresented the present ownership of the 1994 Hutchins License Agreement. The IP assets were transferred to Aristotle Corporation in August of 2004 and Cardiac Science retained the obligation to defend this lawsuit by Hutchins." (Skaar Decl. ¶ 2.)

This explanation flies in the teeth of Cardiac Science's explicit representations. From the onset of this litigation, Cardiac Science has, without equivocation, represented itself to be the Licensee ( *see* Dkt. No. 8, Cardiac Science's Mem. Opp'n Pl.'s Mot. TRO 2 ("Cardiac Science is the exclusive licensee of the intellectual property at issue and cannot be an infringer.")) and claimed to be abiding by the terms of the Licence (Cardiac Science's Mem. Supp. Mot. Summ J. 3 ("Cardiac Science has met and *is meeting* the terms and obligations of the License Agreement.") (emphasis added).) Cardiac Science's new-found agnosticism concerning whether the current Licensee, Aristotle, "has paid or owes Plaintiff any royalties" (Skaar Decl. ¶ 5) is inconsistent with past representations. Moreover, its concealment of the true licensing arrangement interfered with the court's ability to "impartially ... adjudicate a matter." *Aoude,* 892 F.2d at 1118.

Evidence of Cardiac Science's status as a *former* Licensee would obviously have been invaluable in opposing Cardiac Science's request for a declaration that it is the *current* Licensee. Such evidence would have also completely undermined Cardiac Science's only articulated defense to Plaintiff's infringement claims, *i.e.,* that its rights under the License Agreement constituted a valid affirmative defense.

Evidence that Cardiac Science concealed the identity of the true Licensee would have also provided much needed ballast to Plaintiff's allegation that Cardiac Science's counterclaims, far from being compulsory, were filed for the ulterior purpose of "intimidat[ing Plaintiff], diminsh[ing]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 8

--- F.Supp.2d ----, 2006 WL 2942790 (D.Mass.)
**(Cite as: --- F.Supp.2d ----)**

his resources and destroy[ing] his will to defend his intellectual properties." (Am.Compl.¶ 66.) [FN7]

**\*8** Finally, while Cardiac Science's misrepresentations did not constitute or conceal a tortious interference with Plaintiff's contract with Complient, such misconduct certainly seems to have interfered with Plaintiff's contract with Aristotle. Unlike Complient, which merely sold Plaintiff's intellectual property to Cardiac Science without informing him, Cardiac Science sold Plaintiff's intellectual property to Aristotle and actively concealed that any such sale occurred.

In short, the consequences of Cardiac Science's misconduct have hardly been "nugacious." *See Klonoski v. Mahlab,* 156 F.3d 255, 275 (1st Cir.1998) ("[I]f the movant can successfully demonstrate that the misconduct was knowing or deliberate ... a presumption of substantial interference arises," which can only be defeated "by a clear and convincing demonstration that the consequences of the misconduct were nugacious." (citation omitted)), *cert. denied, Mary Hitchcock Memorial Hosp. v. Klonoski,* 526 U.S. 1039, 119 S.Ct. 1334, 143 L.Ed.2d 498 (1999).[FN8] With no lesser remedy reasonably effective, the court will vacate its June 23, 2005 ruling in favor of Cardiac Science.

C. *Plaintiff's Motion for Sanctions Against Counsel for Cardiac Science (Dkt. No. 191).*

Having vacated its ruling on Cardiac Science's motion for summary judgment, the court sees no reason further to sanction counsel pursuant to Local Rule 1.3. It is not clear at this point whether counsel himself was responsible for the misrepresentation, or was relying on misinformation supplied to him by his client. The court may return to this issue at a later date.

IV. *CONCLUSION*

Based on the foregoing, the court hereby: DENIES Plaintiff's Motion for Relief from the Court's September 28, 2005 Order Denying His Emergency

Motion for a Temporary Restraining Order (Dkt. No. 107); (2) ALLOWS Plaintiff's Motion for Relief from the Court's June 23, 2005 Order Allowing Cardiac Science's Motion for Summary Judgment (Dkt. No. 108); and (3) DENIES Plaintiff's Motion for Sanctions Against Counsel for Cardiac Science (Dkt. No. 191).

The clerk will set this case for a status conference to determine further proceedings.

It is So Ordered.

> FN1. The origins of Plaintiff's dispute with Complient were documented in great detail in a recently issued memorandum and order. *See Hutchins v. Cardiac Science, Inc.,* C.A. No. 04-30126-MAP, 2006 WL 2789866 (D.Mass. Sept.27, 2006). Because Plaintiff's dispute with Cardiac Science is based, in part, on Plaintiff's 1994 agreement with Complient's progenitor, many of the facts provided in the Background section of the recently issued memorandum and order will be set forth here as well.

> FN2. CPR Prompt® is the embodiment of U.S. Patent No. 4,583,524 ("the 524 patent "), which the U.S. Patent and Trademark Office ("PTO") issued to Plaintiff on April 22, 1986. The device is also claimed in U.S. Patent Reexamination No. 34,800 (" the 800 patent"), which the PTO issued to Plaintiff on November 29, 1994.
> In addition, Plaintiff owns U.S. Patent No. 5,913,685 (filed June 24, 1996) (issued June 22, 1999) ("the 685 patent"), which discloses an electronic device "to provide guidance to rescue personnel trained in CPR for resuscitating a victim under an emergency condition." 685 patent, col.9 ll.46-48.
> Plaintiff also holds one trademark registration-"CPR Prompt"-and two copyright registrations-U.S. Copyright No. TX-u-210-208, which covers the device's script and word list, and U.S. Copyright

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 9

--- F.Supp.2d ----, 2006 WL 2942790 (D.Mass.)
**(Cite as: --- F.Supp.2d ----)**

No. TX-u-213-859, which pertains to its assembler software program-that are relevant to this litigation.

FN3. On July 28, 2004, Cardiac Science issued a demand for indemnity to Complient based on Plaintiff's complaint.

FN4. Ultimately, the court allowed Cardiac Science's motion to dismiss with respect to Plaintiff's negligence claims, but otherwise denied it.

FN5. This provision requires corporate litigants to "file a statement identifying any parent corporation and any publicly held company that owns 10% or more of the party's stock" and "promptly supplement the statement upon any change in the information that the statement requires." Local Rule 7.3.

FN6. That being said, the court hereby orders Cardiac Science to file an updated corporate disclosure statement should the circumstances of its merger and/or name change implicate the dictates of Local Rule 7.3.

FN7. *Cf. Hull v. Municipality of San Juan,* 356 F.3d 98, 102 (1st Cir.2004) (finding the "unfairness" to be "two-fold" in case where plaintiff provided false information about an issue "peculiarly within [his] privileged control").

FN8. It also bears noting that the misconduct of Cardiac Science has prompted Plaintiff to file his ninth suit in this court. (*See Hutchins v. Aristotle Corp.,* 06-cv-30140-MAP.)

D.Mass.,2006.

Hutchins v. Cardiac Science, Inc.

--- F.Supp.2d ----, 2006 WL 2942790 (D.Mass.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 2919902 (Trial Pleading) Amended Complaint (Aug. 2, 2006)

• 2006 WL 353395 (Trial Motion, Memorandum and Affidavit) Defendant Complient Corporation's Memorandum in Opposition to Plaintiff's Motion for Joinder of Parties (Jan. 3, 2006) Original Image of this Document (PDF)

• 2005 WL 3534880 (Trial Motion, Memorandum and Affidavit) Defendant Cardiac Science's Memorandum of Law in Opposition to Plaintiff's Motion for Relief from Summary Judgment Pursuant to Rule 60(b)(3) and Local Rule 7.3(b) (Nov. 13, 2005) Original Image of this Document (PDF)

• 2005 WL 3534879 (Trial Motion, Memorandum and Affidavit) Defendant Cardiac Science's Memorandum of Law in Opposition to Plaintiff's Motion for Relief from Order Pursuant to Rule 60(b)(3) and Local Rules 7.1(2) and 7.3(B) (Nov. 3, 2005) Original Image of this Document (PDF)

• 2005 WL 2454499 (Trial Motion, Memorandum and Affidavit) Plaintiff Donald C Hutchins' Opposition to Defendant's Motion for Summary Judgment (Aug. 24, 2005) Original Image of this Document with Appendix (PDF)

• 2005 WL 2454497 (Trial Pleading) Plaintiff, Donald C. Hutchins' Answer and Affirmative Defenses to Counterclaims (Aug. 22, 2005) Original Image of this Document with Appendix (PDF)

• 2005 WL 2454498 (Trial Motion, Memorandum and Affidavit) Motion to Compel Defendant, Complient Corporation to Withdraw All Forged Filings and to Re-File with Corrected Filings that Comply with Rule 11(a) Signing and Rule 11(b) Representations to Court (Aug. 22, 2005) Original Image of this Document with Appendix (PDF)

• 2004 WL 2195406 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Strike and in Reply to Plaintiff's Opposition to the Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Sep. 7, 2004) Original Image of this Document (PDF)

• 2004 WL 2195403 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Suppport of Plaintiff's Motion for Joinder Under R. 19(a)(1) and R. 19(a)(2)(ii) of Civil Procedure (Sep. 2, 2004) Original Image of this Document (PDF)

• 2004 WL 2195396 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion to Strike and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                    Page 10

--- F.Supp.2d ----, 2006 WL 2942790 (D.Mass.)
**(Cite as: --- F.Supp.2d ----)**

Memorandum in Opposition to Defendant's
Amended Motion to Dismiss Under R 12(b)(1) and
12(b)(6) of Civil Procedure (Aug. 31, 2004)
Original Image of this Document with Appendix
(PDF)
• 2004 WL 2195392 (Trial Motion, Memorandum
and Affidavit) Defendant's Memorandum of Law in
Opposition to Plaintiff's Second Motion for a
Temporary Restraining Order (Aug. 24, 2004)
Original Image of this Document with Appendix
(PDF)
• 2004 WL 2195389 (Trial Motion, Memorandum
and Affidavit) Defendant's Amended Memorandum
of Law in Support of Its Motion to Dismiss Under
Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Aug. 23,
2004) Original Image of this Document (PDF)
• 2004 WL 2195384 (Trial Motion, Memorandum
and Affidavit) Defendant's Memorandum of Law in
Opposition to Plaintiffs Motion for a Temporary
Restraining Order (Aug. 20, 2004) Original Image
of this Document (PDF)
• 2004 WL 2195386 (Trial Motion, Memorandum
and Affidavit) Defendant's Memorandum of Law in
Support of Its Motion to Dismiss Under Fed. R.
Civ. P. 12(b)(1) and 12(b)(6) (Aug. 20, 2004)
Original Image of this Document (PDF)
• 2004 WL 2195380 (Trial Pleading) Complaint
(Jul. 2, 2004) Original Image of this Document
(PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2



Not Reported in F.Supp.2d                                                                                          Page 1

Not Reported in F.Supp.2d, 2004 WL 224565 (D.Mass.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Cronin          v.          Commonwealth          of
MassachusettsD.Mass.,2004.Only      the      Westlaw
citation is currently available.

United States District Court,D. Massachusetts.
Suzanne CRONIN
v.
THE COMMONWEALTH OF
MASSACHUSETTS, Phillip Lindsay and George
Haroutunian
**No. Civ.A. 03-11749-RGS.**

Feb. 5, 2004.

H. Brooks Wheland, Somerville, MA, for Plaintiff.
Peter Francis Russell, Massachusetts Attorney
General's Office, Boston, MA, Joseph P. Kittredge,
Law Offices of Timothy M. Burke, Needham, MA,
for Defendants.

*MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION TO RECONSIDER*
STEARNS, J.
**\*1** The following facts are relevant. On June 27,
2003, the underlying complaint was filed in the
Massachusetts Superior Court, asserting among
other claims, causes of action based on 42 U.S.C. §
1983. On September 11, 2003, the case was
removed to the federal district court on federal
question grounds. On November 13, 2003, a motion
to dismiss was filed by the Commonwealth of
Massachusetts, the Superintendent of the State
Police, and the Registrar of Motor Vehicles (the
latter sued in their official capacities), and George
Haroutunian, an administrative law judge assigned
to the Registry of Motor Vehicles. District Court
Local Rule 7.1(B)(2) required plaintiff, absent the
grant of an enlargement of time, to file an
opposition to the motion to dismiss within fourteen
days. As of December 22, 2003, no opposition had
been filed or extension sought. The court
consequently allowed the motion to dismiss.

On January 12, 2004, plaintiff's counsel filed the
instant motion to reconsider, citing his unawareness
of the pendency of the motion to dismiss as the
explanation for his failure to file an opposition.
Among the factors a court is directed to consider in
ruling on a motion for reconsideration of a
dismissal order entered because of a plaintiff's
failure to file a timely opposition are the reasons for
the tardiness, the degree of prejudice the allowance
of the motion would cause to the non-moving party,
and "whether the belated filing would, in any event,
be more than an empty exercise." *United States v.
Roberts,* 978 F.2d 17, 22 (1st Cir.1992). The court
may also consider its institutional interest in
preserving the integrity of its rules of procedure. "
Valid local rules are an important vehicle by which
courts operate. Such rules carry the force of law, ...
and they are binding upon the litigants and upon the
court itself." *Air Line Pilots Association v.
Precision Valley Aviation, Inc.,* 26 F.3d 220, 224
(1st Cir.1994). A district court has "great leeway in
the application and enforcement of its local rules."
*Roberts,* 978 F.2d at 20. *See also Ramsdell v.
Bowles,* 64 F.3d 5, 8 (1st Cir.1995) (court properly
struck opposition to summary judgment filed one
day late under District of Maine Local Rules). "[I]t
is within the district court's discretion to dismiss an
action based on a party's unexcused failure to
respond to a dispositive motion when such response
is required by local rule, at least when the result
does not clearly offend justice." *Nepsk, Inc. v. Town
of Houlton,* 283 F.3d 1, 7 (1st Cir.2002).

Here, counsel's admitted inattention falls far short
of any showing of an excusable failure on his part.
A litigating attorney has a duty to monitor the
progress of his case on the court's docket and
cannot delegate that responsibility to the court or to
opposing counsel. *Davila-Alvarez v. Escuela de
Medicina Universidad Central del Caribe,* 257 F.3d
58, 64-65 (1st Cir.2001). While any prejudice to the
defendants that would result from granting the
motion to reconsider is not large (given the early
stage of the proceedings), it is doubtful that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2

Not Reported in F.Supp.2d, 2004 WL 224565 (D.Mass.)
**(Cite as: Not Reported in F.Supp.2d)**

consideration of plaintiff's belated opposition to the motion to dismiss would alter the result. Under the Sovereign Immunity Clause of the Eleventh Amendment, a state, its agencies, and agency officials acting in their official capacities are not "persons" subject to suit under section 1983 for money damages, either in state or federal court. *Will v. Michigan Department of State Police,* 491 U.S. 58, 65-67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Woodbridge v. Worcester State Hospital,* 384 Mass. 38, 44-45 & n. 7, 423 N.E.2d 782 (1981); *Laubinger v. Department of Revenue,* 41 Mass.App.Ct. 598, 601-602, 672 N.E.2d 554 (1996). The same grant of immunity from suit applies to actions brought under the Massachusetts Civil Rights Act. *Commonwealth v. Elm Medical Laboratories, Inc.,* 33 Mass.App.Ct. 71, 76, 596 N.E.2d 376 (1992). Finally, a state official performing a judicial function is absolutely immune from suit for his adjudicatory acts. *Butz v. Economou,* 438 U.S. 478, 509, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (administrative law judges); *Johnson v. Rhode Island Parole Board Members,* 815 F.2d 5, 7-8 (1st Cir.1987) (parole board members); *Wang v. New Hampshire Bd. of Registration in Medicine,* 55 F.3d 698, 701 (1st Cir.1995) (members of a medical disciplinary board). *Cf. Comins v. Sharkansky,* 38 Mass.App.Ct. 37, 39, 644 N.E.2d 646 (1995) (arbitrators exercising judicial functions).

**\*2** The remaining claims insofar as they implicate the official defendants fare no better. While the Massachusetts Tort Claims Act, G.L. c. 258, § 1 et seq., permits the substitution of the Commonwealth as a defendant in cases involving torts committed by its employees, the Act does not cover intentional torts. *Id.,* § 10(c). *See MacLean v. Delinsky,* 407 Mass. 869, 878 n. 6, 556 N.E.2d 60 (1990). The claims asserted against Trooper Lindsay fall within the category of intentional torts and are therefore not redressable under the Act. The allegation that plaintiff's civil rights were violated by the failure of Registry of Motor Vehicle officials (assuming that the Registry is not an "arm of the state" immune from suit) to follow proper procedures in suspending her driver's license is not actionable under the Massachusetts Civil Rights Act, G.L. c. 12, §§ 11H, I, absent a plausible pleading of "

threats, intimidation, or coercion." *Longval v. Commissioner of Correction,* 404 Mass. 325, 332-333, 535 N.E.2d 588 (1989). *Cf. Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico,* 322 F.3d 56, 68 (1st Cir.2003). Indulging the same assumption that the State Police is a proper "person" subject to suit under the Civil Rights Act, it cannot be sued on a theory of respondent superior for violations committed by employees acting outside the lawful scope of their employment.[FN1] *Cf. Sarvis v. Boston Safe Deposit and Trust Co.,* 47 Mass.App.Ct. 86, 97, 711 N.E.2d 911 (1999). The allegations directed against Trooper Lindsay are beyond the rim of any plausible description of his official duties. Finally, the Commonwealth and its officials are not subject to suit under G.L. c. 214, § 1B, for the disclosure of information properly in their possession. *Opinion of the Justices,* 423 Mass. 1201, 1235, 668 N.E.2d 738 (1996).[FN2]

> FN1. Count XIV, which alleges that the State Police violated plaintiff's rights to due process under the "Articles of Man" (presumably the Declaration of Rights) and the laws of Massachusetts, appears to be based on the same theory of vicarious liability.

> FN2. It is not clear whether plaintiff is objecting to information about her arrest being disseminated in the official records of the criminal justice system, or to the use of the same information by the prosecutor at her trial. If the latter, the litigation privilege precludes any cause of action. *See Doe v. Nutter, McClennan & Fish,* 41 Mass.App.Ct. 137, 140-141, 668 N.E.2d 1329 (1996).

In sum, sustaining the dismissal does not offend equity as plaintiff's attempt to cast a net over the official defendants is a largely hopeless undertaking. She may object to the summary disposition of a substantial portion of her case by a federal court, rather than having it resolved by the courts of Massachusetts where she originally filed suit, but it was her choice to bring a cause of action

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 3

Not Reported in F.Supp.2d, 2004 WL 224565 (D.Mass.)
**(Cite as: Not Reported in F.Supp.2d)**

under 42 U.S.C. § 1983, thus creating the grounds
for removal. While the usual practice is to remand
supplemental claims upon the dismissal of
foundational federal claims, *see Camelio v.
American Federation,* 137 F.3d 666, 672 (1st
Cir.1998), I see no reason to do so here where the
reason for the dismissal is by way of a sanction for
the failure to observe the court's rules and where the
surviving federal claims against Trooper Lindsay
would result in an awkward splitting of an action
where all claims arise out of the same nucleus of
common facts. *See Roche v. John Hancock Mut.
Life Ins. Co.,* 81 F.3d 249, 256-257 (1st Cir.1996).
FN3

> FN3. Plaintiff is correct that the motion to
> dismiss does not run to defendant Phillip
> Lindsay. The Clerk will restore that
> portion of the case that involves Trooper
> Lindsay to the active docket.

### *ORDER*

For the foregoing reasons, the motion for
reconsideration is *DENIED.*
SO ORDERED.

D.Mass.,2004.
Cronin v. Commonwealth of Massachusetts
Not Reported in F.Supp.2d, 2004 WL 224565
(D.Mass.)

Briefs and Other Related Documents (Back to top)

• 1:03cv11749 (Docket) (Sep. 11, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.