**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| DePuy Mitek, Inc. a Massachusetts Corporation | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04-12457 PBS |
| Arthrex, Inc. a Delaware Corporation, *et al*. | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS ARTHREX, INC.'S AND
PEARSALLS LTD.'S MOTION *IN LIMINE* TO PRECLUDE DEPUY MITEK FROM
ARGUING AT TRIAL THAT COATING'S EFFECT ON FIBERWIRE IS MINIMAL
COMPARED TO THE EFFECT OF COMBINING TWO DIFFERENT MATERIALS**

Dated: July 13, 2007

Charles W. Saber
Stephen A. Soffen
Salvatore P. Tamburo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C.  20006-5403
Telephone:  (202) 420-3116
Facsimile:  (202) 420-2201

Christopher Weld, Jr. (BBO # 522230)
Raymond P. Ausrotas (BBO # 640315)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
Telephone:  (617) 720-2626
Facsimile:  (617) 227-5777

Counsel for Defendants
Arthrex, Inc. and Pearsalls Ltd.

## TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION.............................................................................................. 1

II.  DEPUY MITEK'S NEW ASSERTION IS NOT SUPPORTED BY
     ANY EVIDENCE............................................................................................ 2

III. EVEN IF DR. BROOKSTEIN'S SUMMARY JUDGMENT DECLARATION
     SUPPORTED DEPUY MITEK'S NEW ARGUMENT, IT SHOULD BE
     PRECLUDED BECAUSE IT IS WAY TOO LATE ....................................... 4

IV.  CONCLUSION ............................................................................................... 5

DSMDB-2288676v01

# TABLE OF AUTHORTIEIS

## FEDERAL CASES

**Page No.(s)**

*Alves v. Mazda Motor of America, Inc.*, 448 F. Supp. 2d 285 (D. Mass. Aug. 21, 2006) .................................................................................................................2, 4, 5

*Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40 (1st Cir. 2005).............................................................................1, 4

DSMDB-2288676v01

## I.  INTRODUCTION

As the Court is aware, the parties agreed to limit the issues at the upcoming trial, scheduled to begin August 6, 2007, to whether defendant Arthrex, Inc.'s ("Arthrex's") FiberWire suture products infringe the asserted claims of U.S. Patent No. 5,314,446 ("the '446 Patent"). The principal issue in the case is whether the coating added to FiberWire materially affects the basic and novel properties of the invention.  More specifically, the dispute between the parties is whether the coating on FiberWire materially affects the handleability or pliability of the FiberWire suture.[1]

Defendants Arthrex and Pearsalls file this motion because during the most recent summary judgment briefing (just a couple of months ago), DePuy Mitek made a brand new argument that the effect of the silicone coating on FiberWire's handleability properties is "minimal in comparison" with the greatly enhanced properties achieved by the mechanical blending of ultra-high molecular weight PE and PET.  Ex. 1 at 18-20.  That is, DePuy Mitek is now, for the first time in this case, making an argument that the relative benefit of the coating is minimal compared with the benefits achieved by the braided materials.  Ex. 1 at 18.  As explained below, DePuy Mitek, however, has *no evidence* to support this new argument.  Since it has no evidence, DePuy Mitek simply makes it up, by attributing statements to its expert, Dr. Brookstein, that he never made.  Unsupported attorney arguments, however, are not a substitute for evidence.  *See, e.g., Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 43-44 (1st Cir. 2005).

---

[1]     Defendants Arthrex and Pearsalls, Ltd. ("Pearsalls") are also asserting other defenses in this case.  Arthrex also claims that its FiberWire suture does not infringe the '446 Patent because of the adhesive applied to the suture during the tipping process, which Arthrex claims materially affects the pliability and/or handleability of the suture.  Arthrex also claims non-infringement under the reverse doctrine of equivalents.  Further, Pearsalls claims that it does not contribute to any alleged infringement.  While these defenses will be raised at trial by Defendants, they are not relevant for purposes of this motion *in limine*.

DSMDB-2288676v01

Further, even if DePuy Mitek did have evidence to support its new assertion -- which it does not -- it should still be precluded from presenting it at trial because it is way too late in the game to be asserting new evidence.  Defendants' experts have not had a chance to review and comment upon this new evidence and to allow DePuy Mitek to come forward with it at this late time would be greatly prejudicial to Defendants.  *See, e.g., Alves v. Mazda Motor of America, Inc.*, 448 F.Supp.2d 285, 293 (D. Mass. Aug. 21, 2006).  For these reasons, and the reasons mentioned below, DePuy Mitek should be precluded from making its new argument at trial.

## II.        DEPUY MITEK'S NEW ASSERTION IS NOT SUPPORTED BY ANY EVIDENCE

As mentioned above, DePuy Mitek's new assertion is that the benefits achieved by braiding together the two different materials in FiberWire (*i.e.,* UHMWPE and PET) are so great that any benefit realized by the addition of coating are "minimal in comparison."    But, as shown below, DePuy Mitek has no evidence to support this new argument.

DePuy Mitek points to Arthrex's development of FiberWire as allegedly supporting its newly-minted argument, but notably, DePuy Mitek points to *nothing* in the FiberWire development work which even remotely concerns the effect of coating on FiberWire.  Ex. 1 at 18-19.  Specifically, DePuy Mitek points to the deposition testimony of one of FiberWire's developers, Mr. Grafton, as allegedly supporting its new assertion that the effect of silicone coating on FiberWire's properties are minimal compared with the enhanced properties achieved by braiding together two different materials.  Ex. 1 at 18.

While Mr. Grafton discussed the benefits of the combination of ultra-high molecular weight polyethylene ("UHMWPE") and PET, he *never said anything* about the effect of coating on any of FiberWire's properties being "minimal in comparison" to those benefits.  In fact, DePuy Mitek *never asked* Mr. Grafton whether he thought the effect of coating on *any* of FiberWire's properties -- much less its pliability and/or handleability, the specific suture

DSMDB-2288676v01

properties at issue in the case -- was "minimal in comparison."  In fact, to the extent that Mr. Grafton provided any testimony about coating's effect on FiberWire, Mr. Grafton testified -- like every other fact witness in the case -- that because FiberWire is a braided multifilament suture, it must be coated due to the irregular surface of the braid and so as to achieve proper knot sliding (as well as other benefits).  Ex. 2 at 154:6-17.  Yet, somehow, DePuy Mitek concludes that "Arthrex's own technical experience . . . establish[es] that FiberWire's coating's effects are not material effects."  Ex. 1 at 19.  *That simply never happened.*

Perhaps realizing that its new argument has a gaping hole in it, DePuy Mitek next turns to its purported suture coating expert, Dr. Brookstein, in an attempt to try and fill that hole.  But even if Dr. Brookstein *were* qualified to opine on coating's effects on suture properties,[2] he *never* made *any* of the statements attributed to him by DePuy Mitek.

For example, after allegedly telling the story of FiberWire's development, DePuy Mitek posits: "The question then becomes: What effect, if any, does FiberWire's coating have on this suture that already has excellent properties?"  Ex. 1 at 19.  DePuy Mitek then purports to answer that question and asserts that "as Dr. Brookstein explained, because it is just a lubricant, FiberWire's surface coating has a minimal effect relative to the dramatically improved handleability properties attributable to the heterogeneous braid of the invention."  Ex. 1 at 19. DePuy Mitek then cites to Dr. Brookstein's declaration at paragraph 47.

A review of paragraph 47 of Dr. Brookstein's declaration -- indeed, a review of his *entire* declaration and *all* of his expert reports -- reveals, however, that Dr. Brookstein never stated any of this.  Ex. 3 at ¶ 47.  Not only did he never state any of this, but he also readily admitted that he never did any comparison of the impact of coated and uncoated versions of

---

[2]     In an accompanying motion *in limine*, Defendants explain that Dr. Brookstein's woeful lack of qualifications renders him unqualified to provide *any* opinions on coating's effects on suture properties.  But even if he were qualified, it would not help DePuy Mitek here because he never presented evidence to support DePuy Mitek's late and novel theories.

DSMDB-2288676v01

FiberWire -- work that would have been necessary to support that alleged opinion. Ex. 4 at 198:17-199:2.

Rather, the portion of Dr. Brookstein's declaration upon which DePuy Mitek relies (Ex. 3 at ¶ 47) is merely a regurgitation of Dr. Brookstein's "opinion" that only a small amount of coating was added to FiberWire and that, as a result, FiberWire's coating "does not transform the braided FiberWire materials into another structure or cause it to lose its characteristics that are attributable to the dissimilar yarns being braided." *Id*. This is nothing more than Dr. Brookstein's "magic and miracles" argument. Even if Dr. Brookstein had a basis for that opinion -- and he does not -- *it has absolutely nothing to do with DePuy Mitek's new assertion regarding the relative effect of coating being "minimal in comparison" to the effect of braiding together the two different materials*. That is, *nowhere* does Dr. Brookstein make the statements which DePuy Mitek now wishes to attribute to him. It is not in his declaration, not in his expert reports and not in his deposition. Such statements exist only in the pen of DePuy Mitek's attorneys. But that is not evidence. *Rojas-Ithier*, 394 F.3d at 43-44.[3]

III.     **EVEN IF DR. BROOKSTEIN'S SUMMARY JUDGMENT DECLARATION SUPPORTED DEPUY MITEK'S NEW ARGUMENT, IT SHOULD BE PRECLUDED BECAUSE IT IS WAY TOO LATE**

As mentioned above, this new "minimal in comparison" argument first surfaced in DePuy Mitek's summary judgment papers this past April. In support, DePuy Mitek pointed to Dr. Brookstein's declaration, first submitted in opposition to Defendant's summary judgment motion. As we explained above, Dr. Brookstein's declaration does not support this new

---

[3]     DePuy Mitek will probably contend that Dr. Brookstein, in his declaration and his expert report, provides the evidence to support this new argument when he cited to Mr. Grafton's testimony explaining the benefits of FiberWire obtained from braiding together the UHMWPE and PET. But as explained above, Mr. Grafton *never* testified that coating's benefits were minimal in comparison. Likewise, Dr. Brookstein *never* attributes any such assertion to Mr. Grafton, nor does Dr. Brookstein *ever* present *any* evidence that the coating's benefits are minimal compared to the benefits from braiding together the two materials.

DSMDB-2288676v01

argument.  But even if DePuy Mitek could cobble together an argument that Dr. Brookstein did supply the evidentiary link for DePuy Mitek to make its new argument,[4] it is way too late in the game for DePuy Mitek to be springing new evidence on Defendants.  *Alves,* 448 F.Supp.2d at 293.  Expert discovery expired on June 30, 2006.  The new declaration did not appear until several months later.  As a result, Defendants' experts have not had a chance to review this submission, nor have they had a chance to respond to it.  In summary, to allow DePuy Mitek to present any new evidence at trial (from Dr. Brookstein, or otherwise), evidence that was not disclosed during discovery, would greatly prejudice Defendants.  Accordingly, DePuy Mitek should not be permitted to do so.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion should be granted.

---

[4]    Defendants recognize that Dr. Brookstein' regurgitation of Mr. Grafton's testimony about the benefits of braiding together the two materials is not new and, as a result, we expect that DePuy Mitek will attempt to argue that Dr. Brookstein's declaration is nothing new.  Any such argument will be to no avail, because, as explained above, such evidence does not support DePuy Mitek's new argument. *See supra* at 2-4.

DSMDB-2288676v01

Dated: July 13, 2007

Respectfully submitted,

By:   **/s/Charles W. Saber**

Charles W. Saber
Stephen A. Soffen
Salvatore P. Tamburo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C.  20006-5403
Telephone:  (202) 420-3116
Facsimile:  (202) 420-2201

Christopher Weld, Jr. (BBO # 522230)
Raymond P. Ausrotas (BBO # 640315)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
Telephone:  (617) 720-2626
Facsimile:  (617) 227-5777

Counsel for Defendants
Arthrex, Inc. and Pearsalls Ltd.

DSMDB-2288676v01

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing DEFENDANTS

ARTHREX, INC.'S AND PEARSALLS LTD.'S MOTION *IN LIMINE* TO PRECLUDE

DePUY MITEK FROM ARGUING AT TRIAL THAT COATING'S EFFECT ON

FIBERWIRE IS MINIMAL COMPARED TO THE EFFECT OF COMBINING TWO

DIFFERENT MATERIALS, and MEMORANDUM in support thereof, were served, via the

Court's email notification system on the following counsel for Plaintiff on the 13th day of July

2007:


Lynn A. Malinoski
Woodcock Washburn, LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA  19104-2891
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

Daniel J. Gleason
Nutter McClennan & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604
Telephone:  (617) 439-2000
Facsimile:  (617) 310-9000


**/s/Charles W. Saber**

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DePuy Mitek, Inc.                                )
    a Massachusetts Corporation       )
                                      )
      Plaintiff,                   )
                                      )
      v.                           )    Civil No. 04-12457 PBS
                                      )
Arthrex, Inc.                                    )
    a Delaware Corporation and        )
                                      )
Pearsalls Ltd.                                   )
    a Private Limited Company         )
    of the United Kingdom

      Defendants.

**DePuy Mitek's Memorandum in Support of Its Motion for Summary Judgment of
<u>Infringement & Opposing Arthrex's Motion for Summary Judgment of Noninfringement</u>**

3. **Fact Witness And Expert Testimony Raise Genuine Issues of Material Fact**

Mitek has additional *prima facie* proof that FiberWire's coating does not affect the novel and basic characteristics of the invention claimed in the 466 Patent. As Arthrex's witnesses admit, FiberWire's PE and PET yarns are in direct intertwining contact even though the suture is coated (Ex. 8 at 100:20-101:4; Ex. 10 at 361:17-362:14). Also, as shown in Dr. Brookstein's photographs and in his analysis of FiberWire, the coating does not affect the individual yarns or their direct intertwining contact, and does not sacrifice the physical properties of the constituent elements of the suture (Ex. 6 at ¶¶47-49; 62-64). Even Dr. Mukherjee, Arthrex's expert, admits that FiberWire's coating does not prevent FiberWire's PET and PE fibers from contributing to FiberWire's properties (Ex. 10 at 562:20-25). Thus, regardless of FiberWire's coating, the pliability and handleability that results from the selection of the yarns and from braiding them in direct intertwining contact is not affected by coating, and the constituent elements are not sacrificed (Ex. 6 at ¶47).

4. **Dr. Brookstein's Unrebutted Testimony Raises Genuine Issues of Material Fact**

As Dr. Brookstein explained, the story of FiberWire's development establishes that it was the mechanical blending of PE and PET, by braiding PE and PET yarns, which yielded a suture with greatly enhanced properties (Ex. 2 at 2:62-66). The effect of the silicone coating on FiberWire's properties was minimal in comparison.

Before Arthrex developed FiberWire, Arthrex sold two braided polyester (PET) sutures (Ex. 12 at 15:8-15; 22:23-25; 36:17-18). These sutures had handling problems because, as Arthrex's Mr. Grafton admits, the first polyester (PET) suture was not "compliant," and the

---

would have been gleaned from analysis of the samples would have been adverse to Arthrex's contentions, there exist additional, genuine issues of material fact.

18

second polyester (PET) suture broke when being handled and, at least according to one surgeon, "suck[ed]" (*id.* at 45:8-9). In other words, both sutures were homogeneous multifilament sutures of the type upon which the 446 Patent sought to improve (Ex. 2 at 2:65).

Originally, Mr. Grafton sought to solve the problem with a *homogeneous multifilament PE suture*. But Mr. Grafton found that this suture had a different problem; it would not hold a knot (Ex. 12 at 46:1-9; 51:4-53:5). Thus, Mr. Grafton decided to form a *heterogeneous multifilament braided suture* of PE and PET (*id.* at 46:10-19; 54:6-14), which is just what the 446 Patent claims and which therefore has the novel and basic characteristics of the invention (Ex. 2 at 8:62-9:8). He found that this heterogeneous suture, which became FiberWire, overcame the disadvantageous of the homogeneous sutures; it had good strength and handleability (Ex. 12 at 54:15-55:5). In fact, a surgeon recognized the dramatic improvement attributable to the claimed invention as "killer" (*id.* at 46:16-24; 54:11-14; 75:5-11). Further, Mr. Grafton admitted that he tried to optimize FiberWire's properties by mechanically blending the PE and PET (*id.* at 68:25-70:13), just at taught in the 446 Patent (Ex. 2 at 2:58-62). Thus, Arthrex's development of FiberWire shows that the braiding of the PE and PET yarns in direct intertwining contact with one another created a suture with substantially improved properties, just as the 446 Patent teaches (*id.* at 2:62-66).

The question then becomes: What effect, if any, does FiberWire's coating have on this suture that already has excellent properties? As Dr. Brookstein explained, because it is just a lubricant, FiberWire's surface coating has a minimal effect relative to the dramatically improved handleability properties attributable to the heterogeneous braid of the invention (Ex. 6 at ¶47). Thus, Arthrex's own technical experience and Dr. Brookstein's testimony establish that FiberWire's coating's effects are not material effects. Notably, Arthrex's experts did not

consider the effects of FiberWire's coating relative to the greatly enhanced properties arising from the mechanical blending of PE and PET per the structure claimed in the 446 Patent.

**5.      Granting Arthrex's Motion Based on the Disputed Factual Record Would Be Legal Error**

If the determination of whether the silicone surface coating on FiberWire materially affects the basic and novel properties of the suture is a question of fact, then Mitek has submitted evidence from which a reasonable jury could find for it on the materiality issue. There are genuine issues of material fact that preclude granting Arthrex's motion.

**IV.      Conclusion**

Arthrex's FiberWire products not only literally have every element of the 446 Patent claims, but the 446 Patent expressly teaches applying a surface coating just as Arthrex has done on FiberWire. Arthrex cannot escape infringement by doing precisely what the 446 Patent teaches to be part of the invention. Because of the express disclosure of the use of optional surface coatings in the 446 Patent, the Court should rule as a matter of law that FiberWire infringes Claims 1, 2, 8, 9, and 12 of the 446 Patent.

Alternatively, if the Court does not deem the issue of materiality to be resolvable as a matter of law, then there are genuine issues of material fact precluding a determination, on summary judgment, of whether FiberWire's coating materially affects the basic and novel properties of the suture. Arthrex's motion for summary judgment of noninfringement must be denied.

# Exhibit 2

1
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2

3
DePuy Mitek, Inc., a
Massachusetts Corporation,

4

     Plaintiff,

5

     vs.                    CIVIL ACTION

6
                          NO. 04-12457 PBS

Arthrex, Inc., a Delaware

7
Corporation,

8
     Defendant.

     ————————————————/

9

10

DEPOSITION OF:     DONALD GRAFTON

11

DATE:            March 14, 2006

12

TIME:            8:38 a.m. to 1:23 p.m.

13

LOCATION:       The Ritz Carlton Golf Resort

14
                    2600 Tiburon Drive
                    Naples, FL  34112

15

TAKEN BY:       Plaintiff

16

REPORTER:       Deborah A. Krotz, RPR, CRR

17

VIDEOGRAPHER:   Gene Howell, CLVS

18

19

20

21

1

1      that that should be tested for?

2          A.    Could -- could be.  I'm not -- I'm not sure if

3      he's the -- was the initiator of that idea or not.

4          Q.    Did he explain why that test should be done?

5          A.    I don't remember.

6          Q.    Did you have input in the -- into the hypothesis

7      or theorem that you kind of --

8          A.    It's obvious -- it's -- it's obvious, sir, that

9      if you add coating onto a braided suture that you're going

10     to increase the lubricity of the suture if it's a polymer

11     added onto the surface of the braided irregular geometric

12     surface.  Because of the plats and the way the braid is

13     laid down, and you fill those in, you're going to increase

14     the lubricity.  And now you need to prove that, but -- but

15     it makes sense in my mind that that would happen.

16         Q.    Okay.  Now --

17         A.    And all the suture that we sold was coated.

18         Q.    Okay.  I guess my -- I'm not asking this very

19     well, but the reason this test was done, I understand, is

20     because of the Ethicon patent?  This isn't the normal

21     course, the normal test that Arthrex does?

22         A.    No, it wasn't a normal test.

23         Q.    Right.  So this test was being done because of

24     the Ethicon patent; right?  To prove something in relation

25     to the Ethicon patent?

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DePuy Mitek, Inc.<br>    a Massachusetts Corporation | ) ) ) | |
|     Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 04-12457 PBS |
| Arthrex, Inc.<br>    a Delaware Corporation and | ) ) ) | |
| Pearsalls Ltd.,<br>    a Private Limited Company<br>    of the United Kingdom, | ) ) ) ) | |
|     Defendants. | ) ) | |

**Declaration of Dr. David Brookstein In Support of DePuy Mitek's**
**Claim Interpretation of the Hunter Patent and Summary Judgment of Infringement**

I.    **Background Information**

    A.    **Teaching Experience**

1.    I am the Dean and Professor of Engineering at the School of Engineering and Textiles of Philadelphia University. I have held this position since 1994. In 2005, I also was appointed Executive Director of Research at Philadelphia University.

2.    I was a Visiting Scholar at the Harvard University Center for Textile and Apparel Research (Division of Engineering and Applied Sciences) between 2002-2003.

3.    I was an Adjunct Professor in Mechanical Engineering at Northeastern University in Boston, MA from 1981-1983. At Northeastern, I taught undergraduate courses in statics, dynamics, and mechanics of deformable bodies and material science.

4.    I was Assistant Professor of Textile Engineering at Georgia Institute of Technology, College of Engineering from 1975 – 1980. At Georgia Tech, I taught and conducted research in

(Ex. 17 at 31:23-25). Thus, in designing FiberWire to have a dissimilar yarn braid, Arthrex

specifically designed FiberWire to have the basic and novel characteristics that Dr. Mukherjee

attributes to the 446 Patent: (i) a dissimilar yarn braid having the benefits of each yarn; and (ii)

improved handleability and pliability without significantly sacrificing physical properties.

Although FiberWire is coated, it still reaps the benefits of this dissimilar yarn braid in terms of

handleability/pliability and physical properties. Therefore, the coating does not materially affect

the novel and basic characteristics as defined by Dr. Mukherjee.

47.    My opinion that FiberWire's coating does not materially affect FiberWire's PET and

UHMWPE yarns from being dissimilar, from being braided, and from forming a braid with

improved handleability and pliability performance without significantly sacrificing physical

properties is further supported by the fact that FiberWire has a very small amount of coating. In

fact, it is so small that Pearsalls and Arthrex consider it unmeasureable (Ex. 5 at 119:5-9; Ex. 8 at

94:2-9; Ex. 18 at 48:1-50:16; Ex. 19 at ARM002104). I have personally observed and studied

Pearsalls' coating processes for FiberWire during an inspection of Pearsalls' facilities in January

2006. FiberWire is coated by passing a braid of PET and UHMWPE, which has been dyed[3] and

scoured, through a bath of NuSil Med 2174 polymer and Xylene solvent at a rate of 20 meters

per minute (Ex. 5 at 88:4-9; 82:14-18). Xylene is not a coating. Rather, Xylene is a solvent that

dissolves the Med NuSil polymer, so that it can adhere to the FiberWire braid (Ex. 5 at 87:25-

88:3; Video of Pearsalls' manufacturing). After passing through the solution, the coated

FiberWire is passed through pads, which are compressed together, to wipe away excess coating

(Ex. 5 at 97:1-18). Further, FiberWire is passed through a five-stage oven that dries the coating

and evaporates the solvent (Ex. 5 at 95:14-17). The process is then repeated. I have measured

---

[3]    Most FiberWire is dyed blue. But some, such as TigerWire is not. Also, TigerWire has a
braid that includes a Nylon marker band in place of one PET yarn.

the amount of coating by weight on FiberWire by determining the linear density (*i.e.*, grams/unit length) of a sample that was not coated, a sample that had been coated once, and sample that had been coated twice (DMI Exhibits 284, 342, and 285, Exs. 20, 21, and 22, respectively). I determined that the linear density of DMI Ex. 284 (uncoated) is 2393 denier, DMI Ex. 342 (coated once) is 2474 denier, and DMI Ex. 285 (coated twice) is 2508 denier using a traditional Mettler balance housed at the Philadelphia University Research Center Materials Evaluation Laboratory. Accordingly, the linear density of DMI Ex. 342 indicates a 3.4% pick-up of coating material from the uncoated DMI Ex. 284. The linear density of Ex. 285 indicates a 1.4% pick-up of additional coating material from DMI Ex. 342. Thus, the total pick-up of Ex. 285 over DMI Ex. 284 is approximately 4.8%. The result of this coating process is that, although FiberWire has a very small amount of coating, FiberWire still has two dissimilar yarns braided together to form a braid with improved handleability and pliability performance without significantly sacrificing physical properties. In other words, the coating did not transform the braided FiberWire materials into another structure or cause it to lose its characteristics that are attributable to the dissimilar yarns being braided. For example, the coating is not applied in a very thick layer and then melted together with the yarns to form a non-braided structure. As Arthrex explains in its instructions for use, FiberWire's coating is just a "lubricant" (Ex. 15).

48.     My opinion that FiberWire's coating does not materially affect FiberWire's PET and UHMWPE yarns from being dissimilar, from being braided, and from forming a braid with improved handleability and pliability performance without significantly sacrificing physical properties is supported by both my visual observations of FiberWire, as well as those by CETR. Both my photographs and CETR's show that, even at extreme magnifications, it is difficult to even see coating in certain areas of the suture. In fact, both sets of pictures show that FiberWire

# Exhibit 4

1          UNITED STATES DISTRICT COURT

2          DISTRICT OF MASSACHUSETTS

3            C.A. NO. 04-12457 PBS

4    _____x

5    DePUY-MITEK, INC.,

6        A Massachusetts Corporation,

7             Plaintiff,

8        vs.

9    ARTHREX, INC.,

10        A Delaware Corporation,

11            Defendants.

12    _____x

13      CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

14             DAY 1 OF 2

15      DEPOSITION OF DR. DAVID S. BROOKSTEIN

16          Philadelphia, Pennsylvania

17             July 26, 2006

18

19

20    Reported by:

21

22    PAMELA HARRISON, RMR, CRR, CSR

23

24

25

7/26/2006  Brookstein, David

1     A.    (Witness reviewing document.)  Okay.                    11:50:37a

2     Q.    Do you understand this to be                            11:51:06a

3  directions for use?                                              11:51:07a

4     A.    I wouldn't call this directions for                     11:51:08a

5  use.  I would call it important product                          11:51:09a

6  information.  It has elements of directions for                  11:51:12a

7  use in it, but it's -- it seems to be broad and                 11:51:15a

8  just mention some things about the use.                          11:51:18a

9     Q.    Do you understand that this is a copy                   11:51:20a

10  of material that's included in what FiberWire                   11:51:22a

11  sold?                                                           11:51:27a

12     A.    I don't know how FiberWire is sold.                    11:51:27a

13     Q.    Do you see in the first paragraph -- I                 11:51:29a

14  want to look at the English part of this.  It's                 11:51:31a

15  in -- obviously it's in several languages, but                 11:51:35a

16  let's focus on the English part.                                11:51:35a

17            Do you see in the first paragraph                     11:51:38a

18  about two-thirds of the way down the sentence                   11:51:38a

19  that says, The coating acts as a lubricant for                 11:51:40a

20  suture sliding, knot tying, and ease of passing                11:51:44a

21  suture through tissue?                                          11:51:47a

22     A.    I see that sentence.                                   11:51:48a

23     Q.    Do you have any reason to disagree                     11:51:50a

24  with that sentence?                                             11:51:52a

25     A.    I have not analyzed -- I have not                      11:51:53a

7/26/2006  Brookstein, David

| | | |
|---|---|---|
| 1 | measured FiberWire -- I have not measured | 11:51:57a |
| 2 | FiberWire properties to see how the coating acts. | 11:52:00a |
| 3 | Q.    Do you have any evidence to disagree | 11:52:04a |
| 4 | with the statement that Arthrex makes about | 11:52:07a |
| 5 | FiberWire? | 11:52:13a |
| 6 | A.    The only evidence that I have is -- | 11:52:14a |
| 7 | Q.    The statement about coating. | 11:52:15a |
| 8 | A.    Right.  The only evidence that I have | 11:52:17a |
| 9 | is the evidence that is in the Gitis report, and | 11:52:18a |
| 10 | I have problems with the Gitis report, which I'm | 11:52:22a |
| 11 | sure we'll discuss today. | 11:52:25a |
| 12 | Q.    Okay.  Beyond that, do you have any | 11:52:27a |
| 13 | evidence to disagree with this statement? | 11:52:29a |
| 14 | A.    I don't -- I don't recall. | 11:52:33a |
| 15 | Q.    Okay.  Have you done any tests on | 11:52:35a |
| 16 | FiberWire to determine the effect of coating? | 11:52:42a |
| 17 | A.    I have measured the amount of coating | 11:52:47a |
| 18 | and I have taken micrographs to see how the | 11:52:49a |
| 19 | coating is distributed within the cross-section, | 11:52:52a |
| 20 | those are the two tests I've done. | 11:52:55a |
| 21 | Q.    That's what you've done? | 11:52:56a |
| 22 | A.    That's what I've done. | 11:52:57a |
| 23 | Q.    Have you done any other tests? | 11:52:58a |
| 24 | A.    I have not done any other tests. | 11:52:59a |
| 25 | Q.    Have you done any other analysis of | 11:53:01a |