IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DePuy Mitek, Inc.** )<br>    a Massachusetts Corporation )<br> )<br>        Plaintiff. )<br> )<br>    v. )<br> )<br>**Arthrex, Inc.** )<br>    a Delaware Corporation, and )<br> )<br>**Pearsalls Ltd.** )<br>    a Private Limited Company )<br>    of the United Kingdom )<br> )<br>        Defendants. )<br> ) | Civil No. 04-12457 PBS |

**Plaintiff DePuy Mitek's Memorandum In Support Of Motion *In Limine* (No. 2)
To Preclude Arthrex from Presenting Evidence that Mitek Performed Pre-Suit Testing on
Coated vs. Uncoated FiberWire**

Plaintiff, DePuy Mitek ("Mitek") moves the Court to preclude Defendants Arthrex, Inc. and Pearsalls, Ltd. (collectively, "Arthrex") from presenting evidence of any Mitek pre-suit, work product testing on coated vs. uncoated FiberWire sutures, carried out under direction of Mitek's counsel.

On two separate occasions, Arthrex has specifically mentioned that Mitek performed pre-suit testing and failed to produce the results. The implication Arthrex is making is that "Mitek performed pre-suit tests, did not like the results, and decided to hide them behind the shield of work product." This transparent attempt to create an "adverse inference" is: (1) contrary to the policies behind the attorney-client privilege and/or work product doctrine; (2) completely irrelevant to the sole triable issue of infringement; and (3) unfairly prejudicial to Mitek.

Arthrex's counsel fails to note that Arthrex's counsel confirmed that the pre-suit samples Arthrex provided to Mitek were processed in a manner in which the coating was not the only difference between the sutures (the coated sutures were also heated and stretched). Under the circumstances, Mitek requests that the Court preclude Arthrex under FED. R. EVID. 402 and 403 from submitting any evidence or making any argument to the jury that Mitek performed pre-suit testing on coated and uncoated FiberWire because that is not accurate.

**I.    ARTHREX HAS ALREADY ARGUED THAT MITEK FAILED TO PRODUCE PRE-SUIT WORK PRODUCT TEST RESULTS**

Before filing this lawsuit, Mitek performed testing on FiberWire sutures given to them by Arthrex. The sutures purportedly were uncoated and coated FiberWire sutures. But because the samples appeared to be different sutures (*e.g.,* they were different colors), Mitek's counsel asked Arthrex's counsel to explain why the samples appeared different from each other (Ex. 3). Arthrex's counsel stated that "[t]he difference between the two is that one was processed completely (with dyeing and coating applied to the surface of the braid) and the other was removed from production before dyeing and coating" (Ex. 4). The samples were nonetheless tested at the direction of counsel and in anticipation of this litigation. Because of the circumstances of the tests, Mitek listed the test results on its privilege log (D.I. 73 at Ex. 7, entry 48). Arthrex has never challenged the propriety of Mitek's claim of attorney-client privilege and work product protection for these pre-suit tests during depositions or on its privilege log (Ex. 1 at 62).

But Arthrex has argued, on at least two separate occasions, that Mitek did pre-suit testing and failed to produce the test results. Arthrex first argued this in its summary judgment papers.

> "We do know that DePuy Mitek did at least perform pliability tests on coated and uncoated FiberWire, but claimed privilege and steadfastly refused to produce the results." (D.I. 73 at 10-11, n. 8.).

2

Arthrex, through its counsel, Charles Saber, then made a similar argument at the June 19, 2007 summary judgment hearing.

> "They actually did do some tests when we gave it to them the first time. They haven't produced the tests to us. *I think we know why*. They're claiming work product privilege on it. *I think we know why*." (Ex. 2 at 32:6-10)(emphasis added).

During pre-trial exchanges, Arthrex also designated deposition testimony of Mitek and Ethicon witnesses discussing the fact that pre-suit testing was performed by Mitek. It is not a stretch that Arthrex intends to use Mitek's privilege claim about these tests to create a negative inference that the testing results were not favorable to Mitek. Arthrex should not be permitted to do that.

II.   **ANY EVIDENCE OF MITEK'S PRE-SUIT TESTING SHOULD BE PRECLUDED UNDER FEDERAL RULES OF EVIDENCE 402 AND 403**

Any pre-suit testing performed by Mitek is irrelevant to the issue of whether Arthrex's FiberWire suture infringes Mitek's patent. As already explained, the samples Arthrex provided were different from each other in that at least the purportedly "uncoated" sample had not been processed in the same manner as a commercial FiberWire suture. Under the circumstances, any possible relevance of these test results would be marginal at best. The unfair prejudice to Mitek here is palpable particularly because the samples were of a different construction, as Arthrex's counsel confirmed (Ex. 4). And to allow Arthrex to argue about the simple fact that Mitek did some testing--combined with whatever innuendos Arthrex's counsel will make-- will be substantially outweighed by jury confusion and be unfairly prejudicial to Mitek. This warrants precluding Arthrex under FED. R. EVID. 403 from introducing any evidence about the pre-suit tests and making any argument to the jury about the tests or making suppositions to the jury about the results.

Accordingly, any evidence or argument about Mitek's pre-suit testing should be excluded under Federal Rules of Evidence 402 and 403.

### III. ARTHREX'S ATTEMPT TO CREATE A NEGATIVE INFERENCE ABOUT MITEK'S PRE-SUIT TESTING IS CONTRARY TO THE POLICY BEHIND THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTIONS

Mitek should not be punished for asserting attorney-client privilege and work product protection on pre-suit testing. Arthrex is implying that because Mitek is claiming work product protection on its pre-suit tests, on admittedly different samples, that the results are somehow damning to Mitek. In other words, Arthrex wants to use Mitek's reliance on the work product doctrine to create a negative inference about the test results in an attempt to persuade the jury that their FiberWire suture does not infringe Mitek's patent. But Arthrex's argument is contrary to well-settled law and the polices underlying the attorney-client privilege and work product doctrine. It is simply inappropriate to draw adverse inferences from a party's failure to produce documents protected by attorney client privilege or the work product doctrine. That is particularly inappropriate here, where the tests were performed on samples that were not based on comparisons of commercial FiberWire samples.

The present situation is analogous to the seminal *Knorr-Bremse* case. In *Knorr-Bremse,* the Federal Circuit ruled "the assertion of attorney-client and/or work-product privilege and the withholding of the advice of counsel shall no longer entail an adverse inference as to the nature of the advice." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp*., 383 F.3d 1337, 1341 (Fed. Cir. 2004). Courts have also declined to impose adverse inferences when the attorney-client privilege is invoked. *See, e.g., Nabisco, Inc. v. PF Brands, Inc*., 191 F.3d 208, 225-26 (2nd Cir. 1999) (no adverse inference from the defendant's refusal to produce an opinion letter of counsel in a trademark dilution case), *overruled on other grounds sub nom. Moseley v.*

4

*Secret Catalogue*, 537 U.S. 418 (2003); *Parker v. Prudential Ins. Co.*, 900 F.2d 772, 775 (4th Cir. 1990) (no negative inference from assertion of attorney-client privilege). Allowing Arthrex to present evidence that Mitek carried out pre-suit testing, and to speculate about the results of that testing, is contrary to the principles of the attorney client and work product protections.

## IV.    CONCLUSION

Mitek respectfully requests that the Court order that Arthrex be precluded from submitting any evidence or making any argument to the jury that Mitek performed pre-suit testing on coated and uncoated FiberWire.


Dated: July 13, 2007                                     DEPUY MITEK, INC.,
                                                         By its attorneys,


                                                          /s/ Michael J. Bonella
                                                         Dianne B. Elderkin
                                                         Lynn A. Malinoski
                                                         Michael J. Bonella
                                                         Erich M. Falke
                                                         WOODCOCK WASHBURN LLP
                                                         One Liberty Place - 46th Floor
                                                         17th and Market Streets
                                                         Philadelphia, PA 19103
                                                         (215) 568-3100

                                                         Daniel J. Gleason (BBO #194900)
                                                         Michelle Chassereau Jackson (BBO #654825)
                                                         Nutter McClennen & Fish LLP
                                                         World Trade Center West
                                                         155 Seaport Boulevard
                                                         Boston, MA. 02210-2604
                                                         617-439-2000

## CERTIFICATE OF SERVICE

I certify that I am counsel for DePuy Mitek, Inc. and that true and correct copies of:

**Plaintiff DePuy Mitek's Motion *In Limine* (No. 2)
To Preclude Arthrex from Presenting Evidence that Mitek Performed Pre-Suit Testing on Coated vs. Uncoated FiberWire; and**

**Plaintiff DePuy Mitek's Memorandum In Support Of Motion *In Limine* (No. 2)
To Preclude Arthrex from Presenting Evidence that Mitek Performed Pre-Suit Testing on Coated vs. Uncoated FiberWire**

were served on counsel for Defendants Arthrex, Inc. and Pearsalls Ltd. on this date via the Court's e-mail notification with the following recipients being listed as filing users for Defendants:

>Charles W. Saber
>Dickstein Shapiro LLP
>1825 Eye Street, NW
>Washington, DC 20006
>saberc@dicksteinshapiro.com

>Raymond P. Ausrotas
>Todd & Weld LLP
>28 State Street, 31st Floor
>Boston, MA 02109
>rausrotas@toddweld.com

Dated: July 13, 2007                         /s/ Erich M. Falke
                                             Erich M. Falke

# EXHIBIT 1

Page 1

```
 1
 2              UNITED STATES DISTRICT COURT
 3                 DISTRICT OF MASSACHUSETTS
 4                  C.A. No. 04-12457 PBS
 5   -------------------------------x          TRAVEL
 6   DePUY MITEK, INC.,                      TRANSCRIPT
 7      A Massachusetts Corporation,
 8                    Plaintiff,
 9             v.
10   ARTHREX INC.,
11      A Delaware Corporation,
12                    Defendants.
13   -------------------------------x
14
15
16      30(b)(6) DEPOSITION OF KATHERINE SEPPA
17             Somerset, New Jersey
18              February 10, 2006
19
20   Reported by:
21   MARY F. BOWMAN, RPR, CRR
22   JOB NO.:  SE 226
23
24
25
```

Page 62

SEPPA

1  A.  The Instron, the bending stiffness.
2  Q.  You did it on the Instron test?
3  A.  Yes.
4  Q.  Why didn't do you do it on the
5  Kawabata bend tester?
6     MR. FALKE:  I am going to caution the
7  witness not to disclose the substance of any
8  communications you had with counsel.  You
9  can answer the question if your answer will
10 not reveal the substance of those
11 communications, or if you don't know, then
12 you can say you don't know.
13 A.  I don't know.
14 Q.  What were the results of the test on
15 the coated and uncoated Fiber Wire?
16    MR. FALKE:  Again, I will caution you
17 not to disclose the substance of any
18 privileged communication you had with
19 counsel.  If you can answer the question
20 without revealing that privilege, then you
21 can answer the question.  But if you can't,
22 I will ask you not to answer the question.
23 A.  I can't answer.
24 Q.  You can't answer because of the

Page 63

SEPPA

1  instruction that he gave you?
2  A.  Yes.
3     MR. FALKE:  Can you repeat the
4  question?
5  A.  Was it what were the results?
6  Q.  Yes, sir.
7     MR. FALKE:  If you don't know the
8  answer, you can say you don't know.  If you
9  know the answer, you can answer only if
10 answering will not reveal the substance.
11 A.  I don't remember.
12 Q.  You don't remember the results.  Do
13 you recall whether the one -- whether the coated
14 and uncoated gave different numbers?
15 A.  I don't remember.
16 Q.  You said you don't remember if the
17 numbers were the same or numbers were different?
18 A.  I don't remember the results.
19 Q.  Were the results put in written form?
20 A.  Yes.
21 Q.  And what did you do with the written?
22 Did you make a report of the results?
23 A.  Yes.
24 Q.  And to whom did you give the report?

Page 64

SEPPA

1     MR. FALKE:  I am going to caution you
2  not to disclose the substance of
3  communications with counsel.  If you can
4  answer the question without revealing the
5  substance, you can answer.  But if in
6  answering the question you will reveal the
7  substance of the communication, then I am
8  going to instruct you not to answer.
9  A.  I can't answer.
10 Q.  Again, I want to make sure is it
11 because you don't remember the answer?
12 A.  On the advice of my counsel.
13 Q.  Because my only -- Eric, my only
14 question is who did she give the report to?
15    MR. FALKE:  Right.  I understand, but
16 I think the answer would reveal what the
17 substance of the communication was.  Right?
18    MR. SABER:  I don't think so but --
19    MR. FALKE:  I am going to stand.
20 Q.  This also refers to a straight tensile
21 test.  Did you do a straight tensile test on the
22 coated and uncoated Fiber Wire?
23 A.  Yes.
24 Q.  And what were the results of those

Page 65

SEPPA

1  tests?
2  A.  I don't remember.
3  Q.  Do you remember whether you got the
4  same result for the coated and uncoated or whether
5  you got different results?
6  A.  I don't remember.
7  Q.  Were those results also put into
8  writing?
9  A.  Yes.
10 Q.  And who did you give that report to?
11    MR. FALKE:  I will give you the same
12 instruction as before.
13 A.  I can't answer on the advice of my
14 counsel.
15 Q.  Let me show you what has previously
16 been marked Defendant's Exhibit 31, and I ask if
17 you can identify this?
18 A.  Again, it is a list of my current
19 projects.
20    MR. FALKE:  Hold on one second.
21    Why don't you reask those two
22 questions I told her not to answer, and she
23 can answer them.

# EXHIBIT 2

```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS


DePUY MITEK, INC.,            )
a Massachusetts Corporation,  )
                              )
            Plaintiff         )
                              )
        -VS-                  ) CA No. 04-12457-PBS
                              ) Pages 1 - 35
ARTHREX, INC.,                )
a Delaware Corporation,       )
and Pearsalls Ltd.,           )
a Private Limited Company     )
of the United Kingdom,        )
                              )
            Defendants        )



                      MOTION HEARING

           BEFORE THE HONORABLE PATTI B. SARIS
              UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

     DIANNE B. ELDERKIN, ESQ. and MICHAEL J. BONELLA, ESQ.,
Woodcock Washburn, LLP, Cira Centre, 12th Floor, 2929 Arch
Street, Philadelphia, Pennsylvania, 19104-2891, for the
Plaintiff.

     CHARLES W. SABER, ESQ. and SALVATORE P. TAMBURO, ESQ.,
Dickstein Shapiro, LLP, 1825 Eye Street, N.W., Washington,
D.C., 20006-5403, for the Defendants.

                         United States District Court
                         1 Courthouse Way, Courtroom 19
                         Boston, Massachusetts
                         June 19, 2007, 2:50 p.m.

              LEE A. MARZILLI
           OFFICIAL COURT REPORTER
         United States District Court
         1 Courthouse Way, Room 3205
             Boston, MA  02210
                (617)345-6787
```

1cc69953-d323-4ac2-bd45-2e4522f208c7

Page 32

1  neither side really did it for me, and I'm not sure where
2  that would leave it for a jury.
3         MR. SABER:  And may I add just something else
4  because they said that we didn't give them samples.  We gave
5  them samples before this case started.  We gave them samples
6  twice during the case.  They've had all the samples.  They
7  haven't done any tests.  They actually did do some tests when
8  we gave it to them the first time.  They haven't produced the
9  tests to us.  I think we know why.  They're claiming work
10 product privilege on it.  I think we know why.
11        You would think, if some things were different,
12 that what everyone in the marketplace knows, that they would
13 have done a test to show that it's not true.  And that was
14 frustrating --
15        THE COURT:  You know, you're making a very good
16 point here, which I'm not going to reopen discovery on
17 experts.  You'll finish your tests.  You'll either meet your
18 burden or not meet it.  You'll put on your expert.  You know,
19 I have some sense of frustration because the obvious thing
20 isn't in my record, somebody just saying from your side it
21 doesn't make a difference.
22        MS. ELDERKIN:  And, if I may, your Honor, I would
23 like to refer you to Dr. Burks's report because it is
24 attached as an exhibit to our brief, and I'm sorry I don't
25 have the number for that particular exhibit.  He nowhere says

# EXHIBIT 3

**Tamburo, Salvatore**
___

From:         Soffen, Stephen
Sent:         Tuesday, June 29, 2004 4:52 PM
To:           'Skula, Richard [JJCUS]'
Subject:     Fiberwire coated/non-coated samples

Rich,

I am writing in response to your comment that the coated/uncoated samples that we sent you on February 20, 2004 appear to Ethicon to be different suture (although both are formed of UHMWPE).

Don Grafton, VP of Engineering, ordered the uncoated sample from Arthrex's supplier and has access to the purchase order. Don returns from vacation on July 7. I have left a message for Don to contact me when he returns so that we can address this issue.

Steve




ARM 24283

"Confidential -
Outside Attorneys'
Eyes Only

# EXHIBIT 4

## Soffen, Stephen

**From:** Soffen, Stephen
**Sent:** Tuesday, July 13, 2004 3:09 PM
**To:** 'Skula, Richard [JJCUS]'
**Subject:** Fiberwire coated/non-coated samples

Rich,

Don Grafton, VP of Engineering at Arthrex, located and inspected the original spools of Arthrex Fiberwire that were tested, and from which the samples that you received were taken. Both are size 2 Fiberwire and have the same braid construction. The difference between the two is that one was processed completely (with dyeing and coating applied to the surface of the braid) and the other was removed from production before dyeing and coating.

Please let me know if you have any further questions.

Steve

-----Original Message-----
**From:** Soffen, Stephen
**Sent:** Tuesday, June 29, 2004 4:52 PM
**To:** 'Skula, Richard [JJCUS]'
**Subject:** Fiberwire coated/non-coated samples

Rich,

I am writing in response to your comment that the coated/uncoated samples that we sent you on February 20, 2004 appear to Ethicon to be different suture (although both are formed of UHMWPE).

Don Grafton, VP of Engineering, ordered the uncoated sample from Arthrex's supplier and has access to the purchase order. Don returns from vacation on July 7. I have left a message for Don to contact me when he returns so that we can address this issue.

Steve





CONFIDENTIAL

ARM 25591

1