**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DePuy Mitek, Inc. | ) | |
|     a Massachusetts Corporation | ) | |
| | ) | |
|       Plaintiff. | ) | |
| | ) | |
|       v. | ) | Civil No. 04-12457 PBS |
| | ) | |
| Arthrex, Inc. | ) | |
|     a Delaware Corporation, and | ) | |
| | ) | |
| Pearsalls Ltd. | ) | |
|     a Private Limited Company | ) | |
|     of the United Kingdom | ) | |
| | ) | |
|       Defendants. | ) | |
| | ) | |

**Plaintiff DePuy Mitek's Memorandum In Support Of Motion _In Limine_ (No. 5)**
**To Preclude Arthrex And Pearsalls From Making Irrelevant and**
**Prejudicial Remarks About Mitek**

## I.  Introduction

This trial is about the limited and straightforward issue of whether Arthrex's FiberWire

suture infringes claims in Mitek's Hunter 446 Patent.  All that is necessary to determine

infringement is to compare the accused FiberWire suture to the claims of Mitek's Hunter 446

Patent claims.  But from Arthrex's pretrial exchanges (_e.g.,_ deposition designations, exhibit list),

briefs, and comments at hearings, it appears that Arthrex intends to litter the record with

derogatory missives about: (1) when and how Mitek learned about the Hunter 446 Patent; (2) the

Hunter 446 Patent being a paper patent because Mitek does not sell a product covered by the

patent; and (3) Mitek's development of its competing Orthocord product.  None of these issues is

relevant to the infringement issue, and it appears that Arthrex wants to raise them to deflect

attention from the infringement issue and to portray Mitek in a negative light.  Accordingly,

Arthrex should be precluded from presenting evidence and argument on these matters under FED. R. EVID. 401 and 402.

**II.    Argument**

    **A.    Arthrex Should Not Be Permitted To Disparage Mitek's Hunter 446 Patent As A "Paper Patent" on the Grounds That Mitek Does Not Sell A Product Covered By The Patent**

Whether Mitek sells a product covered by its Hunter 446 Patent is irrelevant to the infringement issue.  The patent rights confer on a patentee a right to exclude and do not require a patentee to commercialize a patented invention. *Rite-Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1547 (Fed. Cir. 1995) (*en banc*).  Nonetheless, Arthrex has demonstrated a predilection for describing Mitek's Hunter 446 Patent in impliedly negative terms.  For example, in their Memorandum In Support Of Defendants Arthrex, Inc.'s And Pearsalls Ltd.'s Motion For Summary Judgment, the opening page includes the following:

> Mitek's 446 Patent is a paper patent; neither Ethicon nor DePuy Mitek had made a single commercial product under that patent.

(D.I. 40 at 1).  Again, at the June 19, 2007 summary judgment hearing, Arthrex's counsel again referred to Mitek not manufacturing a commercial product under the Hunter 446 Patent (Ex. 1 at 14:7-11).  It is not a stretch, therefore, to predict that Arthrex and Pearsalls will seek to describe the patent in a similar manner when arguing to the jury.

Of course, whether or not Mitek is practicing the invention of the Hunter 446 Patent is wholly irrelevant to the sole issue being tried, infringement.  Further, even if the validity of the Hunter 446 Patent were some how in issue, Arthrex's  aspersions would be  inappropriate.  Patents are not more or less valid depending on whether the patent-holder has used the claimed invention commercially.  *Special Equip. Co. v. Coe, Commissioner of Patents*, 324 U.S. 370, 378-79 (1945) ("This Court has consistently held that failure of the patentee to make use of a

patented invention does not affect the validity of the patent." (citing *Continental Paper Bag Co*. v. *Eastern Paper Bag Co*., 210 U.S. 405, 425 (1908);*Crown Die & Tool Co*. v. *Nye Tool Works*, 261 U.S. 24, 34 (1923); *Woodbridge v. United States*, 263 U.S. 50, 55 (1923); Fox Film Corp. v. Doyal, 286 U.S. 123, 127 (1932); *Hartford-Empire Co. v. United States*, 323 U.S. 386, 433 (1945))).).

> [T]he fact that plaintiff had not put the patent into commercial use does not deprive it of validity.  We are not impressed by the defendant's contention that it is a mere 'paper patent.'  Lack of commercial success does not of itself establish lack of invention or preclude enforcement of a patent.

*Aerosol Research Co. v. Scovill Mfg. Co.*, 334 F.2d 751, 756 (7th Cir. 1964) (cites omitted).

"The phrase, 'paper patent,' is a mere bit of rhetoric. . . .  It is a meaningless platitude."  *Frank B. Killian & Co. v. Allied Latex Corp.*, 188 F.2d 940, 942 (2d. Cir. 1951).

While legally irrelevant, if presented in a derisive tone, the fact that a patent owner does not manufacture under a patent could be viewed by an uneducated juror as making that patent somehow less worthy and could prejudice the infringement determination.  As the Supreme Court has stated, Congress made a conscious decision ***not*** to condition the grant of a patent upon use of the patented invention.  *Special Equip. Co.*, 324 U.S. at 378-79.  It is not for the jury  to weigh these considerations for itself.

Consequently, Mitek's decision not to manufacture a product falling within the scope of its Hunter 446 Patent claims has no proper bearing on the infringement issue, and  references to that situation, or descriptions of Mitek's Hunter 446 Patent as being a "paper" patent or something similar, can only cause unnecessary prejudice.  Thus, such references and descriptions should be precluded under FED.R.EVID. 401 and 402.

**B.     Arthrex Should Be Precluded From Presenting Evidence And Argument About Mitek's Development and Sales Of Its Orthocord Product**

Arthrex's Exhibit List lists a wealth of documents about Orthocord's development (Ex. 2 at highlighted portions).  But Mitek's development of Orthocord sutures to compete with FiberWire, and the timing of that development, have nothing whatsoever to do with the infringement issue.  Orthocord is not covered by Mitek's Hunter 446 Patent because it contains certain bioabsorbable materials which are excluded from the patent claims.  Orthocord has a different construction than FiberWire in that it uses different materials, manufacturing processes, and amounts of materials (D.I. 40 at Ex. 5 at DMI 0039559).  Indeed, Mitek considers Orthocord to be an improvement over the invention claimed in its Hunter 446 Patent and has filed patents directed to the Orthocord technology.  Nothing about the development of Orthocord is relevant to the infringement issue.  But Arthrex's briefs and pretrial exchanges demonstrate that Arthrex intends to use Mitek's development of Orthocord to somehow malign Mitek or confuse the jury.[1]

For example, page 1 of Arthrex's first summary judgment brief on infringement highlights this (D.I. 40 at 1).  Arthrex refers to Mitek documents to suggest that Mitek introduced Orthocord only because of competition from Fiberwire (*id.* at Ex. 5).  Arthrex also points to a document in which Mitek makes reference to a "me too" product, improperly suggesting that Mitek wanted to copy FiberWire (*id.*).  Arthrex also designated testimony on the "me too" issue (Ex. 3 at 45-46).  But these snippets from documents and testimony do not tell the whole story.  Mitek was responding to market conditions when it decided to develop Orthocord – a product very different from FiberWire (Ex. 4 at 87:22-88:8).

---

[1]     Arthrex's designated testimony from Mitek's Neil Weber and Shelby Cook about the development of Orthocord (Ex. 4 at 88-90; Ex. 5 at 58-59 & 145-148 – highlighted portions are Arthrex's deposition designations).  Further, at least 15% of the documents on Arthrex's exhibit list relate to Orthocord (Ex. 2 – highlighted portions relate to Orthocord)

In any event, Mitek's decision to develop Orthocord has absolutely nothing to do with determining whether FiberWire infringes Mitek's 446 Patent. Arthrex's reasons for latching on to this is for the sole purpose of trying to portray Mitek in a negative light so that it can deflect attention away from the infringement issue and prejudice the infringement determination. Under the circumstances, Arthrex should be precluded from presenting any argument or evidence about Orthocord's development to the jury under FED. R. EVID. 401 and 402.

Further, the Orthocord development documents should be excluded under FED. R. EVID. 403 because there is a substantial risk of prejudice and jury confusion. Since the infringement issue is decided by comparing the 446 Patent to Arthrex's FiberWire product, the research and development of Orthocord can only confuse the jury and prejudice Mitek that the jury would reach a verdict that is based on irrelevant evidence.

### C.    Arthrex Should Be Precluded From Presenting Evidence And Argument About The Circumstances Surrounding Mitek Bringing Suit Against Arthrex

That Mitek was not the original assignee of the Hunter 446 Patent is irrelevant to the infringement determination. But nonetheless, it is expected that Arthrex will try to malign Mitek by arguing about the facts and circumstances leading up to this lawsuit.

For example, in its summary judgment briefing, Arthrex argued that Mitek rummaged around its files to find a patent so that it could sue Arthrex, and when it could not find one, it acquired one from "a sister company that is part of the Johnson & Johnson empire"(D.I. 40 at 1). This kind of rhetoric has no place in an infringement trial (or any trial).

Further, the facts are that Mitek is a stand-alone company in the DePuy, Inc. franchise. Before that, Mitek was a wholly-owned subsidiary of Ethicon, Inc. – the original assignee of the Hunter 446 Patent. When Mitek became a stand-alone company in December 2003, the Hunter 446 Patent was eventually assigned to it since it was the real party in interest for this technology

(Ex. 6 at 184:17-185:11; Ex. 7 at 154-156; Ex. 4 at 47:5-49:20).  There was no sinister motive here.

But as noted above, it is expected that Arthrex will spin its own story about Mitek's ownership of the Hunter 446 Patent.  Arthrex's "story," even if it were true (and it is not), has no possible relevance to determining whether FiberWire infringes the Hunter 446 Patent.  The only possible reason for Arthrex to make this argument is to try to malign Mitek in front of the jury and to prejudice the infringement determination.  Accordingly, Arthrex should be precluded from presenting evidence and argument on these issues to the jury under FED. R. EVID. 401 and 402.

Dated: July 13, 2007

DEPUY MITEK, INC.,
By its attorneys,


 _/s/ Michael J. Bonella _____
Dianne B. Elderkin
Lynn A. Malinoski
Michael J. Bonella
Erich M. Falke
WOODCOCK WASHBURN LLP
2929 Arch Street, 12th Floor
Cira Centre
Philadelphia, PA 19104
(215) 568-3100

Daniel J. Gleason (BBO #194900)
Heather Repicky (BBO #663347)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA. 02210-2604
617-439-2000

## CERTIFICATE OF SERVICE

I certify that I am counsel for DePuy Mitek, Inc. and that true and correct copies of:

**Plaintiff DePuy Mitek's Motion *In Limine* (No. 5) To Preclude Arthrex And Pearsalls From Making Irrelevant and Prejudicial Remarks About Mitek; and**

**Plaintiff DePuy Mitek's Memorandum In Support Of Motion *In Limine* (No. 5) To Preclude Arthrex And Pearsalls From Making Irrelevant and Prejudicial Remarks About Mitek**

were served on counsel for Defendants Arthrex, Inc. and Pearsalls Ltd. on this date via the Court's e-mail notification with the following recipients being listed as filing users for Defendants:

> Charles W. Saber
> Dickstein Shapiro LLP
> 1825 Eye Street, NW
> Washington, DC 20006
> saberc@dicksteinshapiro.com
>
> Raymond P. Ausrotas
> Todd & Weld LLP
> 28 State Street, 31st Floor
> Boston, MA 02109
> rausrotas@toddweld.com

Dated: July 13, 2007                    _/s/ Erich M. Falke_____
                                        Erich M. Falke

# EXHIBIT 1

```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


DePUY MITEK, INC.,             )
a Massachusetts Corporation,   )
                               )
              Plaintiff        )
                               )
         -VS-                  ) CA No. 04-12457-PBS
                               ) Pages 1 - 35
ARTHREX, INC.,                 )
a Delaware Corporation,        )
and Pearsalls Ltd.,            )
a Private Limited Company      )
of the United Kingdom,         )
                               )
              Defendants       )
```

MOTION HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

    DIANNE B. ELDERKIN, ESQ. and MICHAEL J. BONELLA, ESQ., Woodcock Washburn, LLP, Cira Centre, 12th Floor, 2929 Arch Street, Philadelphia, Pennsylvania, 19104-2891, for the Plaintiff.

    CHARLES W. SABER, ESQ. and SALVATORE P. TAMBURO, ESQ., Dickstein Shapiro, LLP, 1825 Eye Street, N.W., Washington, D.C., 20006-5403, for the Defendants.

                        United States District Court
                        1 Courthouse Way, Courtroom 19
                        Boston, Massachusetts
                        June 19, 2007, 2:50 p.m.

                    LEE A. MARZILLI
                 OFFICIAL COURT REPORTER
               United States District Court
               1 Courthouse Way, Room 3205
                  Boston, MA  02210
                   (617)345-6787

1    and some not, right?

2          MR. SABER:  Never, it never ever says that.  It

3    never ever says that.  It never ever questions the

4    universally known fact that coating helps handleability.

5          THE COURT:  No, I disagree with that.  It says you

6    don't need to use them.

7          MR. SABER:  That's what their invention was

8    allegedly about.  Their invention was allegedly about -- it

9    never worked.  They never could make a product under it, but

10   their invention was allegedly about, if you use enough of

11   this lubricious material, you won't need coating.

12         THE COURT:  You won't need coating.

13         MR. SABER:  That's right, and that's exactly, your

14   Honor, why we win this case, one hundred percent why we win

15   this case.

16         THE COURT:  Why wouldn't you win it on a record in

17   front of a jury instead of -- in other words, if I don't have

18   one of your people saying it doesn't make a difference and

19   I --

20         MR. SABER:  Well, you do, you know, and our experts

21   put it in, but it's based on the record, your Honor.  It's --

22         THE COURT:  I understand.  You keep pushing me

23   back; you keep agreeing with me that I can't look at the

24   specification.  I need some admissible evidence, admissible

25   evidence that the coating on your product makes a difference.

**Defendants Arthrex, Inc.'s and Pearsalls, Ltd.'s Exhibit List – Revised**

| TEX # | Description | Bates Range | Previously Used | Objections | In / Out |
|-------|-------------|-------------|-----------------|------------|----------|
| DTEX-1003 | CETR Raw Data on disc | ARM 25902 | | | |
| DTEX-1004 | Assignment: Ethicon, Inc., ASSIGNOR and DePuy Mitek, ASSIGNEE of U.S. Pat. No. 5,314,446 | DMI 000338 – 000340 | Defendants' Deposition Exhibit #5 | | |
| DTEX-1005 | Management Review document titled: "Shoulder Anatomy" (color, undated) | DMI 039231 – 039244 | Defendants' Deposition Exhibit #9 | 401-403 Orthocord Marketing & Research is irrelevant to infringement | |
| DTEX-1006 | U.S. Patent No. 5,314,446, "Sterilized Heterogeneous Braids," A.W. Hunter et al., Inventors | N/A | Defendants' Deposition Exhibit #10 | | |
| DTEX-1007 | Presentation: "Orthocord Management Design Review" | DMI 001001 – 001025 | Defendants' Deposition Exhibit #11 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1008 | Presentation: "Orthocord" by Doug George | DMI 000977 – 000999 | Defendants' Deposition Exhibit #12 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1009 | Presentation: "New Suture Concept Design Review" | DMI 001096 – 001101 | Defendants' Deposition Exhibit #13 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1010 | Memo Regarding: Mitek development of alternate high-strength suture to Arthrex's Fiberwire | DMI 039558 – 039559 | Defendants' Deposition Exhibit #14 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1011 | Presentation: "Orthocord Update" | DMI 039500 – 039517 | Defendants' Deposition Exhibit #15 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| DTEX-1012 | Printout of website for Shakespeare | DMI 040832 – 040833 | Defendants' Deposition Exhibit #17 | | |
| DTEX-1013 | R&D Monthly Status Report, October 2002, to Mr. D. Longstreet (cc Ethicon GMB), dated November 8, 2002 | DMI 038169 – 038174 | Defendants' Deposition Exhibit #18 | 401-403 Mitek R&D Summary Motion in Limine#5 | |
| DTEX-1014 | CPC Departmental Plan for Blue ORTHOCORD* (MITEK Suture), Version 2, dated September 9, 2004 | DMI 038149 – 038153 | Defendants' Deposition Exhibit #19 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1015 | Presentation: Blue Orthocord, Feasibility -> Development, Gary McAlister and Shelby Cook | DMI 006560 – 006574 | Defendants' Deposition Exhibit #21 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1016 | OrthoCord Suture Development – Interim Report, by Ilya Koyfman | DMI 039630 – 039646 | Defendants' Deposition Exhibit #22 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1017 | Presentation: "Synthetic Absorbable Sutures 2004 – Product Marketing" (color) | DMI 038684 – 038773 | Defendants' Deposition Exhibit #23 | 401-403 Orthocord Research Mitek Mitek Motion in Limine#5 | |
| DTEX-1018 | Design Development and Validation Summary (DDVS) for Orthocord | DMI 040859 – 040870 | Defendants' Deposition Exhibit #24 | 401-403 Ethicon Absorbable suture document, not relevant to infringement | |
| DTEX-1019 | OrthoCord Suture Development Interim Report, by Ilya Koyfman and Hank Pokropinski | DMI 039421 – 039445 | Defendants' Deposition Exhibit #25 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1020 | Protocol for a Orthocord Surgeon Evaluation | DMI 000414 – 000417 | Defendants' Deposition Exhibit #26 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1021** | Polymer & Suture Technologies – Quarterly Status Report: 3rd Quarter Research & Technology Devel., Wound Closure R&D, by Irene Nozad, Ph.D., Director | DMI 039695 – 039717 | Defendants' Deposition Exhibit #27 | 401-403 Orthocord and other Irrelvant Product Research Mitek Motion in Limine#5 | |
| **DTEX-1022** | Jon Grange email to DL-ETHUSMTK SalesReps; DL-ETHUSMTK SalesMgmt (cc DL-ETHUSMTK Marketing) re Orthocord Sales YTD-121004 | DMI 040886 | Defendants' Deposition Exhibit #28 | 401-403 Orthocord marketing | |
| **DTEX-1023** | Mark Mooney email to Howe, J., Koyfman, I., Seppa, K., (cc Scanlon, M., Grange, J., Gilson, R.) re Orthocord comparisons to Ethicon Sutures | DMI 001183 – 001184 | Defendants' Deposition Exhibit #29 | | |
| **DTEX-1024** | Katie's (Seppa) Current Projects (list), dated June 29, 2004 | DMI 039571 – 039573 | Defendants' Deposition Exhibit #30 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| **DTEX-1025** | Katie's (Seppa) Current Projects (list), dated July 26, 2004 | DMI 039560 – 039561 | Defendants' Deposition Exhibit #31 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| **DTEX-1026** | Test Report for #2 Fiberwire MED2174 | ARM 000699 – 000701 | Defendants' Deposition Exhibit #32 | 401-403 Arthrex cannot provide foundation for the cosntruction of the sutures that it tested, rendring the tests irrelevant. | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| DTEX-1027 | Ethicon, Inc. Document Retention Policy | DMI 003507 – 003538 | Defendants' Deposition Exhibit #34 | | |
| DTEX-1028 | Lab Notebook issued to Mark Steckel, 2/6/1988, 14 pages | DMI 000374 – DMI 000387 | Defendants' Deposition Exhibit #35 | | |
| DTEX-1030 | Document entitled: "Suture Stiffness, A Comparison of Orthocord™ and Fiberwire™ suture," undated | DMI 001195 – 001203 | Defendants' Deposition Exhibit #39 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1031 | Katherine R. Seppa memo to Mark Mooney (cc RDCF, I. Koyfman, S. Cook, R. Liebowitz) | DMI 40871 – 40873 | Defendants' Deposition Exhibit #40 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1032 | Presentation slides: "Orthocord Management Design Review, Orthocord Feasibility Review, Orthocord on Anchors Concept Review" | DMI 039823 – 039841 | Defendants' Deposition Exhibit #41 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1033 | Shawn Peniston email string to S. Cook regarding UHMWPE surface energy (tension) | DMI 040882 | Defendants' Deposition Exhibit #46 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1034 | Video of Pearsalls' coating operation | N/A | Pearsalls Inspection, 01/11/2006 | | |
| DTEX-1035 | Document titled: "The Ethicon Franchise and Ethicon Products Worldwide" | DMI 038175 – 038185 | Defendants' Deposition Exhibit #50 | 401-403 Ethicon and Mitek marketing document irrelevant to infringement | |
| DTEX-1036 | Presentation slides titled: "Market Dynamics," by Mitek | DMI 039387 – 039402 | Defendants' Deposition Exhibit #52 | 401-403 Mitek marketing document | |
| DTEX-1037 | Presentation slides titled: "Orthocord Update," by Ethicon, Inc. | DMI 038133 – 038138 | Defendants' Deposition Exhibit #53 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|-------|-------------|-------------|-----------------|------------|---------|
| **DTEX-1038** | Presentation slides titled: "Orthocord Management Design Review," by Mitek & Ethicon | DMI 039647 – 039683 | Defendants' Deposition Exhibit #54 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| **DTEX-1039** | Presentation slides titled: "Orthocord" (undated, color) | DMI 094378 – 094407 | Defendants' Deposition Exhibit #55 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| **DTEX-1040** | Section IV. Key Issues Affecting Results, of Monthly Status Report, by Andy McGowan | DMI 022326 – 022329 | Defendants' Deposition Exhibit #57 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| **DTEX-1041** | Document entitled: "Shoulder Marketing Plan 2001," by Ann Rich, Product Director | DMI 094028 – 094037 | Defendants' Deposition Exhibit #59 | 401-403 Mitek Marketing Document irrelevant to infringement | |
| **DTEX-1042** | Document entitled: "Shoulder Marketing Plan 2002," by Neil Weber, Tom Borg, Steve Muller | DMI 094077 – 094084 | Defendants' Deposition Exhibit #60 | 401-403 Mitek Marketing Document irrelevant to infringement | |
| **DTEX-1043** | Document entitled: "Shoulder Marketing Plan 2003," by Tom Borg, Steve Muller | DMI 094085 – 094093 | Defendants' Deposition Exhibit #61 | 401-403 Marketing document irreleavnt to infringement | |
| **DTEX-1044** | Document entitled: "U.S. Shoulder Marketing Plan 2004," by Angela Lichty, Jon Grange, Doug George | DMI 094094 – 094104 | Defendants' Deposition Exhibit #62 | 401-403 Marketing document irrelevant to infringement | |
| **DTEX-1045** | Document entitled: "Small Bones Marketing Plan Hand & Reconstructive Surgery 2001," by Joe Koziol, Product Manager | DMI 093980 – 093989 | Defendants' Deposition Exhibit #63 | 401-403 Marketing document irrelevant to infringement | |
| **DTEX-1046** | Document entitled: "Small Joint Marketing Plan 2002," by Tom Borg, Product Director | DMI 094071 – 094076 | Defendants' Deposition Exhibit #64 | 401-403 Marketing document irrelevant to infringement | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1047** | Document entitled: "Mensical Repair Marketing 2001," by Joan Sullivan, Product Director | DMI 093968 – 093979 | Defendants' Deposition Exhibit #65 | 401-403 Marketing document irrelevant to infringement. | |
| **DTEX-1048** | Presentation slides titled: "DePuy Mitek Strategic Plan, DePuy Board Meeting" | DMI 039847 – 039880 | Defendants' Deposition Exhibit #68 | 401-403 Marketing document irrelevant to infringement | |
| **DTEX-1049** | Lab Notebook issued to Mark Steckel [portion] | DMI 002605 – 002678 | Defendants' Deposition Exhibit #75 | | |
| **DTEX-1050** | Lab Notebook No. 2209 issued to Mark Steckel [portion] | DMI 002269 – 002400 | Defendants' Deposition Exhibit #81 | | |
| **DTEX-1051** | Lab Notebook No. 2210 issued to Mark Steckel | DMI 002401 – 002441 | Defendants' Deposition Exhibit #82 | | |
| **DTEX-1052** | Table entitled: "Summary Worksheet – Novation" | DMI 022361 | Defendants' Deposition Exhibit #87 | 401-403 Sales figures irrelevant to infringement | |
| **DTEX-1053** | Table entitled: "Ethicon – Domestic, Product Group Summary by Division, Jan 2006 Act vs. 1st Qtr 2006 Business Plan" | N/A | Defendants' Deposition Exhibit #106 | 401-403 Numerical listing of Ethicon sutures in inventory irreleavnt to infringement | |
| **DTEX-1054** | Brochure: "Ethicon synthetic absorbable sutures. Tailor-made to suit the task," Including new PANACRYL suture [color] | DMI 094414 – 094425 | Defendants' Deposition Exhibit #109 | 401-403 Ehticon absorbable suture marketing document irrelevant to infringement | |
| **DTEX-1055** | Brochure: "Panacryl" | DMI 094429 – 094434 | Defendants' Deposition Exhibit #110 | 401-403, Ethicon asbsorbable suture marketing doucment, irrelevant to infringement | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1056** | Presentation slides: Ethicon Franchise Strategic Plan 2004 – 2009 | DMI 039023 – 039089 | Defendants' Deposition Exhibit #111 | 401-403 Ethicon Strategic Plan, Irrelevant to infringement | |
| **DTEX-1057** | Document entitled: "Ethicon Franchise 2003 – 2008 Strategic Plan" | DMI 015816 – 015821 | Defendants' Deposition Exhibit #112 | 401-403 Ehticon strategic plan, Irrelevant to infringement | |
| **DTEX-1058** | Table [untitled, undated] showing suture market share figures | DMI 017435 | Defendants' Deposition Exhibit #113 | 401-403, market share document, irrelevant to infringement. | |
| **DTEX-1059** | Table [untitled, undated] showing suture market share | DMI 006269 | Defendants' Deposition Exhibit #114 | 401-403, market share document, irrelevant to infirngement | |
| **DTEX-1060** | Table [untitled, undated] Market share report | DMI 006251 | Defendants' Deposition Exhibit #115 | 401-403, market share document, irrelevant to infringement. | |
| **DTEX-1061** | Presentation Slides: "Customer Loyalty Conjoint Analysis" | DMI 015651 – 015658 | Defendants' Deposition Exhibit #116 | 401-403, market share document, irrelevant to infringement. | |
| **DTEX-1062** | Document regarding 3rdQ, 2001 Investor Relations Update – Ethicon Worldwide Franchise [redacted] | DMI 040792 – 040798 | Defendants' Deposition Exhibit #117 | 401-403, market share document, irrelevant | |
| **DTEX-1063** | Document regarding 3rdQ, 2002 Investor Relations Update – Ethicon Worldwide Franchise [redacted] | DMI 040799 – 040810 | Defendants' Deposition Exhibit #118 | 401-403, market document, irrelevant to infringement | |
| **DTEX-1064** | Document regarding 4thQ, 2002 Investor Relations Update – Ethicon Worldwide Franchise [redacted] | DMI 040846 – 040858 | Defendants' Deposition Exhibit #119 | 401-403 marketing document, irrelevant to infringement | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1065** | R. Skula letter to S. Soffen attaching Patent No. 5,314,446 | ARM 24397 - 24406 | Defendants' Deposition Exhibit #120 | | |
| **DTEX-1066** | S. Soffen letter to R. Skula, 12/15/2003 | ARM 24339 | Defendants' Deposition Exhibit #121 | 401-403, 408 letter related to presuit discussions between the parties, not relevant to infringement. | |
| **DTEX-1067** | R. Skula letter to S. Soffen, 1/16/2004 | ARM 24332 – 24333 | Defendants' Deposition Exhibit #123 | 401-403, 408 letter related to presuit discussions between the parties, not relevant to infringement. | |
| **DTEX-1068** | Lab Notebook issued to Mark Steckel [portion] | DMI 000374 – 000387 | Defendants' Deposition Exhibit #124 | | |
| **DTEX-1069** | S. Soffen letter to R. Skula, 1/9/2004 | ARM 24336 – 24337 | Defendants' Deposition Exhibit #125 | 401-403, 408 letter relat presuit discussions between the parties, not relevant to infringement. | |
| **DTEX-1070** | S. Soffen letter to R. Skula, 2/20/2004 | ARM 24287 - 24291 | Defendants' Deposition Exhibit #126 | 401-403, 408 letter related to presuit discussions between the parties, not relevant to infringement. | |
| **DTEX-1071** | Lab Notebook No. 2175 issued to Mark Steckel [portion] | DMI 002605 – 002678 | Defendants' Deposition Exhibit #127 | | |
| **DTEX-1072** | R. Skula letter to S. Soffen, 3/4/2003 | ARM 24285 | Defendants' Deposition Exhibit #128 | 401-403, 408 letter related to presuit discussions between the parties, not relevant to infringement. | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1073** | S. Soffen e-mail to R. Skula, 6/29/2004 | ARM 24283 | Defendants' Deposition Exhibit #129 | | |
| **DTEX-1074** | S. Soffen email to R. Skula, 7/13/2004 | ARM 25591 | Defendants' Deposition Exhibit #130 | | |
| **DTEX-1075** | R. Skula e-mail to S. Soffen, 7/26/2004 | ARM 25592 – 25593 | Defendants' Deposition Exhibit #131 | | |
| **DTEX-1076** | S. Soffen e-mail to R. Skula, 8/7/2004 | ARM 25594 – 25596 | Defendants' Deposition Exhibit #132 | | |
| **DTEX-1077** | R. Skula e-mail to S. Soffen, 8/19/2004 | ARM 25598 – 25600 | Defendants' Deposition Exhibit #133 | | |
| **DTEX-1078** | Jonathan Howe memorandum to Orthocord DHF 2002-38 (cc C. Spivak, J. Grange, M. Scanlon, R. Forstadt, A. Tse, K. Seppa) regarding Stiffness Analysis: Violet Orthocord™ vs. Blue Fiberwire | DMI 001147 – 001153 | Defendants' Deposition Exhibit #135 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| **DTEX-1079** | K. Seppa e-mail string to I. Koyfman, J. Grange, M. Mooney, S. Cook, D. McDonald, N. O'Hara, R. Wintersteller (cc P. Stebbins, R. Gilson, E. Ray) regarding: Subjective Handling Data on OrthoCord | DMI 094256 – 094257 | Defendants' Deposition Exhibit #136 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| **DTEX-1080** | Document entitled: "Ethicon Corporate Product Characterization, Product Performance Evaluation, Final Study Report" regarding Orthocord* Blue, by K. Seppa | DMI 015592 – 015594 | Defendants' Deposition Exhibit #137 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| **DTEX-1081** | Design History File entitled: "Orthocord violet #2 size suture, volume III" | DMI 061623 – 062007 | Defendants' Deposition Exhibit #138 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/Out |
|---|---|---|---|---|---|
| **DTEX-1082** | Table entitled: "DePuy Mitek Summary of CNIS Year to Date December 2005" | DMI 095328 – 095331 | Defendants' Deposition Exhibit #145 | 401-403 financials irrelevant to infringement | |
| **DTEX-1083** | Presentation slides regarding Fiberwire sales, Market Strategy for Orthocord | DMI 094304 – 094338 | Defendants' Deposition Exhibit #147 | 401-403 Orthocord mareting, irrlevant to infringement | |
| **DTEX-1084** | Tables regarding Forecast and MAPE Update spreadsheet | DMI 039886 – 039899 | Defendants' Deposition Exhibit #150 | 401-403, marketing forecast, irrelevant to infringement | |
| **DTEX-1085** | Presentation slides: "Commercial Plan Extremities," by Rick Gilson and Jon Grange | DMI 095173 - 095311 | Defendants' Deposition Exhibit #151 | 401-403, marketing irrelevant to infringement | |
| **DTEX-1086** | List of complaints DePuy Mitek received about its products | DMI 015166 - 015187 | Defendants' Deposition Exhibit #162 | 401-403 802 customer complaints, irrelevant to infringement contains third-party hearsay regarding complaints | |
| **DTEX-1087** | Document entitled: "Process/Product Development Strategy, Project Violet OrthoCord," by I. Koyfman | DMI 082158 – 082164 | Defendants' Deposition Exhibit #165 | 401-403, Orthocord Research Mitek Motion in Limine#5 | |
| **DTEX-1088** | White Paper entitled: "Corporate Product Characterization, Product Performance Evaluation Group, OrthoCord (Mitek), Revised Final Test Report," by K. Seppa | DMI 081409 – 081413 | Defendants' Deposition Exhibit #166 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| DTEX-1089 | White Paper entitled: "Corporate Product Characterization, Product Performance Evaluation Group, OrthoCord (Mitek), Final Test Report," by L. Vailhe, Requestor – Ilya Koyfman | DMI  081405  –  081408 | Defendants' Deposition Exhibit #167 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1090 | Report entitled: "OrthoCord Suture Development, Interim Report," by I. Koyfman, H. Pokropinski | DMI  039446  -  039470 | Defendants' Deposition Exhibit #168 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1091 | M. Mooney e-mail string to Renay Lawson regarding attached Completion Report for the Development of Violet Orthocord | DMI  094157  -  094169 | Defendants' Deposition Exhibit #169 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1092 | Table entitled: "Process Failure Modes and Effect Analysis (pFMEA)," Orthocord Cornelia Process, by Andrew Brackett, 11/18/2005 | DMI 079770 – 079780 | Defendants' Deposition Exhibit #170 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1093 | I. Koyfman memo to S. Cook, M. Mooney (cc Dr. I. Nozad, E. Miller, K. Seppa, RDCF) regarding: Justification for the Bunching Requirements of Orthocord Braided Suture, 3/17/2004 | DMI  081183  –  081187 | Defendants' Deposition Exhibit #171 | 401-403 Orthocord Research Mitek Motion in Limine#5 | |
| DTEX-1094 | Table of Arthrex FiberWire Sales | DMI 001137 | Defendants' Deposition Exhibit #180 | 401-403 unreadable document, refers to market information | |
| DTEX-1095 | R. Skula letter to S. Soffen, 12/1/2003 | ARM 24397 | Defendants' Deposition Exhibit #181 | | |

11

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1096** | U.S. Patent No. 5,019,093, "Braided Suture," Donald S. Kaplan et al., Inventors | N/A | Defendants' Deposition Exhibit #190 | 401-403 Patent irrelevant to infringement, not relied upon by Arthrex's expert witnesses, owned by a third-party, no witness to disuss with respect to infringement, raised at an expert depositoin with reference to validity issues | |
| **DTEX-1097** | U.S. Patent No. 5,222,978, "Packaged Synthetic Absorbable Surgical Elements," Donald S. Kaplan et al., Inventors | N/A | Defendants' Deposition Exhibit #191 | 401-403 Patent irrelevant to infringement; not relied upon by expert witnesses regarding infringement, owned by a third-party, no witness to disuss with respect to infringement, raised at an expert deposition with respect to validity issues | |
| **DTEX-1098** | [Physical]: Samples of FiberWire (blue) and Tiger Wire (white/black), retained by Mr. Saber | N/A | Defendants' Deposition Exhibit #192 | | |
| **DTEX-1099** | U.S. Patent No. 5,312,437, "Absorbable Coatings Composition and Suture Coated Therewith," Matthew E. Hermes et al., Inventors | N/A | Defendants' Deposition Exhibit #196 | 401-403 No expert witness considered this patent, and therefore Arthrex should not be permitted to introduce it. | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|-------|-------------|-------------|-----------------|------------|---------|
| **DTEX-1100** | U.S. Patent No. 5,147,383, "Suture Coated with a Polyvinyl Ester," by Rao S. Bezwada et al., Inventors | N/A | Defendants' Deposition Exhibit #202 | 401-403 Irrelevant to infringement issues because it does not discuss Arthrex's FiberWire product. | |
| **DTEX-1101** | U.S. Patent No. 5,089,013, "Suture Coated with a Polyvinyl Ester," Rao S. Bezwada et al., Inventors | N/A | Defendants' Deposition Exhibit #203 | 401-403 Irrelevant to infringement issues because it does not discuss Arthrex's FiberWire product. | |
| **DTEX-1102** | U.S. Patent No. 4,532,929, "Dry Coating of Surgical Filaments," Frank V. Mattei et al., Inventors | N/A | Defendants' Deposition Exhibit #204 | 401-403 Irrelevant to infringement issues because it does not discuss Arthrex's FiberWire product. | |
| **DTEX-1103** | Document entitled: "Completion Report for Protocol #ST-98053, Protocol for the Development of NVC Coating on Panacryl™ Suture Material," by Jerry Fischer & Howard Scalzo | DMI 060231 – 060234 | Defendants' Deposition Exhibit #205 | 401-403 Ethicon document discussing an absorbable suture, irrelevant to infringement issues because it does not discuss Arthrex's FiberWire | |
| **DTEX-1104** | Presentation slides: Orthocord Promotional Material | DMI 094378 and 94394 | Defendants' Deposition Exhibit #206 | 401-403 Incomplete document, Orthocord Research & Marketing Motion in Limine#5 | |

13

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1105** | Document entitled: "Wound Closure Manual," Ethicon, Ch. 2, P.11, front and back covers | N/A | Defendants' Deposition Exhibit #207 | 401-403 Ethicon document discussing an absorbable suture, irrelevant to infringement issues because it does not discuss Arthrex's FiberWire | |
| **DTEX-1106** | Document entitled: "FiberWire – Important Product Information," in English, German, French, Italian & Spanish, 2 pgs. | N/A | Defendants' Deposition Exhibit #208 | | |
| **DTEX-1107** | Dr. David Brookstein's invoices to Mr. Erich Falke for professional services | DB DB000163 - 000167 | Defendants' Deposition Exhibit #209 | 401-403 Expert invoice, not admissible | |
| **DTEX-1108** | Document regarding Gordon Laboratory Seminar Series, Presenters/topics for April 28th through July 6th, attaching abstracts | DB 000029 - 000036 | Defendants' Deposition Exhibit #210 | | |
| **DTEX-1109** | Study: George T. Rodeheaver et al., "Knotting and Handling Characteristics of Coated Synthetic Absorbable Sutures," Academic Press (1983) 525-530 | N/A | Defendants' Deposition Exhibit #211 | 802/901 Third-party document, no foundation regarding publication, and hearsay statements by third-party. | |
| **DTEX-1110** | Paper: "Standard Test Method for Tensile Properties of Plastics," ASTM International, Designation: D 638 – 03 | DB 000001 - 000015 | Defendants' Deposition Exhibit #213 | | |
| **DTEX-1111** | Photographs, graphs of test results and discussion of Pearsalls testing procedures | DB 000168 - 000187 | Defendants' Deposition Exhibit #214 | | |
| **DTEX-1112** | Curriculum Vitae of Debi Prasad Mukherjee, Ph.D. | N/A | Mukherjee Expert Report (3/3/06) Exhibit #2 | 401-403 802 Expert c.v., not relevant. | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1114** | Investigation, Project No. CBE, regarding PET / PTFE Composite, dated 2/2/1989 | DMI 002638 | Mukherjee Expert Report (3/3/06) Exhibit #9 | | |
| **DTEX-1115** | Lab Notebook No. 2175 issued to Mark Steckel, 2/29/1988, [portion] | DMI 002605, DMI 002637, DMI 002674 | Mukherjee Responsive Expert Report (3/24/06) Exhibit #7 | | |
| **DTEX-1116** | U.S. Patent No. 4,994,074, "Copolymers of Epsilon-Caprolactone for Suture Coatings," Raos Bezwada, et al., Inventors | N/A | Mukherjee Responsive Expert Report (3/24/06) Exhibit #12 | 401-403 Irrelevant to infringement issues because it does not discuss Arthrex's FiberWire product. | |
| **DTEX-1117** | Article entitled: "Knotting and Handling Characteristics of Coated Synthetic Absorbable Sutures," by George T. Rodeheaver, PhD., et al, 1/6/1983, pp. 525 - 528 | N/A | Mukherjee Responsive Expert Report (3/24/06) Exhibit #13 | 401-403 802 802/901 Third-party document, no foundation regarding publication, and hearsay statements by third-party; Duplicative of DTEX1109 | |
| **DTEX-1118** | Completion Report for Protocol # ST – 98053, "Protocol for the Development of NVC Coating on Panacryl suture material," 1/25/1999 | DMI 060231 - 060234 | Mukherjee Responsive Expert Report (3/24/06) Exhibit #14 | 401-403 Ethicon document discussing an absorbable suture, irrelevant to infringement issues because it does not discuss Arthrex's FiberWire; Duplicative of DTEX1103 | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/Out |
|---|---|---|---|---|---|
| DTEX-1119 | Presentation slides: Product Information Sheet, Orthocord | DMI 094378 and 094394 | Mukherjee Responsive Expert Report (3/24/06) Exhibit #15 | 401-403 incomplete document duplicative of DTEX 1104. | |
| DTEX-1120 | Interim Report, Orthocord Suture Development, 9/2/2003 | DMI039421; DMI039438 | Mukherjee Responsive Expert Report (3/24/06) Exhibit #17 | 401-403 Othorcord development document, irrelevant to infringement, Motion in Limine#5 | |
| DTEX-1121 | Arthrex Test Report Summary and Sign-Off Sheet, 02/16/2004 | ARM 000699 - 000701 | Mukherjee Responsive Expert Report (3/24/06) Exhibit #19 | 401-403 Arthrex has on foundation to prove the construction of the samples that it tested. | |
| DTEX-1122 | Report, Comparative Suture Testing, Center For Tribology, 3/23/2006 | N/A | Mukherjee Responsive Expert Report (3/24/06) Exhibit #20 | 802 Arthrex expert report. | |
| DTEX-1123 | Article entitled: "Tensile Strength and Knot Security of Surgical Suture Materials," John B. Herrmann, M.D., 4/1971 | N/A | Mukherjee Responsive Expert Report (3/24/06) Exhibit #22 | 802/901 Third-party herasay document, no foundation for its source or publication. | |
| DTEX-1124 | U.S. Patent No. 4,983,180, "Coated Sutures Exhibiting Improved Knot Security," Tatsuya Kawai et al., Inventors | N/A | Mukherjee Responsive Expert Report (3/24/06) Exhibit #23 | 401-403 Irrelevant to infringement, does not discuss FiberWire product. | |
| DTEX-1125 | U.S. Patent No. 4,649,920, "Coated Suture," Joseph D. Rhum, Inventor | N/A | Mukherjee Responsive Expert Report (3/24/06) Exhibit #24 | 401-403 Irrelevant to infringement, does not discuss FiberWire product. | |

16

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1126** | Table entitled: "Pearsalls Sutures Knot Pull Results" | N/A | Mukherjee Responsive Expert Report (3/24/06) Exhibit #25 | | |
| **DTEX-1127** | Modern Plastics Encyclopedia Values, "Properties of Polyethylene Terephthalate /PET," and "Nylon 66 Molding Compound," Roger D. Corneliussen, 2002, 4 pp. | N/A | Mukherjee Responsive Expert Report (3/24/06) Exhibit #26 | | |
| **DTEX-1128** | Arthrex Product Information, FiberStick and TigerStick | N/A | Mukherjee Responsive Expert Report (3/24/06) Exhibit #27 | | |
| **DTEX-1129** | Product Specification, Pearsall Sutures, Kryston Silkworm (91) various knot strengths, 1/1991 | PR 08400 - 08403 | Mukherjee Responsive Expert Report (3/24/06) Exhibit #29 | 401-403 Pearsalls fishing line develoment document. | |
| **DTEX-1130** | Arthrex Brochure: "Revolutionizing Orthopaedic Surgery, FiberWire: Braided Polyblend Suture," 2004 | ARM 10564 – 10573 | Mukherjee Responsive Expert Report (3/24/06) Exhibit #30 | | |
| **DTEX-1131** | International Application Published Under PCT, "Composite Surgical Sutures," A61L 17/00, WO 86/00020, 1/3/1986 | DMI 000150 - 000179 | Mukherjee Rebuttal Expert Report (4/13/06) Exhibit #9 | | |
| **DTEX-1132** | Lab Notebook issued to Mark Steckel [portion] | DMI 002605 and 002618 | Mukherjee Rebuttal Expert Report (4/13/06) Exhibit #11 | | |
| **DTEX-1133** | U.S. Patent No. 6,716,234 B2, "High Strength Suture Material," R. Donald Grafton, et al., Inventors | N/A | Mukherjee Rebuttal Expert Report (4/13/06) Exhibit #12 | 403 Arthrex's Patent related to FiberWire | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/Out |
|-------|-------------|-------------|-----------------|------------|--------|
| **DTEX-1134** | Lab Notebook No. 2175 issued to Mark Steckel, portion | DMI 002605 and 002368 | Mukherjee Rebuttal Expert Report (4/13/06) Exhibit #17 | | |
| **DTEX-1135** | Arthrex Brochure, "Revolutionizing Orthopaedic Surgery, FiberWire: Braided Composite Suture," 2005 | N/A | Arthrex Brief on Claim Construction, 8/11/2006, Exhibit #2 | | |
| **DTEX-1137** | Arthrex FiberWire brochure, 2005 | N/A | Defendants' Motion for Summary Judgment (8/11/06), Exhibit 2 | Duplicative of DTEX 1137. | |
| **DTEX-1138** | Memo, [Untitled, Redacted], 2 pages | DMI 039558 - 039559 | Defendants' Motion for Summary Judgment (8/11/06), Exhibit 5 | 401-403 Orthocord Research document, irreleavnt to infringement, Motion in Limine#5. | |
| **DTEX-1139** | Presentation slides: ORTHOCORD Update, 15 July 2004 | DMI 038133, DMI 038137 | Defendants' Motion for Summary Judgment (8/11/06), Exhibit 6 | 401-403 Orthocord mareting document, incomplete document | |
| **DTEX-1140** | Arthrex About Us webpage, 8/10/06, 1 page | N/A | Defendants' Motion for Summary Judgment (8/11/06), Exhibit 16 | | |
| **DTEX-1141** | Johnson & Johnson Gateway: Depuy Mitek, Inc., A Johnson & Johnson company, web page, 8/10/06, 2 pages | N/A | Defendants' Motion for Summary Judgment (8/11/06), Exhibit 17 | | |
| **DTEX-1142** | About ETHICON webpage, 1 page, 8/10/06 | N/A | Defendants' Motion for Summary Judgment (8/11/06), Exhibit 18 | | |

18

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1143** | Lab Notebook issued to Mark Steckel [portion] | DMI 002605, DMI 002635 – 002638, DMI 002666 | Defendants' Motion for Summary Judgment (8/11/06), Exhibit 21 | | |
| **DTEX-1144** | Invoice list, "Based upon QAD information as of 6/10/05" | ARM 24165-A | Defendants' Motion for Summary Judgment (8/11/06), Exhibit 27 | | |
| **DTEX-1145** | DePuy Mitek's Privileged Document List, 1/25/2006, 5 pages | N/A | Defendants' Reply to Response to Motion for Summary Judgment (9/15/06), Exhibit#7 | 401-403 Privilege Log, irrlevant to infringement. | |
| **DTEX-1146** | U.S. Patent No. 4,074,713, "Poly(N-acetyl-D Glucosamine) Products," Richard Carl Capozza, Inventor | N/A | Defendants' Reply to Response to Motion for Summary Judgment (9/15/06), Exhibit#8 | 401-403 not produced during discovery, no expert to discuss Motion in Limine#3. | |
| **DTEX-1147** | U.S. Patent No. 4,074,366, "Poly(N-acetyl-D Glucosamine) Products," Richard Carl Capozza, Inventor | N/A | Defendants' Reply to Response to Motion for Summary Judgment (9/15/06), Exhibit#9 | 401-403 not produced during discovery, no expert to discuss, Motion in Limine#3. | |
| **DTEX-1148** | Physical exhibit - Mixed bag of coated and uncoated Fiberwire suture tested by Dr. Gitis in March 2006 | CETR 0075 | N/A | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|-------|-------------|-------------|-----------------|------------|---------|
| **DTEX-1149** | Article, Knotting and Handling Characteristics of Coated Synthetic Absorbable Sutures, George T. Rodeheaver, Ph.D., et al, 1/6/1983 | CETR 0110 – 0114 | N/A | 802/901 Third-party document, no foundation regarding publication, and hearsay statements by third-party. Duplicative of DTEX1109. | |
| **DTEX-1150** | Article, Knot Security in Simple Sliding Knots and Its Relationship to Rotator Cuff Repair: How Secure Must the Knot Be? Stephen S. Burkhart, et al, 3/2000 | CETR 0115 – 0120 | N/A | 802/901 Third-party document, no foundation regarding publication, and hearsay statements by third-party. | |
| **DTEX-1151** | Article, Mechanical performance of knots using braided and monofilament absorbable sutures, Daniel C. Schubert, MD, et al, 12/2002 | CETR 0121 - 0125 | N/A | 802/901 Third-party document, no foundation regarding publication, and hearsay statements by third-party. | |
| **DTEX-1152** | Article, Monocryl suture, a new ultra-pliable absorbable monofilament suture, 1/26/1995 | CETR 0126 - 0133 | N/A | 802/901 Third-party document, no foundation regarding publication, and hearsay statements by third-party. | |
| **DTEX-1153** | Report, Tribometrological Studies in Bioengineering, 6/2004 | CETR 0134 - 0144 | N/A | | |
| **DTEX-1154** | Report, Precision Experimental Measurements of Viscoelastic Properties of Industrial Polymers, 10/2003 | CETR 0145 - 0146 | N/A | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1155** | Report, Evaluation of Elastic Properties of Elastomer Micro-Springs with CETR Micro-Tribometer, 8/18/1998 | CETR 0147 - 0148 | N/A | 401-403 802 Irrelevant to infringement. No foundation regarding pubication, third-party document. | |
| **DTEX-1156** | Report, Micro and Nano Hardness Measurements on UMT Testers | CETR 0149 - 0150 | N/A | 401-403 802 Irrelevant to infringement. No foundation regarding pubication, third-party document. | |
| **DTEX-1157** | Report, Comprehensive Materials Testing for Mechanical and Tribological Properties | CETR 0151 - 0154 | N/A | 802 Irrelevant to infringement. No foundation regarding pubication, third-party document. | |
| **DTEX-1158** | User's Manual, CETR UMT-2 – Multi-Specimen Test System, Version 1.01, 9/29/2004 | CETR 0155 - 0243 | N/A401-403/802 Irrelevant to infringement. No foundation regarding pubication, third-party document. | 401-403/802 Irrelevant to infringement. No foundation regarding pubication, third-party document. | |
| **DTEX-1159** | Physical sample - uncoated FiberWire suture tested by Dr. Gitis in March 2006 | ARM 25904 | N/A | | |
| **DTEX-1160** | Marketing Product Initiation (MPI) form No. 670 by Rob Sluss, 5/21/2003 | ARM 3584 | DePuy Mitek's Deposition Exhibit #53 | | |
| **DTEX-1161** | MPI form No. 435 by D. Grafton, 9/28//2000 | ARM 000933 | DePuy Mitek's Deposition Exhibit #54 | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/Out |
|-------|-------------|-------------|-----------------|------------|--------|
| DTEX-1162 | Subsequent Design Review Meeting minutes re MPI 670, 12/11/2003 | ARM 3580 | DePuy Mitek's Deposition Exhibit #55 | | |
| DTEX-1163 | Product Launch Form for MPI 435, Part No. AR-7200, 10/19/2000 | ARM 3651 | DePuy Mitek's Deposition Exhibit #56 | | |
| DTEX-1164 | Arthrex white paper – a collection of scientific data from testing FiberWire prior to its product launch, 4/2001 | ARM 10614 – 10619 | DePuy Mitek's Deposition Exhibit #60 | 401-403 802 Statements by third-party. No witness to discuss the relevance of the document. | |
| DTEX-1165 | Arthrex FiberWire brochure (undated) | ARM 10564 – 10573 | DePuy Mitek's Deposition Exhibit #62 | Unreadable | |
| DTEX-1166 | Original and initial submission to the FDA | ARM 001888 – 002078 | | 401-403 802 901 FDA submission which includes third-party hearsay documents that lack foundation, and information irrelevant to infringement | |
| DTEX-1167 | Arthrex Product Catalog, 2005 | ARM 18334 – 18614 | DePuy Mitek's Deposition Exhibit #101 | | |
| DTEX-1168 | Technical File, (Design History File) Arthrex Fiber Wire™ Invasive, Implantable Device, Class IIb (Rule 8), Volume 1 of 2, 7/17/2001 | ARM 8454 – 8846 | DePuy Mitek's Deposition Exhibit #102 | 401-403 802 901 FDA submission which includes third-party hearsay documents that lack foundation, and information irrelevant to infringement | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|-------|-------------|-------------|-----------------|------------|---------|
| **DTEX-1170** | Production Process, R.K. Manufacturing Corp. | RK 00688 | DePuy Mitek's Deposition Exhibit #104 | | |
| **DTEX-1171** | Letter Agreement between Arthrex and R.K. Manufacturing Corp. signed as agreed to and accepted on 12/12/2002, 10/14/2002 | RK 00001 | DePuy Mitek's Deposition Exhibit #105 | | |
| **DTEX-1172** | Design History File for FiberWire (Volume Two) | ARM 000702 - 000866 | DePuy Mitek's Deposition Exhibit #116 | 401-403 802 901 Design file hisotry that contains third-party hearsay documents that lack foundation, and information irrelevant to infringement | |
| **DTEX-1173** | Market Product Initiation form (Rev. 4), signed RS on 9/25/2001, 6/6/2003 | ARM 7286 – 7287 | DePuy Mitek's Deposition Exhibit #132 | | |
| **DTEX-1174** | Design History File: FiberWire (Volume One), 3/4/2001 | ARM 000913 - 001139 | DePuy Mitek's Deposition Exhibit #138 | 401-403 802 901 FDA submission which includes third-party hearsay documents that lack foundation, and information irrelevant to infringement | |
| **DTEX-1175** | Engineering Meeting Notes – FiberWire design review; Attendees: R. Schmieding. D. Grafton, D. Donnemeyer, C. Morgan, S. Soffen, G. Guederian, B. Marceau, B. Hackett, P, Dreyfuss, T. Hoover, S. Price, B. Benavitz, P. O'Quinn, V. Brown, 2/15-16/2001 | ARM 8607 | DePuy Mitek's Deposition Exhibit #218 | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|-------|-------------|-------------|-----------------|------------|---------|
| DTEX-1176 | Pearsalls Sutures – Fiberwire Process Flowchart, 6/29/2001 | ARM 002554 | DePuy Mitek's Deposition Exhibit #281 | | |
| DTEX-1177 | [Physical] Pearsalls Ltd. US2 FiberWire M/C state scoured sample | PR 008388 | DePuy Mitek's Deposition Exhibit #282 | | |
| DTEX-1178 | [Physical] Pearsalls Ltd. US2 M/C state before being scoured | PR 008387 | DePuy Mitek's Deposition Exhibit #283 | | |
| DTEX-1179 | [Physical] Pearsalls Ltd. US2 FiberWire M/C state scoured/dyed sample | PR 008389 | DePuy Mitek's Deposition Exhibit #284 | | |
| DTEX-1180 | [Physical] Pearsalls Ltd. US2 FiberWire M/C state dye/coated sample | PR 008390 | DePuy Mitek's Deposition Exhibit #285 | | |
| DTEX-1181 | [Physical] Braided polyester suture 2B-F/W, 5 m. Length P505T2 Suture Coated | PR 008386 | DePuy Mitek's Deposition Exhibit #286 | | |
| DTEX-1182 | Pearsalls Certificate of Conformity issued by K. Young to Arthrex, 3/26/2004 | ARM 22429 | DePuy Mitek's Deposition Exhibit #314 | | |
| DTEX-1183 | Fiberwire Acceptance Criteria [table] [undated] | ARM 22392 | DePuy Mitek's Deposition Exhibit #315 | | |
| DTEX-1184 | Arthrex Test Report Summary and Sign-Off Sheet for #2 Fiberwire MED2174 Coated and Uncoated USIPG Dyed, 3 pgs, 2/16/2004 | N/A | DePuy Mitek's Deposition Exhibit #343 | 401-403 Arthrex has not witness to provide foundation regarding the construction of the samples. | |
| DTEX-1185 | [Physical] – Sutures retained by Mr. Falke | N/A | DePuy Mitek's Deposition Exhibit #235 | | |
| DTEX-1186 | [Physical] – Sutures retained by Mr. Falke | N/A | DePuy Mitek's Deposition Exhibit #236 | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1187** | [Physical] – Sutures retained by Mr. Falke | N/A | DePuy Mitek's Deposition Exhibit #237 | | |
| **DTEX-1188** | [Physical] – Suture in plastic bag, 6/14/2006 | N/A | DePuy Mitek's Deposition Exhibit #364 | | |
| **DTEX-1189** | [Physical] – Suture in plastic bag, 6/14/2006 | N/A | DePuy Mitek's Deposition Exhibit #365 | | |
| **DTEX-1190** | [Physical] – Suture Sample, 6/21/2006 | CETR 75 | DePuy Mitek's Deposition Exhibit #388 | | |
| **DTEX-1191** | [Physical] – Suture Samples, 6/21/2006 | ARM 25930 | DePuy Mitek's Deposition Exhibit #389 | | |
| **DTEX-1192** | [Physical] – Suture Sample, coated, 6/21/2006 | ARM 25904 | DePuy Mitek's Deposition Exhibit #390 | | |
| **DTEX-1193** | FedEx tracking sheet showing shipment from Yien Saechao to Scott Giraud, 4/10/2006 | CETR 54 - 57 | DePuy Mitek's Deposition Exhibit #391 | | |
| **DTEX-1194** | Pearsalls Certificate of Conformity for Blue Fiber Wire, U.S. Size 2, issued by S. Littlejohns, 2/17/2006 | PR 08457 | DePuy Mitek's Deposition Exhibit #399 | | |
| **DTEX-1195** | Pearsalls Certificate of Conformity for Blue Fiber Wire Uncoated, U.S. Size 2, 2/17/2006 | PR 08456 | DePuy Mitek's Deposition Exhibit #400 | | |
| **DTEX-1196** | CETR, UMT-2 – Multi-Specimen Test System, User's Manual, Version 1.01, 9/29/2004 | CETR 0155 - 0243 | DePuy Mitek's Deposition Exhibit #416 | 401-403 802 401-403/802 Irrelevant to infringement. No foundation regarding pubication, third-party document. Duplicative of DTEX1158. | |

25

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/Out |
|-------|-------------|-------------|-----------------|------------|--------|
| DTEX-1197 | Application Note on measurements of elastic properties of Elastomer micro-springs | CETR 0147 - 0148 | DePuy Mitek's Deposition Exhibit #417 | 401-403 802 Irrelevant to infringement. No foundation regarding pubication, third-party document. Duplicative of DTEX1155. | |
| DTEX-1198 | Application Note on Micro and Nano Hardness Measurements on UMT Testers | CETR 0149 - 0150 | DePuy Mitek's Deposition Exhibit #418 | 401-403 802 901 401-403 802 Irrelevant to infringement. No foundation regarding pubication, third-party document. Duplicative of DTEX1198. | |
| DTEX-1199 | Paper: "Tribometrological Studies in Bioengineering," by Dr. N. Gitis, Session 61, Proc. of the 2004 SEM X Int'l. Cong. And Expos. in Experimental and Applied Mechanics, Jun 7-10, Costa Mesa, CA | CETR 0134 - 0144 | DePuy Mitek's Deposition Exhibit #419 | Duplicative of DTEX1199. | |
| DTEX-1200 | D.L. Lawson letters to S. Tamburo attaching two Certificates of Conformity for Pearsalls Braided Fiberwire, 2/17/2006 | PR 08455 - 08460 | DePuy Mitek's Deposition Exhibit #435 | | |
| DTEX-1201 | Pearsalls standard production processing documents, Jan-Feb 2006 | PR 08461 - 08473 | DePuy Mitek's Deposition Exhibit #436 | | |
| DTEX-1202 | Pearsalls Test Methods forms for several procedures, 1997-2003 | PR 08433 - 08454 | DePuy Mitek's Deposition Exhibit #437 | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/Out |
|-------|-------------|-------------|-----------------|------------|--------|
| DTEX-1203 | [Physical] – 5m length of suture – FibreWire suture from batch 28893 that is part of a 10m retention sample that is saved for each production batch (Retained by Mr. Bonella) | N/A | DePuy Mitek's Deposition Exhibit #438 | | |
| DTEX-1204 | Correction of ARM 24165, Financial documents: Forecasts and fiscal budget info. Forecast Maintenance Documents, 8/24/2005 | ARM 24165A | N/A | | |
| DTEX-1205 | RK Manufacturing Processes Flowchart | RK 01698 | N/A | | |
| DTEX-1206 | Pearsalls Ltd. Documents (development trial & summary docs), 11/25/96, 12/10/96 | PR 08313 - 08315 | N/A | 401-403 Pearsalls document related to developemtal of product not at issue in the case. | |
| DTEX-1207 | Documents re indemnification agreement between Arthrex and Pearsalls | PR 8315A - 8322 | N/A | 401-403 Indemnification agreement, not relevant. | |
| DTEX-1208 | Documents produced by Pearsall during the UK Inspection, 1/19/2006 | PR 08325 - 08385 | N/A | | |
| DTEX-1209 | Pearsalls Ltd. Documents, 1/25/2006 | PR 08392 - 08432 | N/A | 401-403 802 901 collection of unrelated documents, some third-party documents that are hearsay and lack foundation, documents related to fishing line products that are not at issue in the case. | |
| DTEX-1210 | Indemnification correspondence | PR 8315A – 8315C | N/A | | |
| DTEX-1211 | Pearsalls Ltd.'s Test Reports | PR 8433 - 8454 | N/A | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1212** | Documents responsive to Sal's e-mail dated 4/13/2006 including Pearsalls and CETR documents., 4/15/2006 | PR 08455 – 08460; CETR 0001 - 0057 | N/A | 401-403 Collection of unrelated documents, some documents are admissible, but the collection is not, and includes third-party documents that are hearsay and lack foundation. | |
| **DTEX-1214** | Arthrex Product Catalog (2005) | ARM 18334 – 18614 | N/A | | |
| **DTEX-1215** | Brochure: "FiberWire: Orthopedic Composite Suture" | ARM 10574 - 10613 | N/A | Collection of unrelated documents | |
| **DTEX-1216** | Brochure: "FiberWire: Braided Polyblend Suture" | ARM 10564 - 10573 | N/A | | |
| **DTEX-1217** | Report: "FiberWire, Collective Summary of Strength and Biocompatibility Testing Data Comparisons of Polyester and Polyblend Sutures" | ARM 10614 - 10619 | N/A | 401-403 802 Document contains third-party hearsay, no witness to explain its relevance, not relevant to infringement. | |
| **DTEX-1218** | Arthrex Product Catalog 2000-2001 | ARM 9473 - 9665 | N/A | | |
| **DTEX-1219** | Arthrex Product Catalog 2002 | ARM 9666 - 9881 | N/A | | |
| **DTEX-1220** | Arthrex Product Catalog 2003/2004 | ARM 9882 - 10134 | N/A | | |
| **DTEX-1221** | Arthrex Product Catalog (Video Edition) | ARM 10135 - 10167 | N/A | | |
| **DTEX-1222** | Arthrex Product Catalog | ARM 10168 - 10228 | N/A | | |
| **DTEX-1223** | Brochure: "Orthocord Suture" | ARM 003048 - 003049 | N/A | | |
| **DTEX-1224** | Brochure: FiberWire: Braided Polyblend Suture | ARM 000298 - 000307 | N/A | Duplicate. | |
| **DTEX-1225** | E-Mail from S. Soffen to R. Skula, 6/29/2004 | ARM 000688 | N/A | Duplicate of DTEX1073. | |

28

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1226** | E-Mail from S. Soffen to R. Skula, 2/13/2004 | ARM 000689 | N/A | 401-403, 408 Document related to pre-suit discussions between the parties, not infringement. | |
| **DTEX-1227** | E-Mail from S. Soffen to R. Skula, 2/4/2004 | ARM 000690 | N/A | 401-403, 408 Document related to presuit discussions between the parties, not infringement. | |
| **DTEX-1228** | Letter from R. Skula to S. Soffen, 3/4/2003 | ARM 000692 | N/A | 401-403 Rule 408 Document related to pre-suit discussions between the parties, not relevant to infringement. | |
| **DTEX-1229** | Letter from S. Soffen to R. Skula, 2/20/2004 | ARM 000693 – 00094 | N/A | 401-403 408 Document related to presuit discussion between the parties, not relevant to infringement. | |
| **DTEX-1230** | Letter from S. Soffen to R. Skula, 12/15/2003 | ARM 000695 | N/A | 401-403, 408 Document related to presuit discussion between the parties, not relevant to infringement. | |
| **DTEX-1231** | Letter from R. Skula to S. Soffen, 1/16/2004 | ARM 000696 – 000697 | N/A | 401-403, 408 Document related to presuit discussion between the parties, not relevant to infringement. | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| DTEX-1232 | Letter from R. Skula to S. Soffen, 12/1/2003 | ARM 000698 | N/A | | |
| DTEX-1233 | Design History File, FiberWire (Volume Two) | ARM 000702 – 000906 | N/A | 401-403 802, 901 Collection of documents including third-party hearsay that lacks foundation, and information irrelevant to infringement. | |
| DTEX-1234 | Design History File, FiberWire (Volume One) | ARM 000913 – 000998 | N/A | 401-403 802, 901 Collection of documents including third-party hearsay that lacks foundation, and information irrelevant to infringement. | |
| DTEX-1235 | Document: Suture Spreadsheet | ARM 24016 – 24164 | N/A | 401-403 | |
| DTEX-1236 | Photo of FiberWire Spool – US 2 M/C State – uncoated suture | ARM 25590 | N/A | 401-403 Produced after fact discovery closed, depriving Mitek of the opportunity to take fact discovery from witnesses regarding their construction. | |
| DTEX-1237 | Photo of FiberWire Spool – US 2 Coated Med 2174 Batch 03/26/16122 - coated suture | ARM 25451 | N/A | 401-403 Produced after fact discovery closed, depriving Mitek of the opportunity to take fact discovery from witnesses regarding their construction. | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/Out |
|-------|-------------|-------------|-----------------|------------|--------|
| DTEX-1238 | Photo of FiberWire Spool – "from Tara – uncoated from spool identified" | ARM 25452 | N/A | 401-403 Produced after fact discovery closed, depriving Mitek of the opportunity to take fact discvovery from witnesses regarding their construction. | |
| DTEX-1239 | CD – 2005 Product Catalog | ARM 25813 | N/A | | |
| DTEX-1240 | CD – FiberWire Sales | ARM 24167 | N/A | 401-403 Financial information, not relevant. | |
| DTEX-1241 | Curriculum Vitae of Norm V. Gitis | N/A | Responsive Expert Report of Dr. Debi Prasad Mukherjee Exhibit #20, Appendix 2a. | | |
| DTEX-1242 | Curriculum Vitae of John F. Witherspoon | N/A | Arthrex's Expert Report of John F. Witherspoon (3/03/2006), Exhibit A | 401-403 802 CV of objectionable witness, Mitek Motion in Limine#4. | |
| DTEX-1243 | Curriculum Vitae of Robert T. Burks, M.D. | | Arthrex's Expert Report of Robert T. Burk, M.D. (3/24/2006), Exhibit #1 | | |
| DTEX-1245 | Sterilization Documents: "Certificate of Processing Ethylene Oxide Treatment at Sterile Systems," 3/14/2006 | CETR 0001 – 0037 | N/A | 802 Third-party hearsay. | |
| DTEX-1246 | FedEx Receipt: 4/10/2006 | CETR 54 | N/A | | |
| DTEX-1247 | FedEx Receipt: 4/10/2006 | CETR 55 | N/A | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1248** | FedEx Receipt: 4/10/2006 | CETR 56 | N/A | | |
| **DTEX-1249** | FedEx Receipt: 4/10/2006 | CETR 57 | N/A | | |
| **DTEX-1250** | Article: "Precision Experimental Measurements of Viscoelastic Properties of Industrial Polymers," 10/7/2003 | CETR    0058   -    0059 | N/A | Duplicative. | |
| **DTEX-1251** | Report, Tribometrological Studies in Bioengineering, 6/2004 | CETR    0060   -    0070 | N/A | Duplicative. | |
| **DTEX-1252** | Brochure: "Comprehensive Materials Testing for Mechanic and Tribological Properties: UMT Series Testers" | CETR    0071   -    0074 | N/A | 802 Irrelevant to infringement. No foundation regarding pubication, third-party document. | |
| **DTEX-1253** | Graphs, Force-strain data for uncoated sutures during pliability tests | CETR    0076   -    0079 | DePuy Mitek's Deposition Exhibit #382 | Not best copy, lacks color. | |
| **DTEX-1254** | 5 m. Length P505T2 Suture Coated [Physical] | PR 008386 | DePuy Mitek's Deposition Exhibit #286 | | |
| **DTEX-1255** | US 2 Fiberwire M/C State (before Scoured) [Physical] | PR 008387 | DePuy Mitek's Deposition Exhibit #283 | | |
| **DTEX-1256** | US 2 Fiberwire M/C State (Scoured) [Physical] | PR 008388 | DePuy Mitek's Deposition Exhibit #282 | | |
| **DTEX-1257** | US 2 Fiberwire M/C State (Scoured/ Dyed) [Physical] | PR 008389 | DePuy Mitek's Deposition Exhibit #284 | | |
| **DTEX-1258** | US 2 Fiberwire M/C State (Dyed/ Coated) [Physical] | PR 008390 | DePuy Mitek's Deposition Exhibit #285 | | |
| **DTEX-1259** | US 2 Single Pass Coating [Physical] | PR 008391 | DePuy Mitek's Deposition Exhibit #342 | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1260** | Production Procedure: Pearsalls Sutures, "Pad Stretching and Coating of Fiberwire/Tigerwire/Loops," 7/18/2005 | PR 08323 | N/A | | |
| **DTEX-1261** | Flowchart: Pearsalls Sutures, "Fiberwire/Tigerwire Flowchart," 8/05/2005 | PR 08324 | N/A | | |
| **DTEX-1262** | Table: Table 1, Approved FiberWire Constructs, 9/27/2004 | PR 08382 | N/A | | |
| **DTEX-1263** | Chart: FiberWire Chart, 11/11/2002 | PR 08383 | N/A | | |
| **DTEX-1264** | Chart: "Arthrex Products Matrix of Label Product & Development Codes," B. Hallett, November 2005 | PR 08384 - 08385 | N/A | | |
| **DTEX-1265** | Letter: to Salvatore Tamburo from D. L. Lawson, 2/17/2006 | PR 08455 | N/A | | |
| **DTEX-1266** | Letter: "Certificate of Conformity," Blue Fiber Wire Uncoated, Issued by S. Littlejohns, 2/17/2006 | PR 08456 | N/A | | |
| **DTEX-1267** | Letter: "Certificate of Conformity," Blue Fiber Wire, Issued by S. Littlejohns, 2/17/2006 | PR 08457 | N/A | | |
| **DTEX-1268** | Letter: to Salvatore Tamburo from D. L. Lawson, "Samples: No Commercial Value," 2/17/2006 | PR 08458 | N/A | | |
| **DTEX-1269** | Letter: to Salvatore Tamburo from D. L. Lawson, "Samples: No Commercial Value," 2/17/2006 | PR 08459 | N/A | | |
| **DTEX-1270** | DHL Air Waybill Receipt, 2/17/2006 | PR 08460 | N/A | | |
| **DTEX-1271** | Record: Pearsalls Sutures Works Order, 1/23/2006 | PR 08461 - 08462 | N/A | | |
| **DTEX-1272** | Record: Pearsalls Sutures Blue Singles/Fiberwire Process Record Only to be Dyed on LC3 Programme No. 11 | PR 08463 | N/A | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/Out |
|---|---|---|---|---|---|
| DTEX-1273 | Record: Pearsalls Sutures Bates Machine Med 2174 Solids Check, 9/2/2006 | PR 08464 | N/A | | |
| DTEX-1274 | Record: Pearsalls Sutures Old Bates Machine Line Clearance Record Sheet, 9/2/2006 | PR 08465 | N/A | | |
| DTEX-1275 | Record: Pearsalls Sutures Bates Machine – MED 2174 Process Record for Products Requiring 2 Passes, 7/19/2004 | PR 08466 | N/A | | |
| DTEX-1276 | Record: Pearsalls Sutures Fault Detect Record | PR 08467 | N/A | | |
| DTEX-1277 | Memo: "Certificate of Conformity," Blue Fiber Wire, Issued by S. Littlejohns, 2/14/2006 | PR 08468 | N/A | | |
| DTEX-1278 | Chart: Knot Pull Results for Start – Middle – End Reels, Batch Number 28893 | PR 08469 | N/A | | |
| DTEX-1279 | Chart: Results at Intermediate Stage for Batch 28893, 2/10/2006 | PR 08470 | N/A | | |
| DTEX-1280 | Chart: Results at Dye Stage for Batch 28893, 1/28/2006 | PR 08471 | N/A | | |
| DTEX-1281 | Chart: Determination of D&C Blue No. 6 in Polyester, 5/11/2003 | PR 08472 | N/A | | |
| DTEX-1282 | Chart: Results for Batch 28893 | PR 08473 | N/A | | |
| DTEX-1283 | Article: "A Stitch in Time: Fix Curt, break the curse," Kevin Cook, 07/2005 | N/A | N/A | Arthrex agreed is out. | |
| DTEX-1284 | U.S. Patent No. 4,564,013, "Surgical Filaments from Vinylidene Fluoride Copolymers," Robert Lilenfeld, et al., Inventors | N/A | N/A | Arthrex agreed is out. | |
| DTEX-1285 | Printout of DePuy Mitek Website | N/A | N/A | | |
| DTEX-1286 | Printout of Ethicon Website | N/A | N/A | | |
| DTEX-1287 | Printout of Johnson and Johnson Website | N/A | N/A | | |
| DTEX-1288 | Printout of Arthrex Website | N/A | N/A | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|-------|-------------|-------------|-----------------|------------|---------|
| **DTEX-1289** | Printout of Pearsalls Website | N/A | N/A | | |
| **DTEX-1290** | Printout of CETR Website | N/A | N/A | | |
| **DTEX-1291** | Physical exhibit - Sample of Teleflex Medical Force Fiber suture | N/A | N/A | 401-403 Irrelevant to infringement. | |
| **DTEX-1292** | Physical exhibit - Sample of Opus Medical Magnum Force suture | N/A | N/A | 401-403 Irrelevant to infringement. | |
| **DTEX-1293** | Physical exhibit - Sample of Arthrotek MaxBraid suture | N/A | N/A | 401-403 Irrelevant to infringement. | |
| **DTEX-1294** | Physical exhibit - Sample of Linvatec Herculine suture | N/A | N/A | 401-403 Irrelevant to infringement. | |
| **DTEX-1295** | Physical exhibit - Sample of Smith & Nephew UltraBraid suture | N/A | N/A | 401-403 Irrelevant to infringement. | |
| **DTEX-1296** | Physical exhibit - Sample of Orthocord suture | N/A | N/A | | |
| **DTEX-1297** | Physical exhibit - Sample of Ethibond suture | N/A | N/A | | |
| **DTEX-1298** | Physical exhibit - Sample of Tevdek suture | N/A | N/A | | |
| **DTEX-1299** | Physical exhibit - Sample of coated suture tested by Dr. Norm Gitis in August 2006 | N/A | N/A | Arthrex agreed to remove. | |
| **DTEX-1300** | Physical exhibit - Sample of uncoated suture tested by Dr. Norm Gitis in August 2006 | N/A | N/A | Arthrex agreed to remove. | |
| **DTEX-1301** | Certificate of Conformity for Batch No. 32264 - coated FiberWire suture tested by Dr. Gitis in August 2006 | PR 008474 | N/A | Arthrex agreed to remove. | |
| **DTEX-1302** | Certificate of Conformity for Batch No. 32264 - uncoated FiberWire suture tested by Dr. Gitis in August 2006 | PR 008475 | N/A | Arthrex agreed to remove. | |
| **DTEX-1303** | Physical exhibit - AR-1902S - Corkscrew II suture anchor and two #2 braided suture | N/A | N/A | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/Out |
|---|---|---|---|---|---|
| DTEX-1304 | Physical exhibit - AR - 1902SF - Corkscrew II suture anchor and two #2 FiberWire suture | N/A | N/A | | |
| DTEX-1305 | Claim Charts and Various other Demonstrative Exhibits | TBD | TBD | | |
| DTEX-1306 | Responsive Expert Report of Dr. Debi Prasad Mukherjee Concerning Non-Infringement of U. S. Patent No. 5,314,446 And Other Matters; Attached are Exhibits 1-34 (03/24/2006) | N/A | N/A | 401-403 802 901 Objection to expert report; objection to certain exhibits: Deposition testimony – hearsay; Other suture patents – irrelevant Documents on Panacryl suture/Orthocord suture/Silkworm – not relevant to infringement issue | |
| DTEX-1307 | Supplemental Test Report on Comparative Suture Testing, June 28, 2007, Norm Gitis | N/A | N/A | 401-403 802 901 Mitek Motion in Limine#1 | |
| DTEX-1308 | "Comparative Suture Testing", March 23, 2006, by Norm Gitis | N/A | N/A | 401-403 802 901 Mitek Motion in Limine#1. | |
| DTEX-1309 | Arthrex's Expert Report of Robert T. Burks, M.D.; (03/24/2006) | N/A | | | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|-------|-------------|-------------|-----------------|------------|---------|
| **DTEX-1310** | Arthrex's Expert Report of John F. Witherspoon With Respect To Issues Of Infringement;  (3/24/2006) | N/A | N/A | 401-403 802 Opinion regarding infringement and discussion of law improper and irrelevant; see Mitek Motion in Limine #4; opinions on issues other than infringement irrelevant | |
| **DTEX-1311** | www.forcefiber.com/performance/html (7/9/07) | | | 401-403 802 901 Competitive product not relevant to infringement analysis, no foundation, third-party hearsay document. | |
| **DTEX-1312** | Rebuttal Expert Report of Dr. David Brookstein, 4/13/2006 | | | | |
| **DTEX-1313** | Amended Supplemental Expert Report of Dr. David Brookstein, 7/24/06 | | | | |
| **DTEX-1314** | Center for Tribology, Inc. Document entitled Comparative Suture Testing | | Deposition of David Brookstein (7/27/06) Exhibit #212 | 401-403 802 401-403 802 901 Mitek Motion in Limine #1. | |
| **DTEX-1315** | DePuy Mitek's Responses to Arthrex's First Set of Interrogatories, 04/04/2005 | | | Object to parts under 401-403 Interrogatories 3-11, 13-17 ot relevant to issue of FiberWire infringement | |

37

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|-------|-------------|-------------|-----------------|------------|---------|
| DTEX-1316 | DePuyMitek's Supplemental Responses to Arthrex's First Set of Interrogatories, 07/01/2005 | | | Object to parts under 401-403 Interrogatories 6, 10, 11, 13, 14, 15, 16, 17 not relevant to issue of FiberWire infringement | |
| DTEX-1317 | DePuy Mitek's Responses to Arthrex's Second Set of Interrogatories, 07/20/2005 | | | Object to parts under 401-403 Court construed the term/ Mitek's contentions not relevant | |
| DTEX-1318 | DePuy Mitek's Responses to Arthrex's Third Set of Interrogatories, 11/28/2005 | | | 401-403 Int. 20 not relevant to infringement by FiberWire | |
| DTEX-1319 | DePuy Mitek's Second Supplmental Responses to Arthrex's First Set of Interrogatories, 12/05/2005 | | | Object to parts under 401-403 | |
| DTEX-1320 | DePuy Mitek's Second Supplemental Responses to Arthrex's Interrogatory No. 15, 12/20/2005 | | | 401-403 Int. 15 not relevant to infringement by FiberWire | |
| DTEX-1321 | Chart of sutures | | DePuy Mitek's Deposition Exhibit # 234 | | |
| DTEX-1322 | Sample of Fiberwire suture [Physical] | N/A | | 403, 901 Not produced during discovery | |
| DTEX-1323 | Sample of Fiberwire suture (uncoated) [Physical] | N/A | | 403, 901 Not produced during discovery | |
| DTEX-1324 | Design Verification | ARM 02431 - 2668 | Depuy Mitek Deposition Exhibit # 139 | 401-403 802 | |
| DTEX-1325 | Design Validation | ARM 02669 - 2763 | Depuy Mitek Deposition Exhibit # 140 | 401-403 802 | |

38

| TEX # | Description | Bates Range | Previously Used | Objections | In/Out |
|---|---|---|---|---|---|
| **DTEX-1326** | Arthrex Test Report #532 | N/A | N/A | Arthrex agreed to remove. | |
| **DTEX-1327** | Arthrex Test Report #530 | N/A | N/A | Arthrex agreed to remove. | |
| **DTEX-1328** | Arthrex Test Report #538 | N/A | N/A | Arthrex agreed to remove. | |
| **DTEX-1329** | Arthrex Test Report #502 | N/A | N/A | Arthrex agreed to remove. | |
| **DTEX-1330** | Pearsalls Batch Reports | PR 01711 – PR 06186 (with gaps) | | | |
| **DTEX-1331** | Flow Chart labeled "Production Process" (undated) | RK 01698 | Depuy Mitek Deposition Exhibit # 182 | Duplicate. | |
| **DTEX-1332** | 3/7/2006, S. Tamburo e-mail string to N. Gitis (cc C. Saber, D. Mukherjee) regarding Suture Testing at CETR | CETR 0038 – 0041; 0090 - 0091 | Depuy Mitek Deposition Exhibit # 387 | 802 | |
| **DTEX-1333** | 11/20/1987 – 11/20/1989, Index – DT185, page from a notebook [described as P.7977 in Exh, No. 161] | PR 08398 | Depuy Mitek Deposition Exhibit # 228 | 401-403 Document related to nonsuture products, unrelated to infringement. | |
| **DTEX-1334** | 9/19/1989- Kryston Silkworm, page 8052 from Exh. No. 161, notebook page | PR08399 | Depuy Mitek Deposition Exhibit # 229 | 401-403 Document related to nonsuture products, unrelated to infringement. | |
| **DTEX-1335** | 1/14/1991, Pearsall Sutures Product Specification for the Kryston Silkworm (91) | PR08400 | Depuy Mitek Deposition Exhibit # 230 | 401-403 Document related to nonsuture products, unrelated to infringement. | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/Out |
|-------|-------------|-------------|-----------------|------------|--------|
| DTEX-1336 | 1/14/1991, Pearsalls Sutures, production specification for Kryston Silkworm 10 lbs. | PR 08401 | Depuy Mitek Deposition Exhibit # 344 | 401-403 Document related to nonsuture products, unrelated to infringement. | |
| DTEX-1337 | 1/22/1991, Pearsalls Sutures, production specification for Kryston Silkworm 151b knot strength | PR 08402 | Depuy Mitek Deposition Exhibit # 345 | 401-403 Document related to nonsuture products, unrelated to infringement. | |
| DTEX-1338 | 1/22/1991, Pearsalls Sutures, production specification for Kryston Silkworm 251b knot strength | PR 08403 | Depuy Mitek Deposition Exhibit # 346 | 401-403 Document related to nonsuture products, unrelated to infringement. | |
| DTEX-1339 | Advertisement placed by Kryston for the Silkworm and Merlin fishing lines [undated] | PR 08404 - 08505 | Depuy Mitek Deposition Exhibit # 347 | 401-403 802 Third-party hearsay document, lacking foundation, relates to nonsuture products, unrelated to infringement. | |
| DTEX-1340 | 4/20/1990, Stephen J. Wills facsimile to Genoa Engineering (John Jones) attaching Dyneema SK60 Polythylene fibre brochure [attachment lacking] | PR 08406 | Depuy Mitek Deposition Exhibit # 348 | 401-403, 802, 901 Document relates to nonsuture products, unrelated to infringement. Document lacks foundation, hearsay. | |

DSMDB-2286014v01

| TEX # | Description | Bates Range | Previously Used | Objections | In/Out |
|-------|-------------|-------------|-----------------|------------|--------|
| **DTEX-1341** | 2/19/1991, Steve Crandall (Ashaway Line & Twine Mfg. Co.) facsimile to S. Wills (Pearsalls) regarding a lower price on X-613 [bears marginalia] | PR 08407 | Depuy Mitek Deposition Exhibit # 349 | 401-403, 802 Third-party hearsay document, lacking foundation, relates to nonsuture products, unrelated to infringement. | |
| **DTEX-1342** | 4/23/1990, S. Wills facsimile to John Jones attaching a table of fibre projections | PR 08408 - 08409 | Depuy Mitek Deposition Exhibit # 350 | 401-403, 802, 901 Document relates to nonsuture products, unrelated to infringement. Document lacks foundation, hearsay. | |
| **DTEX-1343** | 1/4/1990, Pearsalls analysis of Kevin Nash Gama Braid manufactured by Braided International Lines | PR 08410 | Depuy Mitek Deposition Exhibit # 351 | 401-403 802, 901 Document relates to nonsuture products, unrelated to infringement. Document lacks foundation, hearsay. | |
| **DTEX-1344** | 2/19/1990, Stephen Wills internal memo regarding fishing line products, Kryston price list dated 7/23/1990 | PR 08411 - 08413 | Depuy Mitek Deposition Exhibit # 352 | 401-403, 802, 901 Document relates to nonsuture products, unrelated to infringement. Document is hearsay, lacks foundation. | |

41

| TEX # | Description | Bates Range | Previously Used | Objections | In/ Out |
|---|---|---|---|---|---|
| **DTEX-1345** | 7/14/1993, Pearsalls invoices (3) to Kryston for Silkworm, Multistrand, Siuper Silk | PR 08430 – 08432 | Depuy Mitek Deposition Exhibit # 353 | 401-403 Document relates to nonsuture products, unrelated to infringement. | |
| **DTEX-1346** | 4/18/1989, Minutes of meeting with Cyanamid GB Ltd. [redacted] | PR 08392 – 08393 | Depuy Mitek Deposition Exhibit # 354 | 401-403 Document relates to nonsuture products, unrelated to infringement. Arthrex refused to produce the portion of the document "redacted due to relevancy." | |
| **DTEX-1347** | 3/23/1990, copies of pictures from magazines featuring fisherman holding large fishes caught with Kryston fishing line | PR 08414 – 00819 | Depuy Mitek Deposition Exhibit # 355 | 401-403 802 Third-party hearsay document, lacking foundation, relates to nonsuture products, unrelated to infringement. | |
| **DTEX-1348** | Exclusive Manufacturing Agreement between Arthrex and Pearsalls, 5/9/2002 | ARM 001696 – ARM 001698 | | | |
| **DTEX-1349** | Expert Report of Dr. David Brookstein with attached exhibits, 3/3/06 | N/A | | | |

Note:  Defendants reserve the right to amend this list of trial exhibits and to use trial exhibits included on DePuy Mitek's list.  Demonstrative exhibits, summary exhibits, blow-ups and the like will be exchanged by the parties closer to trial.

DSMDB-2286014v01

# EXHIBIT 3

Confidential Deposition of:
Ilya Koyfman

February 22, 2006

Page 1

```
 1
 2              UNITED STATES DISTRICT COURT
 3                DISTRICT OF MASSACHUSETTS
 4                  C.A. No. 04-12457 PBS
 5      ------------------------------x
 6   DePUY MITEK, INC.,
 7        A Massachusetts Corporation,
 8                   Plaintiff,
 9              v.
10   ARTHREX INC.,
11        A Delaware Corporation,
12                   Defendants.
13      ------------------------------x
14
15              * * *CONFIDENTIAL* * *
16           DEPOSITION OF ILYA KOYFMAN
17              Somerset, New Jersey
18              February 22, 2006
19
20   Reported by:
21   MARY F. BOWMAN, RPR, CRR
22   JOB NO.:  SE232
23
24
25
```

TRAVEL TRANSCRIPT

CONFIDENTIAL

Confidential Deposition of:
Ilya Koyfman

February 22, 2006

1          KOYFMAN - Confidential
2    and -- I think markets changed. They had been
3    looking for a product which would be like that.
4        Q.   Excuse me?
5        A.   The market changed. I think it was
6    need for a suture which would withstand
7    arthroscopic use.
8        Q.   At the time you started your work on
9    this project, were you familiar that Arthrex had
10   come up with the Fiber Wire product?
11       A.   Yes.
12       Q.   Was Mitek and Ethicon developing the
13   Orthocord product to try and compete with
14   Arthrex's Fiber Wire product?
15       A.   I think that was part of the need, in
16   order to compete.
17       Q.   At the beginning of the project, was
18   the idea to come out with a product that was just
19   like Arthrex's Fiber Wire product?
20       MR. BONELLA:  Object to form.
21       A.   That was an early discussion too,
22   yeah.
23       Q.   What do you mean that that was a
24   discussion?
25       A.   I mean when you look at market, you

1          KOYFMAN - Confidential
2    look at the needs, what was going on in terms of
3    competition. You see the products and you try to
4    assess which way you want to go.
5        Q.   Are you familiar with what materials
6    are used to make the braid in the Arthrex suture?
7        A.   Yes.
8        Q.   What is it?
9        A.   It is ultra high molecular weight -- I
10   don't know the origin because -- origin of that
11   material. And polyester.
12       Q.   And PET?
13       A.   Um-hm.
14       Q.   Is that a yes?
15       A.   Yes.
16       Q.   And it has a coating on it?
17       A.   Yes.
18       Q.   Was the original idea in the
19   development of Orthocord that it should also be
20   ultra high molecular weight PE and PET with a
21   coating on it?
22       MR. BONELLA:  Object to form.
23       A.   Any suture requires coatings.
24       Q.   What about the other aspects that I
25   mentioned in my question?

1          KOYFMAN - Confidential
2        Let me, just so my question is clear,
3    was it the original idea during the development
4    to develop a suture that was made of ultra high
5    molecular weight PE and PET and then coated?
6        A.   It was, in the concept phase, that was
7    one of our ideas, yeah.
8        Q.   Wasn't that really the idea?
9        MR. BONELLA:  Object to form.
10       A.   The concept was influenced by many,
11   many people. So as I said, it was one of the
12   ideas.
13       Q.   Well, at the beginning, what other
14   ideas were being considered? I am trying to
15   distinguish, so my question is clear, Mr. Koyfman,
16   at the beginning, the original concept as opposed
17   to changes that may have happened later on?
18       A.   What do you mean by beginning?
19       Q.   When the first decision was made as to
20   what kind of product you wanted to have? What the
21   materials would be?
22       A.   The first decision was to use ultra
23   high molecular weight and nonabsorbable material.
24       Q.   Was the nonabsorbable material being
25   PET?

1          KOYFMAN - Confidential
2        A.   As I recall, yes.
3        Q.   Let me show you what has been
4    previously marked as Defendant's Exhibit 14. I
5    ask if you are familiar with that.
6        A.   Um-hm, yes.
7        Q.   Is this a document that you wrote?
8        A.   It looks like.
9        Q.   Do you know why you wrote this
10   document?
11       A.   I think it was used for a presentation
12   in Cornelia, but I'm not sure.
13       Q.   Do you know when approximately you
14   created this document?
15       A.   A couple of years ago probably.
16       Q.   Could you look at the third paragraph,
17   sir. It says, "The agreement was to develop a 'me
18   too suture.' it looked to everyone as a
19   straightforward project. Just find raw material
20   suppliers, (UHMWPE and polyester), use
21   polybutylate coating in piggyback on the Ethibond
22   processing conditions."
23           Is that an accurate description of the
24   original agreement as to what suture to
25   produce?

Premier Litigation Service Bureau, Inc.
Tel: 877-938-6342     Fax: 866-889-3249

KOYFMAN - Confidential

1
2    A.   Yes.
3    Q.   What did you mean when you wrote a "me
4  too suture"?
5    A.   I think it is a marketing expression
6  of a product which may already exist in the
7  market.
8    Q.   And the "me too suture" was referring
9  to what product?
10       Let me rephrase that question.  When
11  you wrote to develop a "me too suture," what
12  was the suture that was being compared to?
13    A.   I think it was compared to the
14  existing product which was already on the market
15  which is Fiber Wire.
16       MR. BONELLA:  Can I just mark the
17    transcript confidential, nonprosecution
18    counsel only since we are getting into the
19    developmental work.
20    Q.   Mr. Koyfman, let me show you what has
21  been marked as Defendant's Exhibit 15 in a
22  previous deposition.  I ask if you recall this
23  document.
24    A.   Yes, I think it looks familiar.
25    Q.   What is it?

KOYFMAN - Confidential

1
2    A.   It was a project update presentation
3  either given at Mitek or given at Ethicon.
4    Q.   Now, when we discussed Defendant's
5  Exhibit 14, the previous exhibit which talked
6  about the original agreement being ultra high
7  molecular weight PE and polyester, that's not the
8  ultimate product -- the ultimate combination
9  that's in Orthocord, correct?
10    A.   Right.
11    Q.   Why was the decision made to change to
12  a different -- what are the two materials that are
13  braided together in Orthocord?
14    A.   It is ultra high molecular weight
15  polyethylene and PDS.
16    Q.   Why was the decision made to not make
17  a braided suture of ultra high molecular weight PE
18  and PET?
19       MR. BONELLA:  Are there any legal
20    reasons why that decision was made?  If your
21    understanding is based on anything, a
22    communication with counsel, that would be
23    privileged information and I instruct you
24    not to answer that.
25       But if there are nonlegal reasons why

KOYFMAN - Confidential

1
2  that are not based on communications with
3  counsel, that decision was made for
4  technical reasons or decisions made by
5  technical people independent of counsel,
6  then you can answer the question.
7    A.   It was a legal reason.
8    Q.   OK.  What was that legal reason?
9       MR. BONELLA:  Can you make that more
10  general?
11       MR. SABER:  I am not -- I don't agree
12  that this is privileged.
13       MR. BONELLA:  OK, well, I instruct you
14  not to answer.  I instruct you not to
15  answer.
16    Q.   Will you answer the question?
17    A.   I was instructed not to answer.
18    Q.   OK.  Let's turn back to Defendant's
19  Exhibit 15.  And I ask if you if you would turn to
20  page 39, Bates number DMI 039507.
21    A.   Page -- which one?
22    Q.   DMI 039507.
23    A.   507.
24    Q.   Do you see that page, sir?
25    A.   Yes.

KOYFMAN - Confidential

1
2    Q.   Do you see this talks about legal/IP
3  landscape?  And this refers to a -- it was
4  referring it a United States Patent 5,318,575.  Do
5  you see that, sir?
6    A.   Yes.
7    Q.   Which, as you will see, is Exhibit 164
8  that we discussed earlier today.
9    A.   I see that.
10    Q.   Is the reason that the idea of ultra
11  high molecular weight PE, together with PET was
12  abandoned because of the possible conflict with
13  the '575 patent?
14       MR. BONELLA:  Again, if there were
15    discussions among technical people and
16    technical people made this decision, then
17    you can answer that question.  But if it is
18    legal, you were instructed for legal
19    reasons, then you shouldn't answer the
20    question.
21       So if there were technical people and
22    technical reasons why, then you should
23    answer the question.  If you need a break to
24    sort it out in your mind and we can talk
25    about it to figure it out to the extent --

# EXHIBIT 4

1                    UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF MASSACHUSETTS

2                      C.A. NO. 04-12457 PBS

3

4

        _____ )

5     DePUY MITEK, INC.,                )

                  Plaintiffs,           )

6                                       )

                  vs.                   )

7                                       )

        ARTHREX, INC., a Delaware       )

8       corporation,                    )

                  Defendants.           )

9       _____ )

10

11

12

13                    DEPOSITION of DePUY MITEK BY NEIL

14     D. WEBER, called as a witness by and on behalf of

15     the Defendant, pursuant to the applicable

16     provisions of the Federal Rules of Civil Procedure,

17     Rule 30 (b) (6), before P. Jodi Ohnemus, Notary

18     Public, Certified Shorthand Reporter, Certified

19     Realtime Reporter, and Registered Merit Reporter,

20     within and for the Commonwealth of Massachusetts,

21     at the Four Points Sheraton Hotel, 1125 Providence

22     Boston Highway, Norwood, Massachusetts, on Tuesday,

23     10 January, 2006, commencing at 9:08 a.m.

1          MS. MALINOSKI:  I'm not instructing him

2     not to answer.  I said he can answer.  I'm just

3     preserving my objection.

4          A.   I was not part of the conversation.

5          Q.   Okay.  Well, what's your understanding as

6     to -- what's DePuy Mitek's understanding as to why

7     the patent was assigned to DePuy Mitek?

8          A.   My understanding of it --

9          MS. MALINOSKI:  You mean Neil Weber's

10    understanding or DePuy Mitek's --

11         MR. SABER:  Well, he's testifying for

12    DePuy Mitek, so I want to know DePuy Mitek's

13    understanding.

14         MS. MALINOSKI:  Okay.

15         A.   My understanding, as Neil Weber

16    representing DePuy Mitek, is that it was assigned

17    to us because the company, Mitek, that had most

18    need or use for the patent was -- deemed it was

19    appropriate for us to take ownership of it.

20         Q.   Why did DePuy Mitek have the most need for

21    the patent?

22         A.   Because -- my understanding is because it

23    applied to -- specifically to a product that we are

24    marketing.

25         Q.   Does it apply to the Orthocord product?

1        A.    Yes.

2        Q.    Does the Orthocord product fall within

3    this patent?

4              MS. MALINOSKI:  I'll object to the extent

5    that's asking him for a legal conclusion that's

6    beyond the scope, and I think, with all due

7    respect, beyond his expertise?

8        A.    I don't know.

9        Q.    Well, I'm trying to understand what you

10   mean when you say that it applied to a product that

11   you have?

12       A.    It applied to a market that we are

13   addressing.

14       Q.    What do you mean by that?

15       A.    I simply mean that it applies to a -- I

16   don't know how I can really clarify that any

17   differently.

18       Q.    Well, I don't understand your answer.  It

19   applies to a market?

20       A.    It's -- it pertains to the marketplace

21   that Mitek serves.

22       Q.    Does the 446 patent cover a high-strength

23   suture?

24              MS. MALINOSKI:  And again, to the extent

25   he can answer, it's beyond the scope and his

1    expertise, but he can answer if he can.

2         A.   I don't know.

3         Q.   Isn't it true that you've received -- that

4    DePuy Mitek received the assignment so it could be

5    the plaintiff to sue Arthrex.

6              MS. MALINOSKI:  And I'll object to that as

7    harassing the witness, and also to the extent it

8    would reveal any communications and beyond the

9    scope of the notice.

10             MR. SABER:  Well, it's right to the heart

11   of the scope of the notice, and it can't be an

12   attorney/client privilege.  I mean, why DePuy Mitek

13   obtained this --

14             MS. MALINOSKI:  Chuck, I'm not instructing

15   him not to answer.  I said he could answer the

16   question.

17        A.   Can you repeat the question.

18             MR. SABER:  Could you read it back.

19             (Question read back.)

20        A.   No.

21        Q.   When DePuy Mitek received the assignment,

22   were they considering suing?  Was a Johnson &

23   Johnson company considering suing Arthrex for a

24   patent infringement under this patent?

25             MS. MALINOSKI:  And I'll object, and I'll

1    launched?

2        A.    No.

3        Q.    Okay.

4        A.    That was what I was trying to convey.

5        Q.    Okay.  Do you know whether it was launched

6    prior to the time that DePuy Mitek launched its

7    Orthocord product?

8        A.    I don't know.

9        Q.    Okay.

10            MS. MALINOSKI:  Just a belated objection

11    to the question to the extent it's calling for

12    dates for the various competitors.  I think that is

13    beyond the scope of this notice.

14            MR. SABER:  I disagree, but that's okay.

15        Q.    Isn't it correct that prior to the launch

16    of Orthocord DePuy Mitek was the only sports

17    medicine company that didn't have a high-strength

18    suture?

19        A.    I'm not sure if we were the only one, but

20    I know that several other what we refer to as

21    sports medicine companies did have them.

22        Q.    Isn't it true that DePuy Mitek considered

23    it an urgent need to have a high-strength suture

24    because they were the only sports medicine company

25    without a high-strength suture?

1          MS. MALINOSKI:  Objection.  Lack of

2     foundation.  Assumes facts not in evidence.

3     A.   As I just said, I don't know if we were

4     the only one or not.  But I do know we felt it was

5     a priority of ours to have one.

6     Q.   And why was it a priority?

7     A.   We felt it was a priority to be properly

8     addressing the customers' needs in the marketplace.

9          (DMI039647-683 marked D-54.)

10    Q.   Let me show you what's been marked as

11    Defendant's Exhibit 54 and ask if you're familiar

12    with that.

13    A.   Yes, I've seen the document before.

14    Q.   Okay.  What is it?

15    A.   It appears to be a presentation for a --

16    what's referred to as a design review, which is

17    basically a development milestone during which the

18    development team reviews status with management.

19    Q.   Could you turn to -- who reviews with

20    management, did you say, the development team?

21    A.   Yes.

22    Q.   And was the development team for this

23    product a combination of Ethicon and DePuy Mitek

24    people?

25    A.   The answer is -- I was not part of the

1    team, but if I refer to Page 2, "project team"

2    consists of Mitek and Ethicon team members.  So,

3    the answer is yes.

4        Q.   Am I correct that Shelby Cook was the head

5    of the team on the Mitek side?

6            MS. MALINOSKI:  Objection.  Assumes facts

7    not in evidence.

8        A.   I don't know.  It appears that way, but --

9        Q.   Could you turn to Page DMI039672.

10       A.   Yes.

11       Q.   Do you see the third point under the first

12   bullet?  It says, "Urgent need -- only sports

13   medicine company without high-strength suture"?

14       A.   Yes.

15       Q.   Does that refresh your recollection that

16   DePuy Mitek felt that they had an urgent need for a

17   high-strength suture because they were the only

18   sports medicine company without a high-strength

19   suture?

20           MS. MALINOSKI:  Objection.  Vague as to

21   time.

22       Q.   As of April 2004.

23       A.   My answer to that question is I understand

24   what the bullet means, but whether the bullet is

25   accurate or not, I can't speak to.  It was clearly

89

1    deemed an urgent need, so that part of the

2    statement I absolutely agree with.  Whether or not

3    we were truly the only sports medicine company with

4    or without, I don't know.

5        Q.    But was that -- is it true that that was

6    the rationale, that they believed that they were

7    the only company left that didn't have a -- only

8    sports medicine company left that didn't have a

9    high-strength suture and that's why they had an

10   urgent need?

11       A.    Can you --

12       Q.    That's what -- is it correct that that was

13   DePuy Mitek's belief at that time in April of 2004?

14       A.    As I said before, I think Mitek's belief

15   was, to properly address the marketplace, we needed

16   a high-strength suture.

17       Q.    But was it Mitek's belief in April of 2004

18   that the reason they had this urgent need was

19   because they believed they were the only sports

20   medicine company without a high-strength suture?

21           MS. MALINOSKI:  Object as beyond the

22   scope.

23       A.    I don't know.

24       Q.    Do you have any reason to doubt that line,

25   "Urgent need -- only sports medicine company

# EXHIBIT 5

**11/15/2005  Cook, Shelby**

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF MASSACHUSETTS

3                    C.A. No. 04-12457 PBS

4        *   *   *   *   *   *   *   *   *   *   *   *   *   *

5      DePUY MITEK, INC.,                        *

6                    Plaintiff                   *

7      v.                                        *

8      ARTHREX, INC., a Delaware                 *

9      corporation,                              *

10                   Defendant                   *

11       *   *   *   *   *   *   *   *   *   *   *   *   *   *

12                        VOLUME I

13                      PAGES 1-245

14

15            DEPOSITION OF DePUY MITEK, INC. by

16     SHELBY COOK KORNBLUTH, a witness called on

17     behalf of the Defendant, pursuant to the

18     Federal Rules of Civil Procedure, before

19     Jessica L. Williamson, Registered Merit

20     Reporter, Certified Realtime Reporter and

21     Notary Public in and for the Commonwealth of

22     Massachusetts, at the Hilton Hotel, 25

23     Allied Drive, Dedham, Massachusetts, on

24     Tuesday, November 15, 2005, commencing at

25     9:01 a.m.

1

**11/15/2005  Cook, Shelby**

| | | |
|---|---|---|
| 1 | | be a little different, but as far as form |
| 2 | | goes? |
| 3 | A. | The form changes every year, 18 months, |
| 4 | | depending on what management wants to see. |
| 5 | Q. | In this project do you remember how many |
| 6 | | different forms there were? |
| 7 | A. | Probably three.  That's my best guess. |
| 8 | Q. | How many were in forms that were like |
| 9 | | Defendant's Exhibit 9? |
| 10 | A. | The majority. |
| 11 | Q. | And the ones that were different, were those |
| 12 | | your earlier ones? |
| 13 | A. | Yes. |
| 14 | Q. | Could you turn to the last page of the |
| 15 | | document, please. |
| 16 | A. | Uh-huh. |
| 17 | Q. | Is this an accurate -- or what was this last |
| 18 | | page, which is Bates Nos. 39244? |
| 19 | A. | Project team. |
| 20 | Q. | And what is the Orthocord project team? |
| 21 | A. | It's a group of individuals that touch |
| 22 | | the -- that have any responsibilities for |
| 23 | | the project, even down to the most minute |
| 24 | | detail. |
| 25 | Q. | I see, it says there's a Mitek team and an |

**11/15/2005  Cook, Shelby**

```
 1        Ethicon team.  Why were there teams from
 2        both entities?
 3   A.   We subcontracted Ethicon to manufacture the
 4        suture for us.
 5   Q.   Did Ethicon have any role in the Orthocord
 6        project other than manufacturing the suture?
 7   A.   They provided consultation for some
 8        development -- of the development aspects.
 9   Q.   Could you be a little more specific on that?
10   A.   They provided recommendations on the suture,
11        and Mitek took those recommendations
12        weighted against the test results, as well
13        as surgeon feedback, and determined the
14        suture that we went to market with.
15   Q.   Do you recall who in particular from the
16        Ethicon team made the recommendations on the
17        suture?
18   A.   There were several --
19             MR. FALKE:  Objection, outside the
20        scope of the notice, but you can answer if
21        you know.
22   A.   Several people.
23   Q.   Who do you recall?
24   A.   Mark Mooney had some recommendations, Ilya
25        Koyfman and John Karl had some
```

```
 1          can answer.
 2     A.   The only polyethylene available to make
 3          high-strength suture is ultra high molecular
 4          weight polyethylene.  That is the only
 5          material available in polyethylene.
 6     Q.   To make a high-strength suture?
 7     A.   To make suture, period.
 8     Q.   You wouldn't use polyethylene to make suture
 9          other than ultra high molecular weight
10          polyethylene?
11               MR. FALKE:  Outside the scope.  Go
12          ahead.
13     A.   No.  It's not available.  You cannot get
14          polyethylene fiber in any other form than
15          ultra high molecular weight polyethylene.
16     Q.   Could you use any other kind of polyethylene
17          to make a high-strength suture?
18               MR. FALKE:  Outside the scope.
19     A.   No.
20     Q.   Is Orthocord a high-strength suture?
21     A.   Yes.
22     Q.   Prior to offering Orthocord, did DePuy Mitek
23          have a high-strength suture for any of its
24          products?
25     A.   No.
```

**11/15/2005  Cook, Shelby**

1   Q.   Ethibond is not considered a high-strength
2        suture?
3   A.   No.
4   Q.   Panacryl's not considered a high-strength
5        suture?
6   A.   No.
7   Q.   Okay.  Who was the first company to sell a
8        high-strength suture?
9               MR. FALKE:  Objection, outside the
10       scope of the notice.  You can answer if you
11       know.
12  A.   I believe it was Arthrex.
13  Q.   And that was the Fiberwire product?
14  A.   Yes.
15  Q.   Isn't it correct that DePuy Mitek wanted to
16       develop a high-strength suture to compete
17       with Fiberwire?
18              MR. FALKE:  Objection, outside the
19       scope of the notice.
20  A.   Yes.
21  Q.   Is it also true that DePuy Mitek considered
22       that they were losing their competitive edge
23       in the marketplace if they did not develop a
24       high-strength suture?
25              MR. FALKE:  Objection, outside the

**11/15/2005  Cook, Shelby**

1       scope of the notice.

2   A.   Yes.

3   Q.   And is it true that DePuy Mitek considered

4        Fiberwire to be a potentially significant

5        threat?

6               MR. FALKE:  Objection, outside the

7        scope of the notice.

8   A.   Yes.

9   Q.   And is it correct that DePuy Mitek believed

10       that it couldn't meet its marketing

11       objectives without developing a high-

12       strength suture?

13              MR. FALKE:  Objection, outside the

14       scope of the notice.

15  A.   Yes.

16  Q.   In the original plans to develop a high-

17       strength suture, is it correct that they

18       wanted to mimic Fiberwire, that DePuy Mitek

19       wanted to mimic FiberWire?

20              MR. FALKE:  Outside, outside the

21       scope of the notice, object to the form.

22       Chuck, this is Topic 11.  She's not here to

23       talk about this.  These are clearly Topic 11

24       questions.  You can answer if you know.

25              MR. SABER:  Well, I mean she was

11/15/2005  Cook, Shelby

```
 1          the one that was in charge of this product.
 2                    MR. FALKE:  Doesn't matter.  We're
 3          not here to talk about Topic 11.
 4                    MR. SABER:  Fine.  She can answer
 5          the question.
 6                    MR. FALKE:  If she knows.
 7                    MR. SABER:  Could you read back the
 8          question.  I know with the colloquy I'm sure
 9          you lost the question.
10               (Record read.)
11                    MR. FALKE:  Objection, outside the
12          scope of the notice.  Objection, vague.  You
13          can answer if you know.
14     A.   That was a potential option.
15     Q.   And is it true that the product that you
16          wanted to develop in the early stages was
17          considered a "me too" suture to Fiberwire?
18                    MR. FALKE:  Objection, vague.
19          Vague as to the "me too."  Objection,
20          outside the scope of the notice.  You can
21          answer if you know.
22     A.   I wasn't -- I wasn't involved in the first
23          few months of the project.  I took it over.
24     Q.   Who was involved in the beginning?
25     A.   Jonathan Howe.
```

# EXHIBIT 6

1

2              UNITED STATES DISTRICT COURT

3                DISTRICT OF MASSACHUSETTS

4                 C.A. No. 04-12457 PBS

5     ------------------------------x     **TRAVEL TRANSCRIPT**

6     DePUY MITEK, INC.,

7          a Massachusetts corporation,

8                    Plaintiffs,

9              v.

10    ARTHREX, INC.

11         a Delaware Corporation,

12

13                   Defendant.

14    ------------------------------x

15

16          DEPOSITION OF HAL BRENT WOODROW

17             New Brunswick, New Jersey

18                 November 2, 2005

19

20    Reported by:

21    MARY F. BOWMAN, RPR, CRR

22    JOB NO. 97

23

24

25

Deposition of:
Hal Brent Woodrow

November 2, 2005

---

**Page 82**

WOODROW

1
2    Q.   Polypropylene is another material
3 listed on the lubricious side, right?
4    A.   Yes, yes.  And I think those of
5 ordinary skill in the art reading this
6 specification would be able to determine which of
7 the lubriciously listed polymers would tend to add
8 strength to the material, to the ultimate braided
9 construction as well as adding the lubricious
10 characteristics.
11    Q.   Does the patent application itself
12 teach a person of ordinary skill in the art --
13    A.   Those of ordinary skill in the art are
14 assumed to know this situation.
15    Q.   So was there a need at all to disclose
16 any of these materials?
17       MS. MALINOSKI:  Objection, vague.
18    A.   Yeah.  Could you restate the question.
19    Q.   Why were certain materials listed if a
20 person of ordinary skill in the art wouldn't even
21 need them?
22       MS. MALINOSKI:  Objection,
23 argumentative.
24    A.   The preferred materials having
25 lubricious properties were listed.

---

**Page 83**

WOODROW

1
2    Q.   Do you know whether Ethicon knew of
3 the existence of Spectra in 1992?
4    A.   I don't know.
5    Q.   Do you know when Spectra came out?  Do
6 you know if it was around in 1992?
7    A.   I don't remember the date that it came
8 out.  It was around the same time period though.
9 Actually, I believe it was before this.
10    Q.   What makes you say that?
11    A.   I remember seeing it at Phillips
12 Petroleum and I left there in '91.
13    Q.   Was it used for at Phillips Petroleum?
14    A.   It was a demonstration.  It wasn't
15 used for anything.
16    Q.   Do you know whether Ethicon believed
17 Spectra could be used in sutures in 1992?
18       MS. MALINOSKI:  Asked and answered.
19    A.   It is a polyethylene polymer.  It has
20 been a -- it has been identified as an appropriate
21 material for this application.
22    Q.   Is that a yes or a no?
23    A.   That's a yes.
24    Q.   So you are changing your answer
25 earlier?

---

**Page 84**

WOODROW

1
2       MS. MALINOSKI:  Objection,
3 argumentative, mischaracterizes his
4 testimony.
5    Q.   I asked you earlier if you knew
6 whether Ethicon knew of the existence in 1992 and
7 you said you didn't know.  Are you changing your
8 answer now?
9    A.   Your second question was -- --
10       MS. MALINOSKI:  The second question,
11 do you know whether Ethicon believed Spectra
12 could be used in sutures in 1992.
13    Q.   Right.  So if you didn't know whether
14 Ethicon knew it existed in 1992, how could they
15 know anything about its use in sutures in 1992?
16    A.   I thought I heard, do you know whether
17 Ethicon believed Spectra could be used in sutures,
18 I didn't hear the "1992" aspect of it.
19    Q.   What's your answer with the 1992
20 aspect?
21    A.   I'm not 100 percent certain on that
22 issue as to the internal knowledge of Ethicon in
23 1992 vis-a-vis Spectra.
24    Q.   OK.  Do you have any knowledge of when
25 Ethicon first heard of Spectra?

---

**Page 85**

WOODROW

1
2    A.   I think that goes beyond the scope of
3 the 30(b)(6).
4       MS. MALINOSKI:  Objection, beyond the
5 scope of the notice.
6    Q.   I appreciate that, counselor.  But do
7 you know?
8       MS. MALINOSKI:  If you know, you can
9 answer.
10    A.   I can't say for sure.
11    Q.   Mr. Woodrow, could you turn to the
12 page that's labeled -- it would be in Exhibit 3,
13 the one that is labeled part 2 of 2.  And it would
14 be the page that is labeled 186 on the bottom, DMI
15 186, third page in.  Do you see that it looks like
16 an office action dated July 8, 1992?
17    A.   Yes, I see the office action.
18    Q.   And it is labeled 186 on the bottom,
19 right?
20    A.   Yes.
21    Q.   Did you review this office action in
22 1992?
23    A.   Are you deposing me or deposing the
24 company?
25    Q.   You are the one that worked on it,

---

22 (Pages 82 to 85)

Deposition of:
Hal Brent Woodrow

November 2, 2005

Page 86

WOODROW

1
2  right?
3      A.  No, the '92?  No.  Let me check.  Oh,
4  yes.  OK.
5          MS. MALINOSKI:  Are you asking him as
6  a 30(b)(6) or as Mr. Woodrow?
7      Q.  Did Ethicon review this office action
8  in 1992?
9      A.  Ethicon had its attorneys review this
10  office action in 1992.
11      Q.  Were you the attorney?
12      A.  Yes, I was the attorney who reviewed
13  the office action.
14      Q.  Was there anyone else who reviewed the
15  office action?
16      A.  No.
17      Q.  Did Ethicon prepare a response to the
18  office action?
19      A.  Yes.
20          MS. MALINOSKI:  Can we go off the
21  record for a second.
22          (Pause)
23      A.  The July 8, 1992 office action is --
24  the next paper in, it is out of order, it is a
25  1994 response.  I did not, Hal Woodrow did not

Page 87

WOODROW

1
2  respond to that 1992 office action.  Matthew
3  Goodwin did.
4      Q.  But Ethicon responded to the office
5  action?
6      A.  Yes.
7      Q.  OK.  And can you turn to the document
8  that's labeled DMI 194?
9      A.  Yes.
10      Q.  Is that the response that Ethicon
11  prepared to the office action?
12      A.  It says it is responsive, yes.
13      Q.  It is entitled "amendment," but I
14  don't see any claims amended here.  Do you?
15      A.  No, there is no -- there is an
16  election of species, comments about claims, but
17  there are no amendments to the claims that I see.
18      Q.  That might just be a mislabeling then?
19      A.  Yes, it is probably more a response
20  than an amendment.
21      Q.  Do you see on page 187, there is a
22  restriction requirement?
23      A.  Of the office action of the patent
24  office.
25      Q.  The page labeled 187, this is part of

Page 88

WOODROW

1
2  the office action?
3      A.  Yes.
4      Q.  So you see there is a restriction
5  requirement?
6      A.  Yes.
7      Q.  There has been a distinction made by
8  the office as to claims 1 through 20 which are
9  drawn to a heterogeneous braid and claims 21
10  through 24 drawn to a surgical suture, do you see
11  that?
12      A.  Yes, I see that.
13      Q.  What did Ethicon do in response to
14  that restriction?
15      A.  In the paper filed by Matt Goodwin on
16  August 6, 1992, Ethicon elected to pursue
17  prosecuting claims 21 through 24.
18      Q.  OK.  I think there was actually a
19  provisional election made, too, on page 188.
20  There is a reference from the examiner to a
21  telephone call with Matthew Goodwin.  Do you see
22  that?
23      A.  Yes, there was a telephone election on
24  June 23.
25      Q.  So Mr. Goodwin elected claims 21

Page 89

WOODROW

1
2  through 24, is that right?
3      A.  Yes.
4      Q.  21 through 24 were directed to a
5  surgical suture, correct?
6      A.  Yes.
7      Q.  Do you know if a divisional was ever
8  filed by Ethicon?
9          MS. MALINOSKI:  Objection, vague.
10      Q.  Do you know if a divisional from this
11  application was ever filed?
12          MS. MALINOSKI:  I thought you said
13  provisional.
14          MR. TAMBURO:  Divisional.  I was
15  wondering what the look was.
16          MS. MALINOSKI:  That's why I gave you
17  that look.  OK.
18      A.  Your question is whether a divisional
19  was claimed for files 1 through 20?
20      Q.  Yes, the nonelected claims, yes.
21      A.  It is not part of the prosecution
22  history of this file, so I have not reviewed that.
23      Q.  You don't know?
24      A.  I don't know.
25      Q.  Do you know whether any continuations

23 (Pages 86 to 89)

# EXHIBIT 7

Page 1

1

2          UNITED STATES DISTRICT COURT

3             DISTRICT OF MASSACHUSETTS

4               C.A. No. 04-12457 PBS

5    -----------------------------x          **TRAVEL**

6    DePUY MITEK, INC.,                      **TRANSCRIPT**

7         A Massachusetts Corporation,

8                   Plaintiff,

9              v.

10   ARTHREX INC.,

11        A Delaware Corporation,

12                 Defendants.

13   -----------------------------x

14

15

16          DEPOSITION OF MATTHEW GOODWIN

17            New Brunswick, New Jersey

18               January 17, 2006

19

20   Reported by:

21   MARY F. BOWMAN, RPR, CRR

22   JOB NO.:   SE 173

23

24

25

Deposition of:
Matthew Goodwin

January 17, 2006

Page 154

1            GOODWIN
2  payment of patent bonuses for patent applications
3  which were assigned to Ethicon.
4      Q.   Is that his primary role?
5      A.   I don't know what his primary role
6  was.
7      Q.   Was he a medical doctor?
8      A.   I don't know what his formal
9  background was.
10     Q.   I am going to hand you what has been
11 previously marked Defendant's Exhibit 5. Let me
12 ask you to take a look at that. Do you know what
13 this is, Mr. Goodwin?
14     A.   This is an assignment where Ethicon is
15 assigning the '446 patent and its counterparts to
16 DePuy Mitek.
17     Q.   Do you know if there are any
18 counterparties?
19     A.   I do not know.
20     Q.   On page 2 of the exhibit, is that your
21 signature for Ethicon Inc.?
22     A.   Yes, it is.
23     Q.   Why did Ethicon assign the patent to
24 DePuy Mitek?
25          MS. MALINOSKI: I will instruct you

Page 155

1            GOODWIN
2  not to answer to the extent it would reveal
3  any work product or any attorney/client
4  privileged information. If you can answer
5  factually, you can answer.
6      A.   The assignment was for the purpose of
7  assigning the patent to the principal party in
8  interest which in this case is DePuy Mitek.
9      Q.   What does a principal party of
10 interest mean?
11     A.   It is the party that is most affected
12 in connection with the infringement of the '446
13 patent.
14     Q.   What do you mean by most connected?
15     A.   Most affected.
16     Q.   I am sorry, what do you mean by most
17 affected?
18     A.   It is the party that is being damaged
19 in connection with the infringement of the '446
20 patent as a result of Arthrex's continued sale of
21 infringing sutures.
22     Q.   How was DePuy Mitek any more damaged
23 than Ethicon?
24     A.   DePuy Mitek is the business unit of
25 Johnson & Johnson which manufactures, develops and

Page 156

1            GOODWIN
2  markets suture anchors. It is my understanding
3  that the infringing suture is used in connection
4  with suture anchors that are manufactured and sold
5  by Arthrex.
6      Q.   Do you know why the '446 patent was
7  assigned in August of 2004, why that particular
8  time frame was chosen?
9      A.   I don't recollect why it was assigned
10 on that particular date or time frame.
11     Q.   Do you know what consideration was
12 received?
13     A.   No, I do not.
14     Q.   Yet you signed the document, you don't
15 know what consideration was received?
16     A.   That's correct.
17     Q.   Who is Lawrence Rickels?
18     A.   Lawrence Rickels is an attorney who is
19 employed in the Johnson & Johnson law department.
20     Q.   Do you know why Lawrence Rickels is
21 signing on behalf of DePuy Mitek Inc.?
22     A.   Presumably because he is an assistant
23 secretary of DePuy Mitek.
24     Q.   Do you know if Ethicon has assigned
25 any other patents to DePuy Mitek?

Page 157

1            GOODWIN
2      A.   No, I do not know.
3      Q.   Do you know whose idea it was to
4  transfer the '446 patent from Ethicon to DePuy
5  Mitek?
6          MS. MALINOSKI: Assumes facts not in
7  evidence, vague.
8      A.   I don't think it was one individual's
9  idea.
10     Q.   Do you know who was involved with the
11 decision?
12     A.   Counsel was involved in the decision
13 to assign the patent.
14     Q.   Did that include yourself and
15 Mr. Rickels?
16     A.   It would have included myself. I
17 don't believe it would have included Mr. Rickels
18 in particular.
19     Q.   Do you recall any other individuals
20 besides yourself that were involved in the
21 decision to transfer the '446 patent from Ethicon
22 and DePuy Mitek?
23     A.   Counsel for Woodcock Washburn, as well
24 as Richard Skula who was a colleague of mine and
25 who works in my group.

40 (Pages 154 to 157)