**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **DePuy Mitek, Inc.** ) | |
|    **a Massachusetts Corporation** ) | |
| ) | |
|       **Plaintiff,** ) | |
| ) | |
|       **v.** ) | **Civil No. 04-12457 PBS** |
| ) | |
| **Arthrex, Inc.** ) | |
|    **a Delaware Corporation and** ) | |
| ) | |
| **Pearsalls Ltd.** ) | |
|    **a Private Limited Company** ) | |
|    **of the United Kingdom** ) | |
| ) | |
|       **Defendants.** ) | |
| ) | |
| ) | |

**PROPOSED JOINT JURY INSTRUCTIONS ON THE INFRINGEMENT ISSUES**

**[SUBMITTED JULY 13, 2007]**

NOTE: THIS SET OF JURY INSTRUCTIONS IS PRELIMINARY IN NATURE AND THE PARTIES RESERVE THEIR RIGHTS TO MODIFY THESE INSTRUCTIONS AND/OR TO PROPOSE ADDITIONAL INSTRUCTIONS

THE PARTIES HAVE AGREED TO A MAJORITY OF THE INSTRUCTIONS. WHERE THERE IS A DISAGREEMENT ABOUT AN ENTIRE INSTRUCTION, THAT IS NOTED AND SEPARATE INSTRUCTIONS ARE PROVIDED IN COLORED TEXT, COMMENTS ARE INCLUDED. MITEK IN BLUE AND THE DEFENDANTS IN GREEN .

IF THERE IS A DISAGREEMENT ABOUT A PARTICULAR PORTION OF AN INSTRUCTION THAT IS ALSO NOTED IN DIFFERENT COLORED TEXT AND UNDERLINED, COMMENTS ARE INCLUDED. BLUE IS USED FOR MITEK AND GREEN IS USED FOR THE DEFENDANTS.

THE PARTIES ALSO RESERVE THE RIGHT TO MAKE ADDITIONAL OBJECTIONS TO THESE INSTRUCTIONS, INCLUDING OBJECTIONS DEPENDING ON THE EVIDENCE THAT IS INTRODUCED AT TRIAL.

NOTE: DUE TO COMPETING PROPOSALS FOR CERTAIN INSTRUCTIONS THERE ARE FORMATTING ISSUES WITH THE TABLE OF CONTENTS PROVIDED.

## Table of Contents

1.      General Instructions ........................................................................................ 5

1.1     Introduction ................................................................................................... 5

1.2     The Nature of the Action and the Parties ..................................................... 6

1.2.1   The Action ...................................................................................................... 6

1.2.2   General Patent Instructions ........................................................................... 7

MITEK PROPOSES THE FOLLOWING GENERAL INSTRUCTION ABOUT
THE PATENT SYSTEM AND THE GLOSSARY THAT FOLLOWS.
DEFENDANTS DISAGREE AND BELIEVE THAT THIS DESCRIPTION AND
GLOSSARY IS CONFUSING BECAUSE IT DISCUSSES MANY ISSUES AND
TERMS THAT ARE NOT RELEVANT TO THIS CASE AND IS DUPLICATIVE
OF THE PREVIOUS INSTRUCTION. ............................................................... 8

1.2.3   The United States Patent System ................................................................... 8

1.2.4   The Significance Of Patent Claims .............................................................. 10

1.2.5   Patent Litigation .......................................................................................... 11

The parties have proposed separate instructions for direct infringement ..................................... 12

MITEK'S PROPOSED INSTRUCTION FOR DIRECT INFRINGEMENT ............................. 12

1.3.1   Direct Infringement ...................................................................................... 12

DEFENDANTS' PROPOSED INSTRUCTION FOR DIRECT INFRINGEMENT ................... 14

1.3.1   Direct Infringement ...................................................................................... 14

1.5     Trial Procedure ............................................................................................ 16

2.      Pre-Deliberation Instructions ..................................................................... 18

2.1     General Instructions ..................................................................................... 18

2.1.1   Role of the Court .......................................................................................... 18

2.1.2   Role of the Jury ............................................................................................ 19

2.1.3   Juror Oath .................................................................................................... 21

2.1.4   Jury To Disregard Court's View .................................................................. 22

2.1.5   What Is and Is Not Evidence ........................................................................ 23

2.1.6    Direct and Circumstantial Evidence................................................................24

2.1.7    Judicial Notice................................................................................................25

2.1.8    Stipulation of Facts .......................................................................................26

2.1.9    Stipulation of Testimony................................................................................27

2.1.10   Summaries and Charts Admitted As Evidence .................................................28

2.1.11   Summaries and Charts Not Admitted As Evidence ..........................................29

MITEK PROPOSES THE FOLLOWING INSTRUCTION. DEFENDANTS
DISAGREE ...................................................................................................................30

2.1.12   Interrogatories ...............................................................................................30

2.1.13   Depositions....................................................................................................31

2.1.16   Witness Credibility........................................................................................32

2.1.17   Bias...............................................................................................................33

2.1.18   Interest in Outcome ........................................................................................34

2.1.19   Discrepancies In Testimony ...........................................................................35

2.1.20   Impeachment By Prior Inconsistent Statements ..............................................36

2.1.21   Expert Witnesses – Generally ........................................................................37

2.1.22   Conflicting Expert Testimony.........................................................................38

2.2      The Parties And Their Contentions..................................................................39

2.2.1    Mitek's Contentions ......................................................................................40

2.2.2    Arthrex's and Pearsalls' Contentions.............................................................41

2.2.3    Burden of Proof.............................................................................................42

2.3.     Claim Construction and Infringement..............................................................43

2.3.1    Construction Of The Claims ...........................................................................44

2.3.2    Independent And Dependent Claims ...............................................................46

THE PARTIES HAVE PROPOSED DIFFERENT INFRINGEMENT
INSTRUCTIONS AND THEY ARE SET FORTH SEPARATELY IN THE
PAGES THAT FOLLOW. ............................................................................................47

MITEK'S PROPOSED INSTRUCTIONS ................................................................................. 48

DEFENDANTS' DISAGREE TO MITEK'S PROPOSED INSTRUCTIONS
BECAUSE IT OMITS IMPORTANT INFORMATION NECESSARY FOR THE
JURY TO UNDERSTAND HOW IT SHOULD APPLY THE LAW OF THE
"CONSISTING ESSENTIALLY OF" TEST AND ALSO TO BETTER FRAME
THE ISSUES FOR THE JURY ...................................................................................... 48

2.3.3    "Consisting Essentially of" Claims ................................................................... 49

2.3.4    Direct Patent Infringement: Knowledge of Patent or Intent to Infringe is
Immaterial ........................................................................................................... 50

2.3.5    Direct Patent Infringement .................................................................................. 51

DEFENDANTS' PROPOSED INSTRUCTIONS ..................................................................... 52

MITEK DISAGREES WITH DEFENDANTS' PROPOSED JURY
INSTRUCTIONS BECAUSE THEY ARE ARGUMENTATIVE, IN PART, AND
ATTEMPT TO SUGGEST FACTS TO THE JURY. .................................................. 52

MITEK FURTHER OBJECTS TO THE INSTRUCTIONS RELATING TO
TIPPING AND REVERSE DOCTRINE OF EQUIVALENTS BECAUSE PER
THE COURT'S INDICATION AT THE JUNE 19, 2007 HEARING, THOSE
MATTERS ARE NOT PART OF THE CASE OR ARE NOT EXPECTED TO BE
PART OF THE CASE TO BE TRIED. ....................................................................... 52

DEFENDANTS BELIEVE THAT THE INSTRUCTIONS RELATING TO
TIPPING AND REVERSE DOCTRINE OF EQUIVALENTS ARE
APPROPRATE BECAUSE THE ISSUES REMAIN IN THE CASE. ...................... 52

2.3.3    Direct Patent Infringement .................................................................................. 53

2.3.6.   Materially Affecting Basic and Novel Properties of the Invention.................... 55

2.3.7    Non-Infringement --Tipping Materially Affects the Basic and Novel
Properties of the Invention ..................................................................................... 56

2.3.8    Direct Patent Infringement: Knowledge of Patent or Intent to Infringe is
Immaterial ........................................................................................................... 57

DEFENDANTS BELIEVE THAT THIS INSTRUCTION SHOULD ONLY BE
GIVEN ONCE. ........................................................................................................ 57

2.3.9    Non-Infringement: Reverse Doctrine of Equivalents.......................................... 58

2.3.10  Indirect Infringement -- Generally ..................................................................... 59

3.1      Introduction ......................................................................................................... 61

3.2     Unanimous Verdict ........................................................................................................ 62

3.3     Duty to Deliberate ........................................................................................................ 63

3.4     Court Has No Opinion ................................................................................................... 64

**1. General Instructions**

**(To be read before Opening Arguments)**

**1.1     Introduction**

Members of the jury, now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

**1.2    The Nature of the Action and the Parties**

**1.2.1    The Action**

This is a patent case.  The patent involved in this case relates to sutures that are used in various surgical procedures.  These are threads or strands of material that are used surgically to close a wound or join tissues.  During the trial, the parties will offer you testimony to familiarize you with this technology.  [MITEK PROPOSES TO ADD THE FOLLOWING SENTENCE. DEFENDANTS DISAGREE.] For your convenience, we will distribute a glossary of technical terms to which the parties may refer during trial.

The specific patent asserted in this action is United States Patent No. 5,314,446 or the '446 patent for short hand.  The United States Patent and Trademark Office granted this patent on May 24, 1994. Its inventors are Alastair Hunter, Arthur Taylor, and Mark Steckel.  Throughout this action, the parties and I may also refer to the 446 patent as the Hunter 446 Patent.

The parties to this action are the Plaintiff, DePuy Mitek, Inc. and the Defendants, Arthrex, Inc., and Pearsalls, Ltd.  DePuy Mitek is the plaintiff, and Arthrex and Pearsalls are the defendants.  At times, I may refer to the Plaintiff as DePuy Mitek or "Mitek." Mitek and Arthrex compete in making and selling surgical suture products. [DEFENDANTS PROPOSE THIS SENTENCE. DEFENDANTS BELIEVE THAT PEARSALLS SHOULD ALSO BE IDENTIFIED AND THAT THIS SENTENCE ACCURATELY DESCRIBES PEARSALLS' ACTIVITIES.]Pearsalls is a manufacturer that braids various products and is involved in braiding products for Arthrex. [MITEK DISAGREES WITH THE USE OF THE TERM "BRAIDS" IN THE PREVIOUS SENTENCE BECAUSE USE OF THIS TERM FOR PEARSALLS' PRODUCT ATTEMPTS TO INFLUENCE THE CONTRIBUTORY INFRINGEMENT ANALYSIS. FURTHER, PEARSALLS' WITNESSES AND DOCUMENTS REFER TO THE PRODUCT AS A SUTURE, UNSTERILIZED SUTURE, FIBERWIRE POLYESTER SUTURE MATERIAL, SURGICAL SUTURES, OR BULK SUTURE.].  DePuy Mitek brought this action claiming that Arthrex's FiberWire products infringe upon the Hunter 446 Patent.  Defendants deny Mitek's contentions that they infringe the Hunter 446 Patent.

Before I briefly describe each parties' contentions, I will explain the parts of a patent and the United States patent system.

Federal Circuit Bar Association Model Patent Jury Instruction 2.1

**1.2.2    General Patent Instructions**

A patent includes two basic parts, a written description of the invention and the patent claims.  The written description, which may include drawings, is often referred to as the "specification" of the patent.

You have been provided with a copy of the Hunter 446 Patent.  Please refer to the patent as I identify its different sections.

The cover page of the Hunter 446 Patent provides identifying information, including the date the patent issued and patent number along the top, as well as the inventors' names, the filing date, the assignee, and a list of the prior art publications considered by the Patent Office when the patent was examined.

The specification of  the Hunter 446 Patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the invention.

On the next three pages are the drawings, which appear as Figures 1 to 3.  The drawings depict various aspects or features of the invention and data.  The figures are described in words later in the patent specification. The written description of the invention appears next.  In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page.

The lines on each page are also numbered.  The written description of the Hunter 446 Patent begins at column 1, line 1, and continues to column 8, line 61.  It includes a background section, a summary of the invention, a brief description of the drawings, and a detailed description of the invention.

The specification ends with numbered paragraphs.  These are called the claims.  The claims are divided into a number of parts, referred to as "claim limitations."  In the Hunter 446 Patent, the claims begin at column 8, line 63 and continue to the end of the patent, at column 10, line 19.  The particular claims that Mitek has asserted against the Defendants are claims 1, 2, 8, 9, and 12.

Now that I have described the basic parts of a patent, I will now provide you with an overview of the patent system.

Federal Circuit Bar Association Model Patent Jury Instruction 2.3.

MITEK PROPOSES THE FOLLOWING GENERAL INSTRUCTION ABOUT
THE PATENT SYSTEM AND THE GLOSSARY THAT FOLLOWS.
DEFENDANTS DISAGREE AND BELIEVE THAT THIS DESCRIPTION AND
GLOSSARY IS CONFUSING BECAUSE IT DISCUSSES MANY ISSUES AND
TERMS THAT ARE NOT RELEVANT TO THIS CASE AND IS DUPLICATIVE
OF THE PREVIOUS INSTRUCTION.

### 1.2.3    The United States Patent System

A valid United States patent gives its owner the right to exclude others from
practicing the patented invention, and making, using, offering to sell, or selling the
patented invention within the United States, its territories, and its possessions.  During the
trial, the parties will offer testimony to familiarize you with how one obtains a patent from
the United States Patent and Trademark Office (sometimes referred to as "the PTO"), as
well as with the contents of a patent, including the specification or written description and
the claims by which the applicant defines the subject matter of the invention.

I will briefly describe some of the terms for you so that you have some background
in patent terminology.  The Patent and Trademark Office, also known as the PTO, is in the
Washington, D.C. area and is an agency of the Federal Government.  It has more than a
thousand technically educated examiners who examine patent applications.

A patent application is the initial set of papers filed with the PTO by the
applicants.  In addition to some other papers such as the inventor's oath, the application
includes a specification, which must have a written description of the invention telling
what the invention is, how it works, and how to make and use it so as to enable others
skilled in the art to do so.  The specification concludes with one or more numbered
sentences.  These are the claims.  The purpose of the claims is to particularly point out
what the applicant regards as the invention.  When the patent is eventually issued by the
PTO, the claims define the scope of the patent owner's exclusive rights during the life of
the patent.

After the applicant files the application, a PTO patent examiner analyzes the patent
application to determine whether the claims are patentable and whether the specification
adequately describes the invention claimed.  In examining a patent application, the patent
examiner makes a search of the PTO records for prior art to the patent application claims.
The examiner considers, among other things, whether each claim defines an invention that
is new, useful, and not obvious in view of this prior art.  The prior art is defined by statute
and I will give specific instructions as to what constitutes prior art to the patent in suit
after the close of the evidence.  But generally it is technical information and knowledge
that was known to the public either before the invention by the applicant or more than a
year before the effective filing date of the application.

Following the prior art search and examination of the application, the patent
examiner then advises the applicant in writing what the examiner has found and whether
he has "allowed" any claim.  This writing from the PTO examiner is called an office
action.  The applicant then responds to this, and sometimes changes the claims or submits

new claims. This process may go back and forth between the patent examiner in the PTO and the applicant for several months or even years until the examiner is satisfied that the application and claims meet the conditions for patentability.

The papers generated during this time of corresponding back and forth between the PTO patent examiner and the applicant is what is called the prosecution history. This history of written correspondence is contained in a file in the PTO, and consequently some people over the course of the trial may call this history the file wrapper or file history.

We have also provided you with the following glossary of patent term definitions for your use during this trial.

### GLOSSARY OF PATENT TERMS

**Application** - The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** - Claims are the numbered sentences appearing at the end of the patent and define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**Office action** - Communication from the patent examiner regarding the patent application being examined.

**Patent Examiners** - Personnel employed by the PTO who examine patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention.

**Prior art** - Knowledge that is available to the public either before the invention by applicant or more than a year before the effective filing date of the application.

**Prosecution history or File wrapper** – The written record of the proceedings in the PTO between the applicant and the PTO. It includes the original patent application and later communications between the PTO and the applicant. The prosecution history may also be referred to as the "File wrapper" or "File history" of the patent during the course of this trial.

**Specification** - The specification is the information which appears in the patent and concludes with one or more claims. The specification includes the written text, the claims and the drawings. In the specification, the inventor sets forth a description telling what the invention is, how it works, how to make and use it so as to enable others skilled in the art to do so, and what the inventor believed at the time of filing to be the best way of making the invention.

AIPLA Model Patent Jury Instruction I.A, III.

### 1.2.4   The Significance Of Patent Claims

The parties have a disagreement about the first paragraph of this instruction as set forth below.

[MITEK PROPOSES THIS PARAGRAPH] The patent claims are numbered paragraphs at the end of the patent.  They are "word pictures" intended to define the boundaries of the invention described and illustrated in the patent.  The claims of a patent define what the patent owner may exclude others from doing during the term of the patent.

[DEFENDANTS PROPOSE THIS PARAGRAPH BECAUSE IT BETTER FRAMES THE ISSUES FOR THE JURY.  MITEK DISAGREES WITH THIS SUBSTITUTION BECAUSE IT IS CONFUSING AND ARGUMENTATIVE IN USING THE LANGUAGE "A MAIN FOCUS IN PATENT CASE."]The claims of a patent are a main focus of a patent case because it is the claims that define the patent owner's rights under the law.  That is, the claims define what the patent owner may exclude others from doing during the term of the patent.

The claims of a patent serve two purposes.  First, they set out the boundaries of the invention covered by the patent.  Second, they provide notice to the public of those boundaries.  Thus, when a product is accused of infringing a patent, it is the patent claims that must be compared to the accused product to determine whether or not there is infringement.  Only the claims of the patent can be infringed.  Neither the written description, which we have already discussed, nor the drawings of a patent can be infringed.  Each of the claims must be considered individually, and not all claims of a patent have to be infringed for the patent to be infringed.

In this case, we will be concerned with claims 1, 2, 8, 9 and 12 of the Hunter 446 Patent.  Plaintiff DePuy Mitek contends that these claims are infringed.  Defendants, Arthrex and Pearsalls contend that these claims are not infringed.

### 1.2.5   Patent Litigation

A company is said to infringe a patent claim when it, without permission from the patent owner, makes, uses, imports, sells, or offers to sell the patented invention within the United States.  A patent owner who believes that someone is infringing on its exclusive patent rights may bring a lawsuit like this to stop any infringing acts.  The patent owner has the burden to prove infringement of a patent claim.

A person sued for patent infringement can deny infringement, as defendants Arthrex and Pearsalls do here.

I will now give you some information about the issues that will be presented to you at this trial and the law that you must follow in reaching your verdict.  At the close of the trial, you will be given a verdict form and questions that you must answer in reaching your verdict.  I then will give you more specific instructions to follow as you deliberate to reach your verdict.

AIPLA Model Patent Jury Instruction I.B.; Federal Circuit Bar Association Model Patent Jury Instruction 3.

**The parties have proposed separate instructions for direct infringement.**

**MITEK'S PROPOSED INSTRUCTION FOR DIRECT
INFRINGEMENT**

### 1.3.1   Direct Infringement

Mitek contends that Arthrex's making, offering for sale, sale, and use of its FiberWire products directly infringes claims 1, 2, 8, 9, and 12 of the Hunter 446 Patent. Mitek also contends that Pearsalls' making, offering for sale, use, and importation into the United States of the suture materials that are sold as FiberWire are contributing to the infringement of Mitek's Hunter 446 Patent.

To prove infringement, Mitek must prove that it is more probable than not that the FiberWire products literally contain each and every limitation of claims 1, 2, 8, 9, or 12 of the Hunter 446 Patent.

Arthrex does not dispute that FiberWire has a braided construction of two different materials, as called for in the Hunter 446 Patent.

The Hunter 446 Patent claims use a phrase, "consisting essentially of," that has special legal meaning.

Here, it means that the claim may encompass sutures that include components that are not expressly listed in the claim provided those components do not materially affect the basic and novel properties of the invention.  An effect on the basic and novel characteristics of an invention is "material" if the effect is of importance or of consequence to those of ordinary skill in the art.

The Hunter 446 Patent claims do not expressly recite a coating.  Mitek does not dispute that FiberWire sutures also have a coating.  Mitek contends that the coating does not materially affect the novel and basic characteristics of the invention and therefore FiberWire infringes the Hunter 446 Patent.  The Defendants disagree.

I have defined what the "basic and novel properties" of the invention described in the Hunter 446 Patent are.  They are: (1) a surgical suture, (2) composed of two dissimilar yarns from the lists in Claim One (those yarns including a first set of yarns selected from the group of PTFE, FEP, PFA, PVDF, PETFE, PP and PE; and a second set of yarns selected from the group of PET, nylon and aramid), (3) where at least one yarn from the first set is in direct intertwining contact with the yarn from the second set, (4) so as to improve pliability and handleability without significantly sacrificing the physical properties of the constituent elements of the suture.

*AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1245 (Fed. Cir. 2001); *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354-55 (Fed. Cir. 1998); *Atlas Powder Co. v.*

*DuPont de Nemours & Co.*, 750 F.2d 1569, 1573-74 (Fed. Cir. 1984);Order on Claim Construction at 12; Order on Claim Construction at 18-19.

## DEFENDANTS' PROPOSED INSTRUCTION FOR DIRECT INFRINGEMENT

### 1.3.1   Direct Infringement

Defendant Arthrex currently sells in the United States high-strength surgical sutures called FiberWire and TigerWire (together, I will refer to them as "FiberWire" since for purposes of this trial the differences between the two sutures do not matter).

Mitek contends that Arthrex's making, offering for sale, sale, and use of its FiberWire products directly infringes claims 1, 2, 8, 9, and 12 of the Hunter 446 Patent. Mitek also contends that Pearsalls' making, offering for sale, use, and importation into the United States of the braids that are Hunter 446 Patent used to make FiberWire are contributing to infringement of the Hunter 446 Patent.

To prove infringement, Mitek must prove by a preponderance of the evidence – meaning that it is more likely than not -- that the FiberWire products literally contain each and every limitation of claims 1, 2, 8, 9, or 12 of the Hunter 446 Patent.

The Hunter 446 Patent claims use a phrase, "consisting essentially of," that has special legal meaning.

Here, it means that the claim may encompass sutures that include ingredients that are not expressly listed in the claim provided those ingredients do not materially affect the basic and novel properties of the invention.  To say it another way, an accused product does not infringe such a claim (i.e., one that includes the phrase "consisting essentially of") if the added ingredient which is not listed in the claims materially affects the basic and novel properties of the invention.  An effect on the basic and novel characteristics of an invention is "material" if the effect is of importance or of consequence to those of ordinary skill in the art.

In this case, Arthrex does not dispute that FiberWire has a braided construction of ultra-high molecular weight PE and PET – two materials that are recited in the Hunter 446 Patent claims as construed by the Court.  Likewise, Mitek does not dispute that FiberWire sutures also have a coating. The Hunter 446 Patent claims do not recite a coating.

A significant issue in this case is whether the coating on FiberWire materially affects the basic and novel properties of the suture.  You will need to consider the evidence in deciding that question.   Mitek contends that it does not have a material effect and therefore FiberWire infringes the Hunter 446 Patent.  Defendants contend that the coating does have a material effect on the basic and novel properties and, therefore, FiberWire does not infringe the Hunter 446 Patent.

I have defined what the "basic and novel properties" of the invention described in the Hunter 446 Patent are. They are: (1) a surgical suture, (2) composed of two dissimilar yarns from the lists in Claim One, (3) where at least one yarn from the first set is in direct intertwining contact with the yarn from the second set, (4) so as to improve pliability and handleability without significantly sacrificing the physical properties of the constituent elements of the suture.

Again, to summarize, it is up to you to decide based upon the evidence you will hear, whether the coating included on Fiberwire sutures materially affects the basic and novel properties of the invention as I just read them to you.

There are other defenses to infringement that are raised in this case. I will instruct you later about those defenses.

*AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1245 (Fed. Cir. 2001); *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354-55 (Fed. Cir. 1998); *Atlas Powder Co. v. DuPont de Nemours & Co.*, 750 F.2d 1569, 1573-74 (Fed. Cir. 1984);Order on Claim Construction at 12; Order on Claim Construction at 18-19.

**1.5    Trial Procedure**

We are about to commence the opening statements in the case.  Before we do that, I want to explain to you a little bit about the procedures that we will be following during the trial and the format of the trial.  This trial, like all jury trials, comes in six stages or phases.  We have already been through the first phase, which is to select you as jurors.  We are now about to begin the second phase, the opening statements.  The opening statements of the lawyers are statements about what each side expects the evidence to show.  The opening statements are not evidence in the case.

The evidence comes in the next phase, the third phase, when witnesses will take the witness stand and documents will be offered and admitted into evidence.  In the third phase, the plaintiff, Mitek, goes first in calling witnesses to the witness stand and presenting evidence on its patent infringement claim.  These witnesses will be questioned by Mitek's counsel in what is called direct examination.  After the direct examination of a witness is completed, the opposing side, Arthrex and Pearsalls, has an opportunity to cross-examine the witness.  After Mitek has presented its witnesses, Arthrex and Pearsalls will then call and question their witnesses to the witness stand and present evidence on their non-infringement defense.  Following Arthrex's and Pearsalls' direct examination, these witnesses will then be cross-examined by Mitek.  After Arthrex and Pearsalls present their evidence in defense of Mitek's infringement claims, Mitek will present rebuttal evidence.

The evidence often is introduced somewhat piecemeal, so you as jurors need to keep an open mind as the evidence comes in.  Wait until all the evidence comes in before you make any decision.  In other words, keep an open mind throughout the entire trial.

After we conclude the third phase and the evidence has been presented, then the lawyers again have an opportunity to talk with you in what is called closing argument, which is the fourth phase.  Again, what the lawyers say is not evidence.  The lawyers' closing arguments to you are for the purpose of helping you in making your determination.

After that phase, we reach the fifth phase of the trial, which is when I read you the jury instructions.  In that phase, I will instruct you on the law.  I have already explained a little bit about the law to you.  But later, in this fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial, it will be time for you to deliberate.  You can then evaluate the evidence, discuss the evidence among yourselves and make a determination in the case.  Remember that it will be your duty to find what the facts are from the evidence as presented at the trial.  You, and you alone, are the judges of the facts.  You have to apply those facts to the law and the patent claims as I instruct you at the close of the evidence.

You are the judges of the facts. I will explain to you the rules of law which apply to this case, and I will also explain to you the meaning and scope of the patent claims. You must follow that law and claim interpretation whether you agree with it or not. Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

Remember to keep an open mind throughout the trial. Do not discuss the case or the evidence with your family, friends, or fellow jurors. You will not begin to deliberate – that is, to discuss the evidence with your fellow jurors and to make up your minds on the issues– until after the close of the evidence, when I have given you the law which you are to follow in your decision-making.

AIPLA Model Patent Jury Instruction III.

## 2.    Pre-Deliberation Instructions

## 2.1    General Instructions

### 2.1.1    Role of the Court

Now that you have heard all of the evidence and the argument of counsel, it becomes my duty to give you the instructions of the Court concerning the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them from the evidence in the case.  If an attorney has stated a legal principle in a different manner than I state to you in my instructions, it is my instructions that you must follow.

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.

You should not be concerned with the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any view of the law other than that which I give you.

4 L. SAND, *et al.* MODERN FEDERAL JURY INSTRUCTIONS, Instruction 71-2.

### 2.1.2    Role of the Jury

As the members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses.  You resolve any conflicts in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Regardless of any opinion that you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in the Court's instructions, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in this case.

In deciding the facts of this case you must not be swayed by bias or prejudice or favor as to any party.  Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion.  Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a jury verdict regardless of the consequences.

This case shall be considered and decided by you as an action between persons of equal standing in the community, and holding the same or similar stations in life.  Each party is entitled to a fair trial at your hands, and a corporation is entitled to the same fair trial as an individual.  The law respects all persons equally, and all persons including corporations stand equal before the law and are to be dealt with as equals in a court of justice.

In determining the facts, you must consider only the evidence I have admitted in the case.  Any evidence to which I sustained an objection or that I ordered stricken must be disregarded.

Remember that any statements, objections or arguments made by the lawyers are not evidence in the case.  The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice.

In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case.  What the lawyers say is not binding upon you.

The evidence from which you are to decide the facts consists of:
1.    the sworn testimony of witnesses, on both direct and cross-examination;
2.    the exhibits which have been received into evidence;
3.    the deposition testimony that has been read into evidence; and
4.    any facts to which all the lawyers have agreed or stipulated.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony as you feel are justified in the light

of common experience.  In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

In determining any fact in issue you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have produced them.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 71-3.

### 2.1.3   Juror Oath

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law.  I know that you will do this and reach a just and true verdict.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 71-4.

### 2.1.4   Jury To Disregard Court's View

I have not expressed nor have I intended to intimate any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established, or what inference or inferences should be drawn from the evidence.  If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it.  You are, I repeat, the exclusive, sole judges of all of the questions of fact submitted to you and of the credibility of the witnesses.  Your authority, however, is not to be exercised arbitrarily; it must be exercised with sincere judgment, sound discretion, and in accordance with the rules of law which I give you.  In making your determination of the facts in this case, your judgment must be applied only to that which is properly in evidence.  Arguments of counsel are not evidence, although you may give consideration to those arguments in making up your mind on what inferences to draw from the facts which are in evidence.

From time to time the Court has been called upon to pass upon the admissibility of certain evidence, although I have tried to do so, in so far as it was practicable, out of your hearing.  You have no concern with the reasons for any such rulings and you are not to draw any inferences from them.  Whether offered evidence is admissible is purely a question of law in the province of the Court and outside the province of the jury.  In admitting evidence to which objection has been made, the Court does not determine what weight should be given to such evidence, nor does it pass on the credibility of the evidence.  Of course, you will dismiss from your mind completely any evidence which has been ruled out of the case by the Court, and you will refrain from speculation or conjecture or any guesswork about the nature or effect of any colloquy between the Court and counsel held out of your hearing or sight.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 71-4.

### 2.1.5    What Is and Is Not Evidence

The evidence in this case is the sworn testimony of the witnesses, whether live or by deposition, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the question of a lawyer is not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer on cross-examination may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  You may also not consider any answer that I directed you to disregard.  Also, if certain testimony was received for a limited purpose – such as for the purpose of assessing a witness's credibility – you must follow the limiting instructions I gave you at that time.

Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.   However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Exhibits which have been marked for identification may not be considered by you as evidence until and unless they have been received in evidence by the court.

To constitute evidence, exhibits must be received in evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness's recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 74-1.

### 2.1.6   Direct and Circumstantial Evidence

There are two types of evidence: direct and circumstantial.  Direct evidence is the testimony of a person who claims to have personal knowledge of an event, such as an eye witness.  Direct evidence may also be in the form of an exhibit where the fact to be proved is its present existence or condition.  Circumstantial evidence is the proof of a chain of facts and circumstances that tend to show whether or nor an asserted fact is true. The law makes no distinction between the weight to be given either direct or circumstantial evidence.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 74-2.

### 2.1.7   Judicial Notice

I have taken judicial notice of certain facts which are not subject to reasonable dispute.  I have accepted these facts to be true, even though no direct evidence has been introduced proving them to be true.  You are required to accept these facts as true in reaching your verdict.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 74-3.

### 2.1.8   Stipulation of Facts

A stipulation of facts is an agreement among the parties that a certain fact is true. You must regard such agreed facts as true.

The facts the parties have stipulated to are as follows:

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 74-4.

### 2.1.9   Stipulation of Testimony

A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony.  You must accept as true the fact that the witness would have given that testimony.  However, it is for you to determine the effect, if any, to be given that testimony.

4 L. Sand, et al., Modern Federal Jury Instructions, Instruction 74-5

### 2.1.10  Summaries and Charts Admitted As Evidence

The parties have presented exhibits in the form of charts and summaries.  I decided to admit some of these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

4 L. Sand, et al., Modern Federal Jury Instructions, Instruction 74-11.

**2.1.11  Summaries and Charts Not Admitted As Evidence**

Other charts and summaries were not admitted into evidence but were shown to you in order to make some evidence more meaningful and to aid you in considering the evidence.  They are not better than the testimony or the documents upon which they are based, and are not themselves independent evidence.  Therefore, you are to give no greater consideration to these summaries than you would give to the evidence upon which they are based.

It is for you to decide whether the charts or summaries correctly present the information contained in the testimony and in the exhibits on which they were based. You are entitled to consider the charts and summaries if you find that they are of assistance to you in analyzing the evidence and understanding the evidence.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 74-12

**MITEK PROPOSES THE FOLLOWING INSTRUCTION. DEFENDANTS DISAGREE**

### 2.1.12  Interrogatories

You have heard and seen evidence in this case which is in the form of interrogatories.

Interrogatories are written questions posed by one side which call for written answers under oath from the other side.  Both the questions and answers are made before trial after the case has begun in what is called pretrial discovery, and each side is entitled to seek such discovery from the other.

You may consider a party's answers to interrogatories as evidence against a party who made the answer, just as you would any other evidence which has been admitted in this case.

In this regard, you are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence.  It is up to you to determine what weight, if any, should be given to the interrogatory answers which have been admitted as evidence.

One cautionary word on this subject: while you may consider the interrogatory answers as evidence against the party who gave the answers, you may not consider the answers as evidence against the party who posed the interrogatory questions.  You may only consider the interrogatory answer as evidence against the party who gave the answer.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 74-13.

**2.1.13  Depositions**

Some of the testimony before you is in the form of depositions which have been received in evidence.  A deposition is simply a procedure where the attorneys for one side may question a witness or an adverse party under oath before a court stenographer before trial.  This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

4 L. Sand, et al., Modern Federal Jury Instructions, Instruction 74-14.

**2.1.16  Witness Credibility**

You have had the opportunity to observe all the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of the testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides.  It must also be obvious to you that both sides cannot be true and this is where you play your role as jurors.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies?  You watched the witness testify.  Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did he appear to be frank, forthright and candid, or evasive and edgy as if hiding something?  How did the witness appear, what was his demeanor-- that is, his carriage, behavior, bearing, manner and appearance while testifying?  Often it is not what a person says but how he says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness and probability of his testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your own life experience.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 76-1.

**2.1.17  Bias**

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his testimony.  In short, if you find that a witness is biased, you should view his testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 76.2.

**2.1.18  Interest in Outcome**

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case.  Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his own interests.  Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of is testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his testimony.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 76-3.

**2.1.19  Discrepancies In Testimony**

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness's testimony.  On the other hand, discrepancies in a witness's testimony or between his testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict himself.  It is also a fact that two people witnessing an event will see or hear it differently.  Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony.  You should, as always, use common sense and your own good judgment.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 76-4.

**2.1.20  Impeachment By Prior Inconsistent Statements**

You have heard evidence that at some earlier time the witness has said or done something which counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself.  If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 76-5.

**2.1.21  Expert Witnesses – Generally**

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 76.9.

**2.1.22  Conflicting Expert Testimony**

You have heard testimony of witnesses who have been called by both sides to give their opinions about various issues.

The witnesses who testified in this case did so in order to assist you in reaching a decision on those issues.

You may find that the testimony of some of these witnesses is in conflict.  You must remember that you are the sole trier of the facts and their testimony relates to a question of fact; so, it is your job to resolve any disagreement you find to exist.

The way you resolve the conflict between these witnesses is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses.  In addition, since they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion, and the witness's motive, if any, for testifying.

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence.  You should not permit a witness's opinion testimony to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or if you, for other reasons, do not believe the witness.  The determination of the facts in this case rests solely with you.

4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 76.10.

**2.2     The Parties And Their Contentions**

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Federal Circuit Bar Association Model Patent Jury Instruction 5.0

### 2.2.1    Mitek's Contentions

Mitek contends that Arthrex's making, using, selling, and offering for sale its FiberWire products directly infringe the Hunter 446 Patent.  Mitek also contends that Pearsalls' making, using, selling, offering for sale, and importing of braids that are sold as FiberWire contributes to the infringement of the Hunter 446 Patent.

Federal Circuit Bar Association Model Patent Jury Instruction 5.2

DEFENDANTS HAVE NOT COMMENTED ON MITEK'S CONTENTIONS AND RESERVE THE RIGHT TO OBJECT BEFORE THE JURY IS CHARGED.

### 2.2.2   Arthrex's and Pearsalls' Contentions

Arthrex and Pearsalls contend that FiberWire sutures do not infringe the claims of the Hunter 446 Patent since the coating added to FiberWire sutures materially affects the pliability and/or handleability of the suture.

Arthrex and Pearsalls also contend that FiberWire sutures do not infringe the claims of the Hunter 446 Patent since the ends of its FiberWire sutures are tipped (i.e., stiffened), thereby materially affecting its pliability and/or handleability.

Further, Arthrex and Pearsalls contend that FiberWire sutures do not infringe the claims of the Hunter 446 Patent under the reverse doctrine of equivalents.  Defendants contend that since its FiberWire suture products operate in a manner that is the opposite of that described in the Hunter 446 Patent, even if the sutures fall within the literal words of the claims of the Hunter 446 Patent, there is still no infringement.

Pearsalls further contends that it does not contribute to the infringement of the Hunter 446 Patent because braids of the materials used in FiberWire that Pearsalls manufactures are suitable for other uses.

Federal Circuit Bar Association Model Patent Jury Instruction 5.3




MITEK HAS NOT COMMENTED ON DEFENDANTS' CONTENTIONS AND RESERVE THE RIGHT TO OBJECT BEFORE THE JURY IS CHARGED

### 2.2.3  Burden of Proof

As the plaintiff, Mitek has the burden of proving infringement by a preponderance of the evidence, which means that Mitek must prove that it is more likely than not that defendants infringe the Hunter 446 Patent.

*Kegel Co. v. AMF Bowling, Inc.,* 127 F.3d 1420, 1425 (Fed. Cir. 1997)

**2.3.    Claim Construction and Infringement**

Before you decide whether or not Arthrex and Pearsalls have infringed claims 1, 2, 8, 9, and 12 you will have to understand the patent "claim."  Patent claims are numbered paragraphs at the end of the patent. They are "word pictures" intended to define the boundaries of the invention described and illustrated in the patent.  The patent claim begin at column 8, line 63 of the patent, which is Exhibit __ in evidence.

Only the claims of the patent can be infringed.  Neither the written description, which we have already discussed, nor the drawings of a patent can be infringed.  Each of the claims must be considered individually, and not all claims of a patent have to be infringed for the patent to be infringed.  To prove patent infringement, Mitek need only establish by a preponderance of the evidence that one claim is infringed.

You have heard evidence about both Mitek's commercial product and Arthrex's accused FiberWire products.  However, in deciding the issue of infringement you must compare the accused FiberWire products with the claims of the Hunter 446 Patent when making your decision regarding infringement.

AIPLA Model Patent Jury Instruction, Claim Construction and Infringement No. 1; 35 U.S.C. § 112; *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1338 (Fed. Cir. 2003); *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 882-83 (Fed. Cir. 1988); *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330-31 (Fed. Cir. 1987).

**2.3.1    Construction Of The Claims**

I will now explain to you the meaning of the claims.

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed.

At the start of the trial, I instructed you about the meaning of the words of the claims and the different types of claims that are at issue in this case. I will now review those instructions with you again.

It may be helpful to refer to the copy of the Hunter 446 Patent that you have been given as I discuss the claims at issue here. The claims are at the end of the Hunter 446 Patent, starting in column 8.  The following claim terms have the following meanings.

"PE" includes all polymers formed from a repeating ethylene monomer, including ultra high molecular weight polyethylene.

The "basic and novel properties" of the suture described in the Hunter 446 Patent are: (1) a surgical suture, (2) composed of two dissimilar yarns from the lists in Claim One, (3) where at least one yarn from the first set is in direct intertwining contact with the yarn from the second set, (4) so as to improve pliability and handleability without significantly sacrificing the physical properties of the constituent elements of the suture.

I will be giving you copies of the claims at issue as part of the verdict form when I conclude my instructions.

Federal Bar Association Model Patent Jury Instruction 7.1; *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303,

1313-14 (Fed. Cir. 2005); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001); *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1340-41 (Fed. Cir. 2001); *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1340-41 (Fed. Cir. 2000); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999);  *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988-90 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998) (en banc); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-84 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc); *Rival Co. v. Sunbeam Corp.*, 987 F. Supp. 1167, 1170-71 (W.D. Mo. 1997), *aff'd without opinion*, 185 F.3d 885 (Fed. Cir. 1999); Order on Claim Construction at 12, 18-19.

## 2.3.2     Independent And Dependent Claims

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. An independent claim must be read separately from the other claims to determine the scope of the claim.  Claim 1 of the Hunter 446 Patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the elements of the claims to which it refers, as well as the additional limitations recited in the dependent claim itself.

For example, claim 1 is an independent claim and recites several elements.  Claims 2 and 8 are dependent claims that refer to claim 1, and each include an element in addition to those recited in claim 1.  To determine what dependent claims 2 and 8 cover, the words of these claims must be read together with claim 1.  Claims 9 and 12 depend on claim 8. To determine what these claims cover, they each must be read together with claims 8 and 1.

As I said earlier, each claim must be considered independently.  You must look at the dependent claim with all of the limitations it has when determining whether it is infringed.

Federal Bar Association Model Patent Jury Instruction 7.2; 35 U.S.C. § 112 ¶ 4; *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 236 F.3d 1363, 1369-70 (Fed. Cir. 2001);  *Dow Chem. Co. v. U.S.*, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000); *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1359 (Fed. Cir. 2000); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.*, 882 F.2d 498, 504 (Fed. Cir. 1989), *vacated by* 498 U.S. 1061 (1991), *reinstated by* 939 F.2d 969 (Fed. Cir. 1991); *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 (Fed. Cir. 1989).

**THE PARTIES HAVE PROPOSED DIFFERENT INFRINGEMENT
INSTRUCTIONS AND THEY ARE SET FORTH SEPARATELY IN
THE PAGES THAT FOLLOW.**

**MITEK'S PROPOSED INSTRUCTIONS**

**DEFENDANTS' DISAGREE TO MITEK'S PROPOSED
INSTRUCTIONS BECAUSE IT OMITS IMPORTANT
INFORMATION NECESSARY FOR THE JURY TO
UNDERSTAND HOW IT SHOULD APPLY THE LAW OF THE
"CONSISTING ESSENTIALLY OF" TEST AND ALSO TO
BETTER FRAME THE ISSUES FOR THE JURY**

### 2.3.3  "Consisting Essentially of" Claims

The beginning portion, or preamble, of claim 1 has the transition phrase "consisting essentially of."  A claim that uses this language is not limited to only what is recited in the claim, but can include additional elements that do not materially affect the basic and novel characteristics of the invention.

Federal Circuit Bar Association Model Patent Jury Instruction 7.5; *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1245 (Fed. Cir. 2001); *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354-55 (Fed. Cir. 1998); *Atlas Powder Co. v. DuPont de Nemours & Co.*, 750 F.2d 1569, 1573-74 (Fed. Cir. 1984).

### 2.3.4  Direct Patent Infringement: Knowledge of Patent or Intent to Infringe is Immaterial

A patent's claims define what is covered by the patent.  Arthrex's FiberWire products directly infringe Mitek's Hunter Patent if those products are covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this determination, and have instructed you as to the meaning of the claims.  The second step is to decide whether Arthrex or Pearsalls has made, use, sold, offered for sale, or imported within the United States a product covered by claims 1, 2, 8, 9, and 12 of Mitek's Hunter Patent.  You, the jury, must make this determination.

There are two ways in which a patent claim may be directly infringed.  A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents."  The following instructions will provide more detail on these two types of direct infringement.

In this case, Mitek asserts that Arthrex has directly infringed the patent.  Arthrex would be liable for directly infringing Mitek's Hunter Patent if you find that Mitek has proven by a preponderance of the evidence that Arthrex has made, used, offered for sale, sold, or imported into the United States the invention defined in at least one claim of Mitek's Hunter Patent.

A person can directly infringe a patent without knowing that what he is doing is an infringement of the patent.  He may also infringe even though in good faith he believes that what he is doing is not an infringement of any patent.

Model Patent Jury Instructions for the Northern District of California, Instruction 3.2; AIPLA Model Patent Jury Instruction, Claim Construction and Infringement No. 5; 35 U.S.C. § 271(a) (1984 & Supp. 2001); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 645 (1999); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-31 (Fed. Cir. 2001);  *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999);  *Carroll Touch, Inc. v. Electo-Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992).

### 2.3.5  Direct Patent Infringement

Mitek contends that Arthrex's making, offering for sale, sale, and use of its FiberWire products directly infringe claims 1, 2, 8, 9, and 12 of Mitek's Hunter Patent. Mitek also contends that Pearsalls' making, offering for sale, use, and importation into the United States of the braids that are sold as FiberWire are contributing to the infringement of Mitek's Hunter Patent.

To prove infringement, Mitek must prove that it is more probable than not that the FiberWire products literally contain each and every limitation of claims 1, 2, 8, 9, or 12 of Mitek's Hunter Patent

Arthrex does not dispute that FiberWire has a braided construction of two different materials, as called for in the Hunter Patent claims.  The FiberWire sutures also have a silicone coating. The Hunter Patent claims do not recite a coating.

The Hunter Patent claims use a phrase, "consisting essentially of," that has special legal meaning.

Here, it means that the claim may encompass sutures that include components that are not expressly listed in the claim provided those components do not materially affect the basic and novel properties of the invention.  An effect on the basic and novel characteristics of an invention is "material" if the effect is of importance or of consequence to those of ordinary skill in the art.

You will need to consider the evidence and decide whether the silicone coating on FiberWire has a material effect on the basic and novel properties of the suture.  Mitek contends that it does not have a material effect, and Arthrex contends that it does have a material effect.

I have defined what the "basic and novel properties" of the invention described in the Hunter Patent are.  The are: (1) a surgical suture, (2) composed of two dissimilar yarns from the lists in Claim One (those yarns including a first set of yarns selected from the group of PTFE, FEP, PFA, PVDF, PETFE, PP and PE; and a second set of yarns selected from the group of PET, nylon and aramid), (3) where at least one yarn from the first set is in direct intertwining contact with the yarn from the second set, (4) so as to improve pliability and handleability without significantly sacrificing the physical properties of the constituent elements of the suture.

*AFG Indus., Inc. v. Cardinal IG Co*., 239 F.3d 1239, 1245 (Fed. Cir. 2001); *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354-55 (Fed. Cir. 1998); *Atlas Powder Co. v. DuPont de Nemours & Co.*, 750 F.2d 1569, 1573-74 (Fed. Cir. 1984);Order on Claim Construction at 12; Order on Claim Construction at 18-19.

**DEFENDANTS' PROPOSED INSTRUCTIONS**

**MITEK DISAGREES WITH DEFENDANTS' PROPOSED JURY INSTRUCTIONS BECAUSE THEY ARE ARGUMENTATIVE, IN PART, AND ATTEMPT TO SUGGEST FACTS TO THE JURY.**

**MITEK FURTHER OBJECTS TO THE INSTRUCTIONS RELATING TO TIPPING AND REVERSE DOCTRINE OF EQUIVALENTS BECAUSE PER THE COURT'S INDICATION AT THE JUNE 19, 2007 HEARING, THOSE MATTERS ARE NOT PART OF THE CASE OR ARE NOT EXPECTED TO BE PART OF THE CASE TO BE TRIED.**

**DEFENDANTS BELIEVE THAT THE INSTRUCTIONS RELATING TO TIPPING AND REVERSE DOCTRINE OF EQUIVALENTS ARE APPROPRATE BECAUSE THE ISSUES REMAIN IN THE CASE.**

### 2.3.3   Direct Patent Infringement

A patent's claims define what is covered by the patent.  Arthrex's FiberWire products directly infringe  the Hunter 446 Patent if those products are covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this determination, and have instructed you as to the meaning of the claims.  The second step is to decide whether Arthrex or Pearsalls has made, use, sold, offered for sale, or imported within the United States a product covered by claims 1, 2, 8, 9, and 12 of the Hunter 446 Patent.  You, the jury, must make this determination.

To prove infringement, Mitek must establish that the accused FiberWire suture includes each and every limitation of the claims of the Hunter 446 Patent.  In doing your analysis, you must keep in mind that the claims also include the phrase "consisting essentially of," which has a special legal meaning.  I will now instruct you on that special legal meaning and how it impacts your analysis of the evidence and your decision whether there is infringement.

Model Patent Jury Instructions for the Northern District of California, Instruction 3.2; AIPLA Model Patent Jury Instruction, Claim Construction and Infringement No. 5; 35 U.S.C. § 271(a) (1984 & Supp. 2001); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 645 (1999); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-31 (Fed. Cir. 2001);  *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999);  *Carroll Touch, Inc. v. Electo-Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992).

### 2.3.4   "Consisting Essentially of" Claims

The beginning portion, or preamble, of the Hunter 446 Patent claims use a phrase, "consisting essentially of."  This phrase has a special legal meaning.

Here, it means that the claim may encompass FiberWire sutures that include ingredients that are not expressly listed in the claim, provided those ingredients do not materially affect the basic and novel properties of the invention.  To say it another way, the FiberWire sutures do not infringe the claims of the Hunter 446 Patent if the added ingredient which is not listed in the claims materially affects the basic and novel properties of the invention.

In this case, Arthrex does not dispute that FiberWire has a braided construction of ultra-high molecular weight PE and PET – two materials that are recited in the Hunter 446 Patent claims as construed by the Court.  Likewise, Mitek does not dispute that the FiberWire sutures also have a coating. The Hunter 446 Patent claims do not recite a coating.

A significant issue in this case is whether the coating on FiberWire materially affects the basic and novel properties of the suture.  You will need to consider the evidence and decide whether the coating on FiberWire sutures has a material effect on the basic and novel properties of the suture.  Mitek contends that it does not have a material effect and therefore FiberWire infringes the Hunter 446 Patent.  Defendants contend that the coating does have a material effect on the basic and novel preparations and, therefore, FiberWire does not infringe the Hunter 446 Patent.

In deciding whether the coating on FiberWire suture products materially affects the basic and novel properties of the invention, please keep in mind that an effect is "material" if the effect is of importance of or consequence to those of ordinary skill in the surgical suture art.

I have defined what the "basic and novel properties" of the invention described in the Hunter 446 Patent are.  They are: (1) a surgical suture, (2) composed of two dissimilar yarns from the lists in Claim One, (3) where at least one yarn from the first set is in direct intertwining contact with the yarn from the second set, (4) so as to improve pliability and handleability without significantly sacrificing the physical properties of the constituent elements of the suture.

Again, to summarize, it is up to you to decide based upon the evidence you heard, whether the coating included on Fiberwire sutures materially affects the basic and novel properties of the invention as I just read them to you.

*AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1245 (Fed. Cir. 2001); *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354-55 (Fed. Cir. 1998); *Atlas Powder Co. v. DuPont de Nemours & Co.*, 750 F.2d 1569, 1573-74 (Fed. Cir. 1984);Order on Claim Construction at 12; Order on Claim Construction at 18-19.

### 2.3.6.  Materially Affecting Basic and Novel Properties of the Invention

Although there are four separate parts to the basic and novel properties of the invention, there is only one which you need to be concerned with on the question of whether that property is materially affected by the coating added to FiberWire suture. That one property is the last one -- "so as to improve pliability and handleability without significantly sacrificing the physical properties of the constituent elements of the suture."

In determining whether the coating added to FiberWire materially affects the basic and novel properties of the invention, it does not matter whether you determine that the coating has an improving effect or a worsening effect on those properties.  The only thing that matters in your analysis is whether the effect is a material one.  If you decide that the effect is not material, then you should find that adding coating does not avoid infringement.  If you decide that the effect is material, then you should find no infringement.

Even if you believe that most commercially available sutures contain a coating that should not impact on your analysis as to whether the coating added to FiberWire sutures materially affects the basic and novel properties of the invention.  That is, the addition of coating to FiberWire may materially affect the basic and novel properties of the Hunter 446 Patent even though most commercial sutures contain a coating.  This is due to the legal effect of the "consisting essentially of" language included in the Hunter 446 Patent claims.

Finally, in determining whether the coating on FiberWire materially affects the basic and novel properties of the Hunter 446 Patent, it is not necessary that the coating eliminate other limitations of the claim, such as whether the coating changes the nature of the other materials in the suture or prevents the suture from being braided in "direct intertwining contact."  Such a requirement would be contrary to law.  Rather, all you should decide is whether the FiberWire coating materially affects the basic and novel properties under the test that I have explained to you.

*PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354 (Fed. Cir. 1998); *AFG Indus., Inc. v. Cardinal IG Comp., Inc.*, 239 F.3d 1239, 1252 (Fed. Cir. 2001); Transcript of *Markman* Hearing (Sept. 26, 2006) at 16:6-17:1.

**2.3.7    Non-Infringement --Tipping Materially Affects the Basic and Novel Properties of the Invention**

Arthrex also claims that it does not infringe the Hunter 446 Patent since the ends of its FiberWire sutures are tipped (i.e., stiffened).  Specifically, Arthrex claims that the adhesive added to the ends of its sutures during the tipping process materially affects the basic and novel properties of the invention because it stiffens the ends of the suture, thereby materially improving its handleability by making it easier to thread the suture through instruments and it also prevents fraying of the ends.

If you find that the tipping adhesive applied to Arthrex's FiberWire sutures materially affects the basic and novel properties of the invention, then you should find no infringement.

*AFG Indus., Inc. v. Cardinal IG Comp., Inc.*, 239 F.3d 1239, 1252 (Fed. Cir. 2001)

### 2.3.8   Direct Patent Infringement: Knowledge of Patent or Intent to Infringe is Immaterial

A person can directly infringe a patent without knowing that what he is doing is an infringement of the patent.  He may also infringe even though in good faith he believes that what he is doing is not an infringement of any patent.

DEFENDANTS BELIEVE THAT THIS INSTRUCTION SHOULD ONLY BE GIVEN ONCE.

Model Patent Jury Instructions for the Northern District of California, Instruction 3.2; AIPLA Model Patent Jury Instruction, Claim Construction and Infringement No. 5; 35 U.S.C. § 271(a) (1984 & Supp. 2001); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 645 (1999); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-31 (Fed. Cir. 2001);  *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999);  *Carroll Touch, Inc. v. Electo-Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992).

### 2.3.9    Non-Infringement: Reverse Doctrine of Equivalents

Even if you find that Arthrex's FiberWire suture products include every limitation of the claims of the Hunter 446 Patent, and you find that the addition of coating or tipping does not materially affect the basic and novel properties of the Hunter 446 Patent, you may still find there is no infringement under what is called the reverse doctrine of equivalents.  Under the reverse doctrine of equivalents, there is no infringement where an accused product is so far changed in principle from a patented article, but nevertheless falls within the literal words of the claim.

Here, Arthrex and Pearsalls claim that its FiberWire suture products operate in a manner that is the opposite of that described in the Hunter 446 Patent, and therefore, even if they fall within the literal words of the claims of the Hunter 446 Patent, there is no infringement.

Specifically, Arthrex and Pearsalls claim that they add ultra-high molecular weight polyethylene to its FiberWire suture for the purpose of adding strength to the suture, whereas the Hunter 446 Patent describes PE as being part of a group of materials that are added to the suture to improve its handleability aspects.

Further, Arthrex and Pearsalls claim that they add PET to its FiberWire suture for the purpose of improving its handleability aspects, whereas the Hunter 446 Patent describes PET as part of a group that adds strength to the suture.

If you find that Arthrex's FiberWire sutures operate in a manner that is opposite that described in the Hunter 446 Patent, you should find no infringement.

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.2d 1357, 1368 (Fed. Cir. 2002) (citing *Graver Tank & Manufacturing Co. v. Linde Air Prods., Co.*, 339 U.S. 605, 609 (1950)).

### 2.3.10  Indirect Infringement -- Generally

In addition to Mitek's claim that Arthrex directly infringes the claims of the Hunter 446 Patent (which Arthrex denies), Mitek also claims that defendant Pearsalls indirectly infringes the Hunter 446 Patent.  Specifically, Mitek claims that Pearsalls' manufacturing of the braids that are further processed and eventually used in FiberWire products constitutes a contributory infringement of the Hunter 446 Patent.

As you heard during the course of the trial, Pearsalls braids together ultra-high molecular weight PE and PET, applies a coating to those braids and then ships them on spools to RK Manufacturing in the United States.  There the braids are tipped, cut into lengths, have needles and/or suture anchors attached to them and then they are sterilized. The FiberWire suture products are then shipped to Arthrex and Arthrex sells them in the United States to its customers.

In order to prove its claim of contributory infringement against Pearsalls, Mitek must first prove by a preponderance of the evidence that there was an act of direct infringement by Arthrex.  If you do not find that Mitek has met its burden regarding Arthrex's direct infringement, then as a matter of law, Pearsalls cannot be found to have contributed to the infringement.

If, however, you find that Mitek met its burden of proving that Arthrex directly infringes the Hunter 446 Patent, then and only then will you consider Mitek's claim that Pearsalls contributes to the infringement.


*DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006), *en banc*; *Epicrealm, Licensing, LLC v. Autoflex Leasing, Inc.*, 2007 WL 1828014 at *5 (E.D. Tex. June 26, 2007) (citing holding in *DSU Medical*).

**2.3.12  Indirect Infringement -- Contributory Infringement**

[MITEK PROPOSES TO KEEP THE FIRST SENTENCE. DEFENDANTS DISAGREE BECAUSE IT IS DUPLICATIVE] Mitek also asserts that Pearsalls is liable for contributory infringement. Mitek also has the burden to prove contributory infringement by a preponderance of the evidence. To establish contributory infringement by Pearsalls, Mitek needs to show that Arthrex directly infringes Mitek's Hunter 446 Patent; however, Mitek does not need to prove that Pearsalls itself directly infringed.

If you find Arthrex has directly infringed Mitek's Hunter 446 Patent, then contributory infringement exists if Mitek proves that:

(1) Pearsalls sold or supplied;

(2) a material component of the patented invention that is not a staple article of commerce capable of substantial non-infringing use;

(3) with knowledge that the component was especially made or adopted for use in an infringing product.


A "staple article of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product and that those other uses that are not occasional, farfetched, impractical, experimental or hypothetical.

In summary, if you find that the products manufactured by Pearsalls, although adapted to an infringing use, are also adapted to other and lawful uses, there is no contributory infringement.


*DynaCore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275 (Fed. Cir. 2004) (quoting Supreme Court in *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 442 (1984); AIPLA Model Patent Jury Instruction, Contributory Infringement; *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.,* 630 F. Supp. 463(E.D. Pa. 1985), *aff'd in part, vacated in part, and remanded,* 803 F.2d 1170 (Fed. Cir. 1986); *In re Certain Molded-In Sandwich Panel Inserts,* 218 USPQ 832 (Ct. Int'l. Trade 1982), *aff'd,* 721 F.2d 1305 (1983); *Oxy Metal Indus. Corp. v. Quin-Tec, Inc.,* 216 USPQ 318, 324 (E.D. Mich. 1982); 4 Donald S. Chisum, *Patents* 17.03[3], at n.6 (1992).

**3.      Deliberation And Verdict**

**3.1      Introduction**

That concludes that part of my instructions explaining the rules for considering some of the testimony and evidence. After you hear the closing arguments of counsel, you will return to the jury room to begin your deliberations. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson.

One more thing about messages. Do not ever write down or tell anyone how you stand on your vote. For example, do not write down or tell anyone that you are split 5-3 or 6-2, whatever your vote happens to be.  That should stay secret until you are finished.

**3.2     Unanimous Verdict**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges -- judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

**3.3**     **Duty to Deliberate**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.

But do not ever change you mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that -- your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussion in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**3.4     Court Has No Opinion**

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.