# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DePuy Mitek, Inc. a Massachusetts Corporation | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04-12457 PBS |
| Arthrex, Inc. a Delaware Corporation, *et al*. | ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS ARTHREX, INC.'S AND PEARSALLS LTD.'S OPPOSITION TO PLAINTIFF DEPUY MITEK'S MOTION *IN LIMINE* (NO. 3) TO PRECLUDE ARTHREX FROM RELYING ON U.S. PATENTS 4,074,713 AND 4,074,366**

Dated: July 24, 2007

Charles W. Saber
Stephen A. Soffen
Salvatore P. Tamburo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C. 20006-5403
Telephone: (202) 420-3116
Facsimile: (202) 420-2201

Christopher Weld, Jr. (BBO # 522230)
Raymond P. Ausrotas (BBO # 640315)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
Telephone: (617) 720-2626
Facsimile: (617) 227-5777

Counsel for Defendants
Arthrex, Inc. and Pearsalls Ltd.

Just as it has consistently done in this case, DePuy Mitek, once again, is attempting to prevent Defendants from responding to an argument DePuy Mitek made late in the game – one it made only after there was no opportunity for Defendants to respond.  In its summary judgment briefing, DePuy Mitek, for the first time in this case, distinguished the coating added to FiberWire suture as being a "silicone coating."  Specifically, DePuy Mitek asserted, without any evidence, that FiberWire's silicone coating might somehow behave differently from other coatings known to be added to sutures.  Ex. 1 at 17-18.  Thus, for some reason, DePuy Mitek could argue that the silicone coating added to FiberWire may not have the universally-known effects on suture handleability and/or pliability.

Defendants, in their summary judgment reply, responded to this new argument by stating:

> DePuy Mitek asserts that the universal evidence of the affect of coating presented by defendants (which does not distinguish between types of coating) did not specifically state that those effects apply to silicone coating, such as used on FiberWire.  DePuy Mitek Opp. at 17-18.  DePuy Mitek, however, offers no evidence that the effects are different for silicone coating because there is none.  In any event, to put the matter to rest, defendants submit additional evidence showing the obvious, that handleability affects of coating are the same for silicone coating.

Ex. 2 at n.8 (citing as exhibits 8 and 9, the '713 and '366 patents).

As its first basis for excluding the '713 and '366 patents from Defendants' exhibit list, DePuy Mitek asserts that Defendants never produced these patents during discovery and that, as a result, its experts did not have a chance to review them.  But that argument ignores the obvious -- that there was no reason to produce these patents until DePuy Mitek made them relevant in its summary judgment papers by making its new "silicone coating is different" argument.

DePuy Mitek's argument also ignores the fact that its so-called suture coating expert, Dr. Brookstein, does not know the first thing about suture coatings or their effect on suture

DSMDB-2292372v01

properties.[1]  What is more, as Defendants explained in their motion *in limine* demonstrating just how unqualified Dr. Brookstein is when it comes to suture coatings, Dr. Brookstein *did not even read the suture coating patents that were attached to Dr. Mukherjee's (Defendants' expert) report,* although he admitted he had the opportunity to do so.  Ex. 3 at 170:2-5 and 174:17-21 (with regard to Defendants' Deposition Exhibit 202); Ex. 3 at 177:14-178:5 (with regard to Defendants' Deposition Exhibit 203); Ex. 3 at 182:11-183:1 (with regard to Defendants' Deposition Exhibit 204).  What makes DePuy Mitek believe that Dr. Brookstein would have made an exception for these two suture coating patents?

The truth is that DePuy Mitek knows Dr. Brookstein either cannot opine on these patent, or would not bother to do so.  Its "our experts did not have a chance to review it" excuse is transparent and DePuy Mitek's real motive is clear.  DePuy Mitek wants to make any argument it pleases -- including arguments without any evidence to support that argument.  Then, when Defendants respond with *evidence* that clearly invalidates DePuy Mitek's argument, it tries desperately to prevent Defendants from presenting that evidence.

DePuy Mitek also asserts that this "silicone coating is different" argument was not new in its summary judgment papers; that this argument was presented in Dr. Brookstein's April 13, 2006 expert report.  Mitek Mem. at n.1 (citing Dr. Brookstein's April 13, 2006 report at ¶ 54).  But, Dr. Brookstein *never* made this assertion in his April 13, 2006 expert report.  All he said in paragraph 54 was that, in his opinion, documents that refer to Ethicon or DePuy Mitek *products* were not relevant "because they discuss products and coatings that are different from FiberWire.  Ex. 4 at ¶ 54.  Dr. Brookstein was not even talking about other patents, let alone say a word about silicone coating being different from other coatings.  If DePuy Mitek really believed Dr. Brookstein made this argument before, it would have cited to his April 13, 2006

---

[1]    Dr. Brookstein's utter lack of qualifications to provide expert testimony on coating's effects on multifilament sutures is the subject of a separate motion *in limine* filed by Defendants.

DSMDB-2292372v01

expert report in its summary judgment papers when it first made its new "silicone coating is different" argument. DePuy Mitek's failure to cite to Dr. Brookstein's expert report speaks volumes about what Dr. Brookstein really said.

Even if DePuy Mitek could somehow show that Dr. Brookstein's April 13, 2006 report made this "silicone coating is different" assertion, it would still be to no avail. DePuy Mitek conveniently neglects to inform the Court that Dr. Brookstein's April 13 report was his *rebuttal infringement report* -- the *last* infringement report permitted under the rule. Accordingly, even if DePuy Mitek's logic were correct, it was DePuy Mitek, through Dr. Brookstein, that first made these patents relevant in the last expert report. The next opportunity Defendants had to respond was in their summary judgment papers. And up until DePuy Mitek actually made the argument in *its* summary judgment papers, there was no reason for Defendants to bring these patents into the record.

DePuy Mitek's second basis for excluding the '713 and '366 patents is that no Arthrex expert discussed them in any Rule 26 report. But, as explained above, that is only because Dr. Brookstein included the argument (assuming for the moment he *did* make this argument) in his *last* report -- on April 13, 2006, the *last* day for expert reports and only when Defendants' experts *no longer had an opportunity to respond.*

DePuy Mitek also asserts that Defendants do not have a witness who can explain the patents to the jury. But that is not true. If these patents become relevant at trial (*i.e.,* depending on whether DePuy Mitek makes them relevant by asserting their "silicone coating is different" argument), there are several of Defendants' witnesses who can explain them to the jury. For example, Dr. Mukherjee can explain them to the jury.

DePuy Mitek unabashedly asserts as its last basis for excluding these patents that Defendants did not present them until their reply summary judgment motion. But, as explained

DSMDB-2292372v01

above, that was only because DePuy Mitek made them relevant in its *opposition* to Defendants' summary judgment motion by making its "silicone coating is different" argument. The fact is Defendants did not need to cite these patents at all if DePuy Mitek had not made their new "silicone coating is different" argument in summary judgment.

Lastly, excluding these patents now is premature and would greatly prejudice Defendants if DePuy Mitek were to make their "silicone coating is different" argument at trial. Defendants have no way of knowing ahead of time which arguments DePuy Mitek will ultimately make. But one thing is for sure. Defendants *will be prejudiced* if DePuy Mitek makes this argument and Defendants cannot respond. Moreover, DePuy Mitek *would not be prejudiced in the least* if the Court were to deny this motion since it is entirely in DePuy Mitek's hands as to whether to make these patents relevant.

For the foregoing reasons, DePuy Mitek's motion should be denied.

Dated: July 24, 2007                                Respectfully submitted,

                                                    By:   **/s/Charles W. Saber**
                                                    Charles W. Saber
                                                    Stephen A. Soffen
                                                    Salvatore P. Tamburo
                                                    DICKSTEIN SHAPIRO LLP
                                                    1825 Eye Street, N.W.
                                                    Washington, D.C. 20006-5403
                                                    Telephone: (202) 420-3116
                                                    Facsimile: (202) 420-2201

                                                    Christopher Weld, Jr. (BBO # 522230)
                                                    Raymond P. Ausrotas (BBO # 640315)
                                                    TODD & WELD LLP
                                                    28 State Street, 31st Floor
                                                    Boston, MA 02109
                                                    Telephone: (617) 720-2626
                                                    Facsimile: (617) 227-5777

                                                    Counsel for Defendants
                                                    Arthrex, Inc. and Pearsalls Ltd.

DSMDB-2292372v01

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing DEFENDANTS ARTHREX,

INC.'S AND PEARSALLS LTD.'S OPPOSITION TO PLAINTIFF DEPUY MITEK'S

MOTION *IN LIMINE* (NO. 3) TO PRECLUDE ARTHREX FROM RELYING ON U.S.

PATENTS 4,074,713 AND 4,074,366 was served, via the Court's email notification system on

the following counsel for Plaintiff on the 24th day of July 2007:


Lynn A. Malinoski
Woodcock Washburn, LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

Daniel J. Gleason
Nutter McClennan & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604
Telephone: (617) 439-2000
Facsimile: (617) 310-9000


**/s/Charles W. Saber**

5

# Exhibit 1

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DePuy Mitek, Inc.               )
     a Massachusetts Corporation    )
                              )
         Plaintiff,             )
                              )
         v.                   )     Civil No. 04-12457 PBS
                              )
Arthrex, Inc.                 )
     a Delaware Corporation and    )
                              )
Pearsalls Ltd.                )
     a Private Limitd Company     )
     of the United Kingdom       )
                              )
         Defendants.          )

### DePuy Mitek's Memorandum in Opposition to
### <u>Arthrex's Motion for Summary Judgment</u>

silicone coating on FiberWire, and confirmed that the silicone was present in small amounts and did not substantially penetrate the braid and create a monofilament like structure (Mitek Fact 175). As Dr. Brookstein explained, regardless of FiberWire's coating, FiberWire is still "two dissimilar yarns braided together to achieve improved handleability or pliability without significantly sacrificing its physical properties" (Mitek Fact 176). Dr. Brookstein's opinions are evidence that FiberWire's thin silicone coating does not materially affect FiberWire's braid properties and, at the very least, show that there are genuine issues of material fact precluding summary judgment.

### 2.    Arthrex's Motion Should Be Denied Because It Fails to Proffer Evidence Showing A Material Effect

Arthrex's motion for summary judgment should also be denied because it offers a legal test for what constitutes a "material affect" but then offers no testimony from one of ordinary skill in the art evidence in support of that test. According to Arthrex, the test for materiality is whether "the affect is of importance or of consequence to those of ordinary skill in the art" (Arthrex Br. at 13, n. 14, citing *PPG Indus. v. Guardian Indus. Corp*, 156 F.3d 1351). But Arthrex offers no evidence on this point. Although it cites to a number of documents, it only alleges that they show that "coating *affects* handleability characteristics of the braid" (Arthrex Br. at 14). Significantly, Arthrex does not allege that the documents describe "material" effects. Attorney assertion regarding "materiality" is no basis for granting summary judgment. *See supra*, n. 7.

Not only does Arthrex lack any evidence of the "materiality" of alleged effects on the basic and novel properties of FiberWire sutures, but its arguments about effects in general are deficient because they focus not on the particular effects of *FiberWire's* silicone coating, but on suture coatings in general, divorced from the context of the invention. FiberWire has a very

specific silicone coating that is applied to its surface (Mitek Fact 177). Arthrex lists six bullet points relating to suture coatings in general (Arthrex Br. at 14-15), none of which are specific to FiberWire's silicone coating (*id.*). The only thing specific to FiberWire that Arthrex cites is the set of FiberWire instructions for use, but to no avail. The instructions for use refer to the coating on Fiberwire as a mere "lubricant," (Arthrex Ex. 14); they say nothing to support an argument that the coating materially affects the pliability of the suture.

### 3. Arthrex's Analysis Should Be Rejected Because The Patent Itself Shows That The Effects of Coatings Are Not Material

Arthrex's motion should further be denied because the proposition that a surface coating, as on FiberWire, could materially affect the basic and novel properties of the claimed suture is inconsistent with the teachings of the 446 patent.

In considering whether an effect is material, courts generally consider the intrinsic record, which includes the patent itself.[10] The 446 Patent specification defines coatings, such as FiberWire's, as optional or immaterial:

> *If desired*, the surface of the heterogeneous multifilament braid can be coated . . . to further improve handleability and knot tiedown performance of the braid.

(Mitek Fact 178) (emphasis added). Further, the 446 Patent specification draws a distinction between surface coatings, like FiberWire's, which do not significantly affect fiber-to-fiber mobility, and heavy coatings which significantly restrict fiber-to-fiber mobility and form monofilament-like structures (Mitek Fact 179). Thus, the patent evidences that coatings, such as FiberWire's, do not *materially* affect any basic and novel properties of the patented suture. *See,*

---

[10]     *PPG Indus.*, 156 F. 3d at 1356-57 (considered patent specification and prosecution history in considering whether effects are material); *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1239 (Fed. Cir. 2003) (considering what patent specification characterized as a material affect); *Bayer AG v. Sony Elecs., Inc.*, 229 F. Supp. 2d 332, 334 (D. Del. 2002) (considered prosecution in determining what was a material affect); *BASF Corp. v. Eastman Chem. Co.*, No. 95-746-RRM, 1998 U.S. Dist. LEXIS 23054, *28-30 (D. Del. Mar. 24, 1998) (Ex. A).

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DePuy Mitek, Inc.
  a Massachusetts Corporation

        Plaintiff,

    v.

Arthrex, Inc.,
  a Delaware Corporation, *et al.*

        Defendants.

Civil Action No. 04-12457 PBS

## DEFENDANTS ARTHREX, INC.'S AND PEARSALLS, LTD.'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Dated: September 15, 2006

Charles W. Saber
Stephen A. Soffen
Salvatore P. Tamburo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C. 20006-5403
Telephone: (202) 420-3116
Facsimile: (202) 420-2201

Christopher Weld, Jr. (BBO # 522230)
Raymond P. Ausrotas (BBO # 640315)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
Telephone: (617) 720-2626
Facsimile: (617) 227-5777

Counsel for Defendants
Arthrex, Inc. and Pearsalls Ltd.

not perform any tests of the effect that coating has on any suture characteristics, or at least any such tests that it produced to defendants.[7]

Instead, DePuy Mitek asserts that defendants did not produce evidence that coating affects FiberWire handling properties. First, the accusation is simply not true. As DePuy Mitek well knows, defendants did produce evidence that the coating on FiberWire improves the handleability characteristics of "knot sliding, knot tying and ease of passing suture through tissue." See Def. S. J. Mem. at 15.[8] Since DePuy Mitek cannot respond to the evidence (because it knows that it is true), it tries to be cute, telling this Court that the document does not "support an argument that the coating materially affects *the pliability of the suture*." DePuy Mitek Opp. at 18 (emphasis added). At the same time, however, DePuy Mitek tells the Court that "it does *not* address *[coating's] affect on pliability*" and that it is *only* addressing "the evidence of whether the coating materially affects handleability." DePuy Mitek Opp. at 15 (emphasis added.) This is just another example of DePuy Mitek's incapability of playing it straight with this Court.

Second, DePuy Mitek's argument is irrelevant. Since this is an infringement issue, the burden is on DePuy Mitek to come forward with affirmative evidence that coating does *not* materially affect the basic and novel characteristics of the claimed invention. DePuy Mitek cannot defeat summary judgment by criticizing defendants' evidence; it must produce its own genuine evidence of no material effect to defeat the motion. *See Univ. of Florida Research*

---

[7]    We do know that DePuy Mitek did at least perform pliability tests on coated and uncoated FiberWire, but claimed privilege and steadfastly refused to produce the results. Ex. 7 at Tab 48.

[8]    DePuy Mitek asserts that the universal evidence of the affect of coating presented by defendants (which does not distinguish between types of coating) did not specifically state that those effects apply to silicone coating, such as used on FiberWire. DePuy Mitek Opp. at 17-18. DePuy Mitek, however, offers no evidence that the effects are different for silicone coating because there is none. In any event, to put the matter to rest, defendants submit additional evidence showing the obvious, that the handleability affects of coating are the same for silicone coating. Ex. 8 at col. 9, ll. 41-43; Ex. 9 at col. 9, ll. 40-42.

DSMDB-2142677v01

# Exhibit 3

1                  UNITED STATES DISTRICT COURT

2                  DISTRICT OF MASSACHUSETTS

3                    C.A. NO. 04-12457 PBS

4     _____x

5     DePUY-MITEK, INC.,

6          A Massachusetts Corporation,

7               Plaintiff,

8          vs.

9     ARTHREX, INC.,

10          A Delaware Corporation,

11               Defendants.

12    _____x

13      CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

14                    DAY 1 OF 2

15      DEPOSITION OF DR. DAVID S. BROOKSTEIN

16                Philadelphia, Pennsylvania

17                   July 26, 2006

18

19

20    Reported by:

21

22    PAMELA HARRISON, RMR, CRR, CSR

23

24

25

1    BY MR. SABER:                                           11:22:20a

2        Q.    Right.  Let me show you what has been         11:22:20a

3    marked as Defendant's Exhibit-202.  And have you        11:22:22a

4    ever seen this document?                                11:22:27a

5        A.    No, I've never seen this document.            11:22:28a

6        Q.    Did you ever try to review the patent         11:22:29a

7    literature on coating of sutures in connection          11:22:37a

8    with rendering opinions in this case?                   11:22:39a

9        A.    I don't recall looking at other               11:22:47a

10   patents, no.                                            11:22:50a

11       Q.    Did you review the exhibits to                11:22:50a

12   Dr. Mukherjee's reports?                                11:22:53a

13       A.    Yes.                                          11:22:54a

14       Q.    Do you understand --                          11:22:54a

15       A.    If I -- if I said in my report I did,         11:22:56a

16   I did.  I mean, I don't -- I read Mukherjee's           11:23:00a

17   report.  Sometimes I didn't go back and look at         11:23:04a

18   the exhibits because it wasn't an area that I was       11:23:06a

19   concerned in, but if it was an area of concern          11:23:10a

20   that I was in and then I responded in my rebuttal       11:23:11a

21   and I said going back to this, yes.                     11:23:13a

22       Q.    Do you recall whether this exhibit,           11:23:18a

23   Defendant's Exhibit-202, was one of the                 11:23:19a

24   exhibits --                                             11:23:21a

25       A.    No.                                           11:23:21a

**7/26/2006 Brookstein, David**

1    Q.    Go ahead.  Go ahead.                          11:25:39a

2    A.    As you know, in any patent nothing            11:25:39a

3    stands by itself.  There's a reason -- there's a    11:25:42a

4    story it's trying to tell, it's trying to teach.    11:25:45a

5    Okay?  I am not going to sit here today and be       11:25:47a

6    making comments about patents that I haven't seen    11:25:51a

7    unless I've had the proper time to study them,       11:25:53a

8    study the context that they're in.  Once I've        11:25:56a

9    done that, I'll be more than happy to answer your    11:25:58a

10   question, but I'm not going to do that.              11:26:01a

11   Q.    Okay.  Now, if in fact this was an            11:26:02a

12   exhibit to Dr. Mukherjee's report, you had that     11:26:06a

13   opportunity, didn't you?                            11:26:08a

14              MR. BONELLA:  Object to the form         11:26:12a

15   of the question.                                    11:26:12a

16   BY MR. SABER:                                       11:26:13a

17   Q.    You had the opportunity to study it if       11:26:13a

18   it were an exhibit, correct?                        11:26:15a

19   A.    If it were an exhibit and I said I           11:26:16a

20   read it, I would have had the opportunity, that's  11:26:19a

21   correct.                                            11:26:20a

22   Q.    Again, I just want to make sure the          11:26:21a

23   record is clear.  Do you disagree that a           11:26:25a

24   multifilament suture typically requires a surface  11:26:30a

25   coating to improve the tactile smoothness,          11:26:33a

1     is Ethicon, Inc., isn't that correct?                        11:27:55a

2          A.     That's correct.                                  11:27:57a

3          Q.     All right.  The -- do you see one of             11:27:58a

4     the inventors is Mr. Alastair Hunter?                        11:28:01a

5          A.     I do.                                            11:28:05a

6          Q.     Do you have an understanding as to               11:28:06a

7     whether Mr. Alastair Hunter is also one of the               11:28:07a

8     inventors on the '446 patent?                                11:28:10a

9          A.     He is.                                           11:28:13a

10                (Whereupon a document was                        11:28:54a

11    marked, for identification purposes, as                      11:28:54a

12    Defendant's Exhibit-203.)                                    11:28:54a

13    BY MR. SABER:                                                11:29:05a

14         Q.     Sir, let me show you what's been                 11:29:05a

15    marked as Defendant's Exhibit-203.                           11:29:06a

16         A.     Mm-hmm.                                          11:29:09a

17         Q.     Have you ever seen this patent before,          11:29:09a

18    sir?                                                         11:29:11a

19         A.     I don't recall seeing this.                      11:29:11a

20         Q.     Do you know whether this was one of             11:29:12a

21    the exhibits to Dr. Mukherjee's reports?                    11:29:14a

22         A.     I don't know.                                    11:29:16a

23         Q.     If it was an exhibit to Dr. Mukherjee's         11:29:17a

24    report, would you agree with me you had the                 11:29:20a

25    opportunity to review it?                                    11:29:22a

**7/26/2006 Brookstein, David**

1     A.    If it was an exhibit to          11:29:23a

2  Dr. Mukherjee's report, I did have the      11:29:24a

3  opportunity to review it.              11:29:26a

4     Q.    But you don't recall ever seeing this?  11:29:27a

5     A.    I don't recall seeing this.      11:29:29a

6         MR. BONELLA:  Objection.  That's    11:29:30a

7  not what his testimony said before.  It    11:29:31a

8  mischaracterizes his testimony.        11:29:33a

9  BY MR. SABER:                  11:29:35a

10    Q.    Could you turn to -- well, again, this  11:29:35a

11  is a -- on the first page, this is a patent that  11:29:38a

12  was assigned to Ethicon, Inc., isn't that    11:29:41a

13  correct?                     11:29:43a

14    A.    That is correct.         11:29:43a

15    Q.    Same as the '446 patent?      11:29:44a

16         MR. BONELLA:  I'm going to object    11:29:47a

17  to the form of the question.         11:29:48a

18  BY MR. SABER:                 11:29:49a

19    Q.    Is that correct?         11:29:49a

20         MR. BONELLA:  Object to the form   11:29:52a

21  of the question.               11:29:52a

22         THE WITNESS:  What is the same?    11:29:52a

23  BY MR. SABER:                 11:29:52a

24    Q.    That the '446 -- well, strike that.  11:29:52a

25         Do you see one of the inventors    11:29:54a

7/26/2006  Brookstein, David

1    Argumentative.
                                                                11:32:39a
2                THE WITNESS:  I don't know how
                                                                11:32:40a
3    they conduct their business.  I don't know how
                                                                11:32:41a
4    they conduct their business.  I've never talked
                                                                11:32:43a
5    to people at Ethicon.
                                                                11:32:46a
6                MR. SABER:  Mark this as 204.
                                                                11:33:11a
7                (Whereupon a document was
                                                                11:33:11a
8    marked, for identification purposes, as
                                                                11:33:11a
9    Defendant's Exhibit-204.)
                                                                11:33:12a
10   BY MR. SABER:
                                                                11:33:14a
11       Q.    Let me show you what's been marked as
                                                                11:33:14a
12   Defendant's Exhibit-204 and ask you if you've had
                                                                11:33:22a
13   an opportunity -- have you seen this document
                                                                11:33:28a
14   before?
                                                                11:33:29a
15       A.    I do not recall seeing this document
                                                                11:33:29a
16   before.
                                                                11:33:30a
17       Q.    Do you know whether this was an
                                                                11:33:31a
18   exhibit to Dr. Mukherjee's report?
                                                                11:33:33a
19       A.    I don't recall either way.
                                                                11:33:35a
20       Q.    If it were an exhibit to
                                                                11:33:37a
21   Dr. Mukherjee's report, would you agree with me
                                                                11:33:38a
22   that you had the opportunity to review this
                                                                11:33:40a
23   document?
                                                                11:33:42a
24       A.    If it were in Dr. Mukherjee's report
                                                                11:33:43a
25   that I read, I would have had the opportunity to
                                                                11:33:46a

1    read it.  I agree.                                    11:33:48a

2        Q.    Do you see in the first column              11:33:56a

3    starting at about Line 43 --                          11:34:08a

4        A.    Mm-hmm.                                      11:34:10a

5        Q.    -- where it says, Such multifilament        11:34:10a

6    sutures generally -- excuse me.  Such                 11:34:13a

7    multifilament sutures exhibit a certain degree of     11:34:15a

8    undesirable roughness or grabbiness in what has       11:34:18a

9    been determined -- what has been termed their,        11:34:23a

10   quote, tie-down, closed quote, performance; i.e.,     11:34:26a

11   the ease or difficulty of sliding a knot down the     11:34:29a

12   suture into place, or the ease of snugging a          11:34:33a

13   square knot in place?                                 11:34:36a

14       A.    I do.                                       11:34:39a

15       Q.    Do you agree with that sentence?            11:34:40a

16            MR. BONELLA:  Object to the form             11:34:41a

17   of the question.  The sentence says, Such             11:34:41a

18   multifilament sutures.  You didn't even read          11:34:44a

19   what the heck it's talking about.  I mean, it's       11:34:46a

20   a totally unfair question.                            11:34:48a

21            THE WITNESS:  That sentence -- I             11:34:49a

22   have several responses.  One, I'm going to come       11:34:51a

23   back to what I said earlier on the last two           11:34:53a

24   patents you asked me to look at:  I cannot and        11:34:56a

25   will not opine on a patent that I have not read       11:34:58a

# Exhibit 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DePuy Mitek, Inc. )
  a Massachusetts Corporation )
   )
  Plaintiff, )
   )
  v. ) **Civil No. 04-12457 PBS**
   )
Arthrex, Inc. )
  a Delaware Corporation and )
   )
Pearsalls Ltd., )
  a Private Limited Company )
  of the United Kingdom, )
   )
  Defendants. )
   )

## Rebuttal Expert Report of Dr. David Brookstein

### I. Background Information

1. I previously submitted an expert report in this case on March 3, 2006. I have been asked to opine on certain opinions expressed by Dr. Mukherjee in his report entitled the "Responsive Expert Report of Dr. Debi Prasad Mukherjee Concerning Non-Infringement of U.S. Patent No. 5,314,446 and Other Matters."

2. I have reviewed the "Responsive Expert Report of Dr. Debi Prasad Mukherjee Concerning Non-Infringement of U.S. Patent No. 5,314,446 and Other Matters," the documents referenced in my prior report and those listed in Ex. H attached hereto.

### II. Summary of Opinions

3. I disagree with Dr. Mukherjee's opinion that there is no infringement under the doctrine of equivalents, if "PE," as used in the claims of the 446 Patent, is construed not to include UHMWPE.

because, among other reasons, I cannot tell what he measured. Second, it appears that Dr.

Mukherjee is attempting to approximate FiberWire's pliability by determining FiberWire's

ability to bend by using his finger as a test rig. But this method is flawed because he did not

provide a true cantilever end support. Consequently, there is no defined position as to where

FiberWire begins its bending, and no definitive way to determine the degree of bending. Third,

diameter affects pliability, and Dr. Mukhejee does not provide any diameter measurements for

the samples that he compared. Therefore, based on what I can determine from his report, it is not

possible to scientifically compare the pliability of the uncoated and coated FiberWire using this

method.

54.     I note that Dr. Mukherjee relies on documents that refer to Ethicon and Mitek products in

his analysis (Mukherjee Res. Report at 23-24, Mukherjee Res. Report Exs. 14, 15, 17, & 18). I

disagree that these documents are relevant to the analysis because they discuss products and

coatings that are different than FiberWire. It is my opinion, that the effect of FiberWire's

coating on FiberWire cannot be determined with reference to other products.

### B.     If Dr. Mukherjee Is Correct Regarding The Meaning Of The Novel And Basic Characteristics, TigerWire's Nylon Does Not Materially Affect Them

55.     Dr. Mukherjee has opined that TigerWire does not infringe for the same reasons that he

expressed regarding FiberWire (Mukherjee Res. Report at 30). I disagree for the reasons stated

above with respect to FiberWire.

56.     I understand that the differences between TigerWire and FiberWire are that TigerWire is

not dyed blue and replaces one PET yarn strand with one black nylon yarn strand. Dr.

Mukherjee opines that TigerWire's nylon materially affects pliability (Mukherjee Res. Report at

30-31). I disagree. The purpose of the nylon strand is for visual identification (Ex. V at 74:21-

23). It is my opinion that replacing one PET yarn with one nylon yarn does not materially affect

68.     I reserve the right to comment further on Dr. Mukherjee's analyses and report when more information about the analyses becomes available.   I may use trial demonstratives to explain my opinions.

Dated: April 13, 2006

David Brookstein, Sc.D.
Fellow-American Society of Mechanical Engineers

37